**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| MIKE SHAFER, DAVID KEATING, and WILLIAM JEFFREY IGOE, on Behalf of Themselves and All Others Similarly Situated,<br><br>    Plaintiff,<br><br>    v.<br><br>GLOBAL PAYMENTS INC., ACTIVE NETWORK LLC, JEFF SLOAN, CAMERON BREADY, PAUL TODD, JOSH WHIPPLE, and ANDREA FACINI,<br><br>Defendants. | Case No. 1:23-cv-00577-LMM |

**REPLY BRIEF IN SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ........................................................................................................1

ARGUMENT .............................................................................................................2

I.  Plaintiffs Fail To Plead An Actionable Misstatement Of Material Fact. .............2

    A. The AC Fails To Plead That The Compliance Statements Were False Or Misleading. .............................................................................................2

    B. The Risk Disclosures Confirm There Was No Misrepresentation. .................4

    C. Statements About Bookings Growth Did Not Mislead Investors. ..................7

    D. The Website Statements Were Neither Actionable Nor Misleading...............9

II. Plaintiffs Fail To Plead The Required Strong Inference Of Scienter. ................10

    A. Alleged Consumer Complaints Do Not Support Scienter...........................10

    B. Allegations About Pre-Class Period Lawsuits Are Insufficient....................12

    C. The CFPB Allegations Fail To Support Scienter. ........................................12

    D. The Motive Allegations Fail........................................................................13

III.Plaintiffs Fail To Plead Loss Causation. ..........................................................14

    A. The CFPB's Lawsuit Is Not A Corrective Disclosure. ................................14

    B. Mr. Sloan's Resignation Is Not A Corrective Disclosure. ...........................17

IV. Additional Grounds For Dismissal Of Claims ..................................................18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bascunan v. Elsaca*,
2021 WL 3540315 (S.D.N.Y. Aug. 11, 2021)......................................................15

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)............................................................................................20

*Carvelli v. Ocwen Fin. Corp.*,
934 F.3d 1307 (11th Cir. 2019) ..........................................................................19

*City of Sunrise Gen. Employees' Ret. Plan v. Fleetcor Techs., Inc.*,
2018 WL 4293143 (N.D. Ga. May 15, 2018)........................................................7

*City of Westland Police & Fire Ret. Sys. v. MetLife, Inc.*,
129 F. Supp. 3d 48 (S.D.N.Y. 2015) .....................................................................6

*D.E.&J Ltd. P'ship v. Conaway*,
284 F. Supp. 2d 719 (E.D. Mich. 2003) ..............................................................16

*Dillard v. Platform Specialty Prod. Corp.*,
2016 WL 10586301 (S.D. Fla. Dec. 8, 2016).....................................................12

*Druskin v. Answerthink, Inc.*,
299 F. Supp. 2d 1307 (S.D. Fla. 2004) ...............................................................11

*Eastwood Enterprises, LLC v. Farha*,
2009 WL 3157668 (M.D. Fla. Sept. 28, 2009)....................................................13

*El-Ad Residences at Miramar Condo. Ass'n, Inc. v. Mt. Hawley Ins.*,
2011 WL 13174642 (S.D. Fla. Feb. 23, 2011) ....................................................12

*In re Facebook, Inc. Sec. Litig.*,
405 F. Supp. 3d 809 (N.D. Cal. 2019)...................................................................9

*Firemen's Ret. Sys. of St. Louis v. Telos Corp.*,
2023 WL 1512207 (E.D. Va. Feb. 1, 2023) .......................................................19

*FindWhat Inv. Grp. v. FindWhat.com*,
  658 F.3d 1282 (11th Cir. 2011) .............................................................16, 17, 18

*In re Flowers Foods, Inc. Sec. Litig.*,
  2018 WL 1558558 (M.D. Ga. Mar. 23, 2018)......................................................3

*Garfield v. NDC Health Corp.*,
  466 F.3d 1255 (11th Cir. 2006) ..........................................................................11

*Goldman Sachs Grp., Inc. v. Arkansas Tchr. Ret. Sys.*,
  141 S. Ct. 1951 (2021)........................................................................................17

*In re Henry Schein, Inc. Sec. Litig.*,
  2019 WL 8638851 (E.D.N.Y. Sept. 27, 2019) .....................................................7

*In re Hertz Glob. Holdings, Inc. Sec. Litig.*,
  2017 WL 1536223 (D.N.J. Apr. 27, 2017)...........................................................5

*In re Honeywell Int'l, Inc. Sec. Litig.*,
  182 F. Supp. 2d 414 (D.N.J. 2002).....................................................................14

*Janus Capital Group, Inc. v. First Derivative Traders*,
  564 U.S. 135 (2011).................................................................................2, 4, 19

*MacPhee v. MiMedx Grp., Inc.*,
  73 F.4th 1220 (11th Cir. 2023) ...........................................................................17

*Meyer v. Greene*,
  710 F.3d 1189 (11th Cir. 2013) .....................................................................16, 17

*Meyer v. Jinkosolar Holdings Co.*,
  761 F.3d 245 (2d Cir. 2014) .................................................................................3

*In re Miller Indus., Inc. Sec. Litig.*,
  12 F. Supp. 2d 1323 (N.D. Ga. 1998)................................................................4, 8

*Mizzaro v. Home Depot, Inc.*,
  544 F.3d 1230 (11th Cir. 2008) .....................................................................11, 14

*Mogensen v. Body Cent. Corp.*,
  15 F. Supp. 3d 1191 (M.D. Fla. 2014)................................................................11

iii

*In re Mylan N.V. Sec. Litig.*,
　2023 WL 3539371 (W.D. Pa. May 18, 2023) ......................................................9

*In re Netflix, Inc. Sec. Litig.*,
　2005 WL 1562858 (N.D. Cal. June 28, 2005)......................................................5

*Okla. Firefighters Pension & Ret. Sys. v. Six Flags Ent. Corp.*,
　58 F.4th 195 (5th Cir. 2023) ...............................................................................3

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*
　575 U.S. 175 (2015)..............................................................................................6

*Otogenetics, Corp. v. Omega Biosciences, Inc.*,
　2018 WL 11243794 (N.D. Ga. Aug. 29, 2018) ..................................................20

*Plaisance v. Schiller*,
　2019 WL 1205628 (S.D. Tex. Mar. 14, 2019) ...................................................19

*Plumbers & Pipefitters Nat'l Pension Fund v. Davis*,
　2020 WL 1877821 (S.D.N.Y. Apr. 14, 2020) .....................................................7

*Primavera Investors v. Liquidmetal Techs., Inc*,
　403 F. Supp. 2d 1151 (M.D. Fla. 2005)..............................................................11

*Ret. Sys. v. Controladora Vuela Compania De Aviacion, S.A.B. de C.V.*,
　2016 WL 3685089 (S.D.N.Y. July 6, 2016).........................................................8

*San Antonio Fire & Police Pension Fund v. Syneos Health Inc.*,
　75 F.4th 232 (4th Cir. 2023) ..............................................................................12

*S.E.C. v. Complete Business Solutions Group, Inc.*,
　538 F. Supp. 3d 1309 (S.D. Fla. May 11, 2021)................................................19

*Sapssov v. Health Mgmt. Assocs., Inc.*,
　22 F. Supp. 3d 1210 (M.D. Fla. 2014).........................................................17, 18

*SEC v. Davison*,
　2021 WL 3079689 (M.D. Fla. Mar. 8, 2021) ......................................................9

*In re Sinclair Broad. Grp., Inc. Sec. Litig.*,
　2020 WL 571724 (D. Md. Feb. 4, 2020).............................................................5

*Smallen v. The W. Union Co.*,
  950 F.3d 1297 (10th Cir. 2020) ............................................................................10

*Stein v. Aaron's, Inc.*,
  2022 WL 4588410 (N.D. Ga. Sept. 29, 2022)...............................................11, 13

*Strougo v. Barclays PLC*,
  105 F. Supp. 3d 330 (S.D.N.Y. 2015) ....................................................................8

*Theodore v. Purecycle Technologies, Inc.*,
  2023 WL 4035880 (M.D. Fla. June 15, 2023) ......................................................13

*Theoharous v. Fong*,
  256 F.3d 1219 (11th Cir. 2001) ............................................................................20

*Thorpe v. Walter Inv. Mgmt*,
  111 F. Supp. 3d 1336 (S.D. Fla. 2015)..................................................................20

*In re Turquoise Hill Res. Ltd. Sec. Litig.*,
  625 F. Supp. 3d 164 (S.D.N.Y. 2022) ....................................................................5

*Veal v. LendingClub Corp.*,
  423 F. Supp. 3d 785 (N.D. Cal. 2019).................................................................2, 3

*Villella v. Chem. & Mining Co. of Chile Inc.*,
  2017 WL 1169629 (S.D.N.Y. Mar. 28, 2017)........................................................8

*Waterford Twp. Gen. Emps. Ret. Sys. v. Suntrust Banks, Inc.*,
  2010 WL 3368922 (N.D. Ga. Aug. 19, 2010) ......................................................15

*ZPR Inv. Mgmt. Inc. v. Sec. & Exch. Comm'n*,
  861 F.3d 1239 (11th Cir. 2017) ..............................................................................8

## Other Authorities

17 C.F.R. § 229.105(a)..............................................................................................19

17 C.F.R. § 229.303(b)(2)(ii).....................................................................................19

# INTRODUCTION

Plaintiffs' Opposition fails to blunt Defendants' arguments showing that the AC[1] should be dismissed for failure to plead a claim satisfying the PSLRA's heightened standards. Plaintiffs ignore precedent preventing them from relying on unadjudicated allegations from the CFPB's October 2022 lawsuit against Active to plead the falsity of statements made months and years earlier about Active's financial performance and Global Payments' legal compliance. And Plaintiffs utterly fail to explain how any alleged omissions concerning Active Advantage were material given that total challenged Advantage revenue was less than one percent of Global Payments' revenue during the same period. Plaintiffs also fail to resuscitate the AC's weak scienter allegations, which fall well short of raising the required strong inference that Defendants knew or recklessly disregarded information suggesting that the Advantage program violated applicable laws. Finally, on loss causation, Plaintiffs do not dispute that Global Payments' stock price *rose* immediately after the CFPB suit was announced; nor do they counter Defendants' arguments that the two proffered "corrective disclosures" fail to qualify as such under established Eleventh Circuit standards. For any of these independent reasons shown in Defendants' opening brief and below, the AC should be dismissed.

---

[1] Defendants incorporate the definitions of terms in their opening brief, Doc. 49-1.

## ARGUMENT

**I.      Plaintiffs Fail To Plead An Actionable Misstatement Of Material Fact.**

**A.      The AC Fails To Plead That The Compliance Statements Were False Or Misleading.**

Plaintiffs cannot rely on unadjudicated allegations from the CFPB's October 2022 complaint against Active to plead the falsity of Global Payments' general, company-wide compliance statements included in its Forms 10-K filed in February 2021 and February 2022—¶¶ 96, 100 ("We are currently in compliance with existing legal and regulatory requirements….").[2]  Plaintiffs thus pivot to arguing that Defendants do not deny or dispute the Advantage program was an illegal and "deceptive scheme" that Defendants were obliged to disclose to prevent their general compliance statements from misleading investors.  Opp. at 1, 7.  This argument fails.

*First*, Plaintiffs' own brief, which cites Defendants' ***express denial of any such violations***, belies any claimed concession that the Advantage program violated legal requirements.  *See* Opp. at 7; Doc. 49-1 at 16 ("Defendants deny [any violations] occurred").[3]  Further, Global Payments did not "retract" its compliance

---

[2] *See, e.g., Veal v. LendingClub Corp.*, 423 F. Supp. 3d 785, 808–09 (N.D. Cal. 2019) ("It is not enough to allege that LendingClub was charged with violating the GLBA after the statements were made."); *accord* Doc. 49-1 at 6–7 & 14–15.

[3] An Active webpage quoted in the AC (¶¶ 11, 123) explains how to enroll in the Advantage program and makes clear that this is done by clicking "Accept" (as

statements or "conced[e]" their falsity (Opp. at 2, 7) by changing the compliance language in its 2023 filing. *See Lending Club*, 423 F. Supp. 3d at 815-16 ("editing or removal" of language from an SEC filing is not a "tacit admission" of falsity).

*Second*, the cases Plaintiffs cite only underscore the AC's failure to plead facts that could support an omission claim. In *Flowers Foods* (Opp. at 7), challenged compliance statements were contradicted by contemporaneous warnings from legal counsel and the IRS that the company was violating legal and regulatory requirements. *See In re Flowers Foods, Inc. Sec. Litig.*, 2018 WL 1558558, at \*8 (M.D. Ga. Mar. 23, 2018). In *JinkoSolar* (Opp. at 10), the defendants publicly touted compliance while privately admitting to regulators numerous ongoing violations. *Meyer v. Jinkosolar Holdings Co.*, 761 F.3d 245, 248–49 (2d Cir. 2014). And in *Six Flags* (Opp. at 7), plaintiffs alleged that defendants misled investors by claiming the development of new parks was on track despite knowing "the parks could not open on schedule because the Chinese development partner . . . [would not] fund the [projects], had not commissioned the necessary blueprints, and had barely begun construction." *Okla. Firefighters Pension & Ret. Sys. v. Six Flags Ent. Corp.*, 58 F.4th 195, 205 (5th Cir. 2023). Plaintiffs' AC pleads no such facts demonstrating

---

opposed to "No Thanks" to decline), which undercuts Plaintiffs' allegations that the process was "deceptive," much less illegally so. *See* Doc. 49-1 at 12.

3

awareness of noncompliance, and thus wholly fails to plead that Defendants were under a "duty" to accuse themselves of violating consumer protection laws. *See In re Miller Indus., Inc. Sec. Litig.*, 12 F. Supp. 2d 1323, 1331 (N.D. Ga. 1998) ("The Federal securities laws do not impose a duty upon parties to admit publicly they may be violating the law."); *see also* Doc. 49-1 at 6–7.

**B.    The Risk Disclosures Confirm There Was No Misrepresentation.**

The sentence immediately following the general compliance statements in Global Payments' 10-Ks directed investors to risk factors set forth in Item 1A thereof "for additional discussion of the potential risks associated with future changes in laws or regulations." *See* Doc. 49-7, p. 11; Doc. 49-10, p. 12. Those risk factors warned about the possibility for "[c]hanges" in the "***interpretation*** or ***enforcement*** of" laws and the risk that regulators could deem the Company to be "in violation of these laws, rules or regulations," in which event, "we may be subject to enforcement actions." Doc. 49-7, pp. 20–21; Doc. 49-10, pp. 22–23 (emphasis added). In context with the referenced risk factor warnings, the general compliance statements can only fairly be read as conveying Global Payments' then-current subjective belief about compliance, which the AC fails to plead misled investors. Doc. 49-1 at 15–17.

In response, Plaintiffs advance a series of meritless arguments. *First*, they argue that the compliance statements were misleading because "customers

4

complained, employees were diverted, clients complained and were lost." Opp. at 8. Setting aside the AC's failure to plead particular factual support for those assertions, they do not establish that Global Payments or Active was engaging in legal or regulatory violations. *See In re Netflix, Inc. Sec. Litig.*, 2005 WL 1562858, at *7 (N.D. Cal. June 28, 2005) ("[T]he existence of [customer] complaints fails to render … statements about [a company's] service false.").

*Second*, Plaintiffs argue that the compliance statements were not beliefs because they did not use the words "think" or "believe." Opp. at 9. But the statements clearly conveyed Global Payments' *subjective assessment* that its practices complied with legal and regulatory requirements, which suffices to qualify them as belief statements. *See In re Turquoise Hill Res. Ltd. Sec. Litig.*, 625 F. Supp. 3d 164, 218–19 (S.D.N.Y. 2022) (rejecting argument that statements must include words such as "I think" or "I believe" to be opinions); *In re Sinclair Broad. Grp., Inc. Sec. Litig.*, 2020 WL 571724, at *8, *15 (D. Md. Feb. 4, 2020) (statements that company "will be in compliance" with legal requirements and "ownership rules are … being complied with" were opinions because regulators could disagree and assert noncompliance); *In re Hertz Glob. Holdings, Inc. Sec. Litig.*, 2017 WL 1536223, at *11 (D.N.J. Apr. 27, 2017) ("financial statements have been prepared in accordance with GAAP" conveyed subjective belief), *aff'd,* 905 F.3d 106 (3d Cir. 2018).

5

*Third*, Plaintiffs argue that the risk factors should be ignored altogether because they appear in portions of the 10-Ks separate from the compliance statements. *See* Opp. at 9. But the compliance statements specifically directed readers to the risk factors for additional context and discussion (Doc. 49-7 at 11; Doc. 49-10 at 12), and the Supreme Court has held that when assessing compliance-related statements, courts must take account of "other hedges, disclaimers, or qualifications" included in the document relating to compliance. *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Funds,* 575 U.S. 175, 196 (2015).

*Finally,* Plaintiffs argue that, under *Omnicare*, they may plead falsity by alleging an omission of "material facts about the issuer's inquiry into or knowledge concerning" the belief. Opp. at 10–11. But the AC fails to plead that the compliance statements rested on insufficient inquiry or were contradicted by material facts known to Defendants. Plaintiffs have not pled facts showing that the Advantage program was "unambiguously illegal" (Opp. at 10), and the CFPB's later decision to allege violations in its October 2022 complaint against Active (an outcome about which the risk factors expressly warned) cannot support a hindsight claim that general compliance statements made months earlier lacked a reasonable basis when made. *See City of Westland Police & Fire Ret. Sys. v. MetLife, Inc.*, 129 F. Supp.

6

3d 48, 81–82 (S.D.N.Y. 2015) (opinions that "may have proved wrong in the end" were not actionable) (citation omitted).

### C.      Statements About Bookings Growth Did Not Mislead Investors.

In challenging statements about bookings growth that Plaintiffs do not dispute actually occurred, Plaintiffs again rely on inapposite cases alleging omissions of known facts contradicting the challenged statements. *See Plumbers & Pipefitters Nat'l Pension Fund v. Davis*, 2020 WL 1877821 (S.D.N.Y. Apr. 14, 2020) (pull forwards, excess inventory, and heavy discounting contradicted statements claiming strong demand); *In re Henry Schein, Inc. Sec. Litig*., 2019 WL 8638851, at *2, *13-*15 (E.D.N.Y. Sept. 27, 2019) (statements about competition and competitive prices were misleading where company and large competitor had "agreed not to compete on price"); *City of Sunrise Gen. Employees' Ret. Plan v. Fleetcor Techs., Inc*., 2018 WL 4293143, at *8 (N.D. Ga. May 15, 2018) (statements that cards were "fee free" were misleading because company charged fees).   The AC lacks comparable allegations regarding the Advantage "scheme."  *See* Doc. 49-1 at 7-11.[4]

Plaintiffs' materiality arguments also fail.  Unable to dispute that challenged Advantage revenues received during the class period would not exceed 1% of Global

---

[4] Plaintiffs acknowledge that various puffing statements in ¶¶ 105, 107, 109, 110, and 113 identified in Defendants' opening brief (Doc. 49-1 at 9) are legally inactionable.  Opp. at 13 (noting that these statements "are not alleged to be false").

Payments' ~$24.7 billion total revenues for that period (*id.* at 10), Plaintiffs advance an apples-to-oranges comparison that $300 million in allegedly improper revenue *since 2011* "constituted over half of the $600 million in cash that GPN paid to acquire Active." Opp. at 14.  In assessing materiality, the "items in issue should be compared to like items on the corporate financial statement." *Dekalb Cnty. Emps.' Ret. Sys. v. Controladora Vuela Compania De Aviacion, S.A.B. de C.V.*, 2016 WL 3685089, at *3 (S.D.N.Y. July 6, 2016).  Thus, Active Advantage revenues must be compared to Global Payments' revenues—which show the alleged "scheme" would have been immaterial had it even occurred.[5]

Plaintiffs' arguments that potential regulatory "exposure" renders the "scheme" material fare no better.  Opp. at 14.  Materiality is "determined in light of the circumstances existing at the time the alleged misstatement occurred." *ZPR Inv. Mgmt. Inc. v. Sec. & Exch. Comm'n*, 861 F.3d 1239, 1250 (11th Cir. 2017). And there is no duty to disclose "conjectural" liability. *Miller*, 12 F. Supp. 2d at 1331.

---

[5] Plaintiffs' materiality cases are readily distinguishable. *See Strougo v. Barclays PLC*, 105 F. Supp. 3d 330, 349 (S.D.N.Y. 2015) (alleged misconduct "call[ed] into question the integrity of the company as a whole"); *Villella v. Chem. & Mining Co. of Chile Inc.*, 2017 WL 1169629, at *12 (S.D.N.Y. Mar. 28, 2017) (company paid a large penalty and entered into a deferred-prosecution agreement with the DOJ).

**D.      The Website Statements Were Neither Actionable Nor Misleading.**

Plaintiffs argue that marketing statements on Active's website were made "in connection with" the purchase or sale of securities because a website "would be a natural source for information" for investors. Opp. at 15. But that misstates the applicable legal standard. The question is whether a statement was made "in a manner *reasonably calculated to influence* the investing public." *SEC v. Davison*, 2021 WL 3079689, at \*4 (M.D. Fla. Mar. 8, 2021) (emphasis added). Numerous cases, including *Facebook* (cited by Plaintiffs), confirm that customer-directed advertising statements do not meet that standard. *See In re Facebook, Inc. Sec. Litig.*, 405 F. Supp. 3d 809, 834 (N.D. Cal. 2019) (distinguishing "ads" from the detailed privacy policies challenged in that case), *reversed in part on other grounds*, 84 F.4th 844 (9th Cir. 2023); *In re Mylan N.V. Sec. Litig.*, 2023 WL 3539371, at \*9 (W.D. Pa. May 18, 2023) (statements "on Mylan's general website, not its investor-relations page" were not actionable); *see also* Doc. 49-1 at 12–13 (citing cases).

Plaintiffs also fail to plead that the puffing statements on Active's website were material, much less misleading, for reasons explained in Defendants' opening brief. *See* Doc. 49-1 at 11–12. The Opposition fails to rebut those points. And the allegations cited at page 17 of the Opposition fail to plead the falsity of Active's

9

statements about chargeback requests.[6]  The website claims must be dismissed.

## II.    Plaintiffs Fail To Plead The Required Strong Inference Of Scienter.

### A.    Alleged Consumer Complaints Do Not Support Scienter.

Plaintiffs' argument that "consumer and customer complaints establish a strong inference of scienter" (Opp. at 21–23) fails on multiple levels. Most fundamentally, the existence of such complaints does not equate to knowledge of regulatory violations on the part of the Defendants. *See, e.g.*, *Smallen v. The W. Union Co.*, 950 F.3d 1297, 1307 (10th Cir. 2020) (hundreds of thousands of consumer complaints failed to "support any inference the Individual Defendants knew about or consciously disregarded ongoing illegality at the time they made their [alleged] misstatements regarding . . . compliance"); *see also* Doc. 49-1 at 22.

Plaintiffs' argument independently fails because the AC does not allege with particularity that the Individual Defendants were aware of the complaints, a burden made more difficult by the fact that the alleged $300 million in revenues from the Advantage program since 2011 were less than 1% of Global Payments' revenues over the same period.  Doc. 49-1 at 10.  Plaintiffs claim that complaints were "known throughout Active" (Opp. at 21), but allegations that an issue "was 'generally

---

[6] The AC also fails to plead the element of loss causation as to these statements, as Plaintiffs point to no public disclosure "correcting" them.  *See* Doc. 49-1 at 26–29.

10

known'" are "not sufficient." *Druskin v. Answerthink, Inc.*, 299 F. Supp. 2d 1307, 1333 (S.D. Fla. 2004); *Stein v. Aaron's, Inc.*, 2022 WL 4588410, at \*8 (N.D. Ga. Sept. 29, 2022) (scienter requires "at the very least, that knowledge of … complaints … percolated to the Individual Defendants"). Nor is scienter pled by alleging that Defendants had "access to information" about the complaints (Opp. at 21). *See Mizzaro v. Home Depot, Inc.,* 544 F.3d 1230, 1254 (11th Cir. 2008).[7]

Plaintiffs claim that "the FE accounts . . . establish that the Individual GPN Defendants participated in numerous meetings addressing . . . Active Advantage." Opp. at 23. But FE-9 is the only FE alleged to have had contact with any Individual Defendant. ¶78(i). And FE-9 claims only to have had periodic "business reviews" with Defendants Facini and Bready about Active generally. *Id.* These generic allegations fail to specify what, if anything, "was said at the meeting[s]" concerning the Advantage program. *Garfield v. NDC Health Corp*., 466 F.3d 1255, 1265 (11th Cir. 2006). As such, the inference must be "that the omissions were strategic" and that details about the meetings' contents "would not be helpful" to Plaintiffs. *Mogensen v. Body Cent. Corp*., 15 F. Supp. 3d 1191, 1219 (M.D. Fla. 2014).

---

[7] Unlike the AC, *Primavera Investors v. Liquidmetal Techs., Inc.* involved "specific and detailed" allegations demonstrating that the CEO "knew the falsity of his public representations[.]" 403 F. Supp. 2d 1151, 1158 (M.D. Fla. 2005).

11

### B.     Allegations About Pre-Class Period Lawsuits Are Insufficient.

The AC's allegations about pre-class period lawsuits also fail.  Plaintiffs do not plead that Defendants *actually* learned about the lawsuits through due diligence. So Plaintiffs are left with the allegation that due diligence occurred, which is insufficient.  *Dillard v. Platform Specialty Prod. Corp.,* 2016 WL 10586301, at *7 (S.D. Fla. Dec. 8, 2016).[8]  Even if Plaintiffs had pled Defendants' awareness of the lawsuits, that would not establish knowledge that the lawsuits had merit. *See El-Ad Residences at Miramar Condo. Ass'n, Inc. v. Mt. Hawley Ins. Co*., 2011 WL 13174642, at *4 (S.D. Fla. Feb. 23, 2011) ("[P]arties settle cases for a multitude of reasons, many of which are not related to the validity … of the claims asserted."). And where the suits are alleged to have settled between 2013 and 2017 (¶¶ 58-61), their existence does not show Defendants' awareness of allegedly unlawful practices *years later* during the class period. *See* Doc. 49-1 at 18 (collecting cases).[9]

### C.     The CFPB Allegations Fail To Support Scienter.

Attempting to bolster scienter, Plaintiffs recite unproven allegations from the

---

[8] That the due diligence allegations in *San Antonio Fire & Police Pension Fund v. Syneos Health Inc.* related to "large contracts" (Opp. at 24) does not negate that case's ruling that "general due diligence … does not support the inference that Defendants learned any specific information." 75 F.4th 232, 242 (4th Cir. 2023).
[9] Plaintiffs' allegation that "there was an effort to avoid misleading consumers" during the relevant period (¶ 78(d.vi)) also cuts against any inference of scienter.

CFPB Complaint.  Opp. at 24-25.  But they fail to address Defendants' primary argument that *nothing* in the CFPB Complaint suggests that any Individual Defendant participated in or knew about allegedly unlawful practices at Active.  *See* Doc 49-1 at 22-23.  The CFPB's decision *not* to sue (or even mention) the Individual Defendants weighs heavily against any inference that they acted with scienter.  *See* Doc. 49-1 at 22–23.  As this Court rightly held in *Aaron's,* the existence of a lawsuit has "limited" relevance to the "scienter analysis" "unless [it] reveals each defendant's state of mind for the alleged fraud."  2022 WL 4588410, at *8.

Plaintiffs' cases (Opp. at 25) reinforce this point.  In *Eastwood Enterprises, LLC v. Farha*, the defendant "entered into a Deferred Prosecution Agreement," in which it "admitted" to "a criminal conspiracy . . . for the purpose of artificially inflating . . . reported income." 2009 WL 3157668, at *4 (M.D. Fla. Sept. 28, 2009). *Theodore v. Purecycle Technologies, Inc.* likewise "focus[ed] on the company's management," and the court emphasized that "the SEC too suspected that these Defendants in particular played a hand in potential wrongdoing." 2023 WL 4035880, at *8 (M.D. Fla. June 15, 2023).  Such allegations are glaringly absent here.

### D.    The Motive Allegations Fail.

Plaintiffs' argument that "Sloan and Todd were motivated" to conceal "Active's . . . practices because they, specifically, were responsible for GPN's

13

acquisition of Active" (Opp. at 26) misstates both the AC's allegations and the law. Plaintiffs plead that Mr. Todd was not even employed by Global Payments when it purchased Active. *Compare* ¶ 30 ("Todd was GPN's CFO from September 2019 to June 30, 2022") *with* ¶ 70 ("The acquisition was completed on September 1, 2017."). And Plaintiffs' lone cited case held that "the desire to show the success of a recent . . . merger is insufficient" to raise an inference of scienter. *In re Honeywell Int'l, Inc. Sec. Litig.*, 182 F. Supp. 2d 414, 428 (D.N.J. 2002). The motive allegations fail.[10]

## III. Plaintiffs Fail To Plead Loss Causation.

Neither of the two alleged corrective disclosures—the announcement of the CFPB's lawsuit on October 18, 2022 and Mr. Sloan's resignation on May 1, 2023—suffices to plead loss causation under well-established Eleventh Circuit precedent.

### A. The CFPB's Lawsuit Is Not A Corrective Disclosure.

Plaintiffs allege (i) that "during the trading day" on October 18, 2022, "the market learned of the CFPB Complaint" and (ii) that the "price of GPN stock declined" by 1.17% that day "[i]n response to this news." ¶ 129. Defendants have now shown through judicially noticeable information that Global Payments' stock price *increased* after news of the CFPB's lawsuit became publicly available at 1:39

---

[10] Because Plaintiffs fail to allege scienter as to the Individual Defendants, they also fail to allege scienter as to the corporate Defendants. *See Mizzaro*, 544 F.3d at 1254.

p.m. the afternoon of October 18. *See* Doc 49-1 at 27.[11] While Global Payments'

stock price closed lower than it opened on October 18, *that decline occurred earlier*

*in the day, before CFPB's lawsuit became public at 1:39 p.m.* *Compare* Doc. 49-15

(showing stock price of $113.35 immediately before the lawsuit first became public)

*with* ¶ 129 (alleging that stock price closed at $113.67). Plaintiffs thus fail to connect

the October 18 price drop to news of the suit, and the suit thus cannot qualify as a

"corrective" disclosure for that reason alone.

Plaintiffs now shift their focus to the *next* trading day, October 19, 2022.

Remarkably, they posit that the slight (0.88%) price decline on October 19 supports

loss causation "because the CFPB complaint was against Active rather than against

GPN, and thus may have been less rapidly assimilated into GPN's stock price." Opp.

at 28. That argument conflicts with Plaintiffs' allegations that the news about Active

was "material" and that Global Payments stock trades in "an efficient market"

(¶ 150), in which material public information "is immediately digested and

---

[11] Historical stock prices and the timing of news reports can be judicially noticed on a motion to dismiss. *See Waterford Twp. Gen. Emps. Ret. Sys. v. Suntrust Banks, Inc.*, 2010 WL 3368922, at *5 (N.D. Ga. Aug. 19, 2010) (stock prices); *Bascunan v. Elsaca*, 2021 WL 3540315, at *4 (S.D.N.Y. Aug. 11, 2021) (timing and content of press report). Plaintiffs argue that "Defendants offer no facts establishing when investors learned of the information" but Defendants' point is that the price closed *higher* than where it stood when the CFPB suit was first publicly announced, thus severing any connection between the suit and the price drop on October 18.

incorporated into the price of a security." *Meyer v. Greene*, 710 F.3d 1189, 1197 (11th Cir. 2013); *accord FindWhat*, 658 F.3d at 1310; Doc. 49-1 at 27–28 n.11.  In any event, numerous cases have found loss causation inadequately pled where the stock price reaction was under 3%.  *See* Doc. 49-1 at 28 n.11.

Plaintiffs also chide Defendants for failing to "provide another explanation for the October 18 and 19 price declines." Opp. at 29.  But Plaintiffs, not Defendants, carry the burden of adequately pleading loss causation.  Nonetheless, over the two-day period from October 18-19, 2022, the price of Global Payments' stock moved in virtual lock-step with the S&P 500 Index.  *See* Declaration of Peter Starr, Ex. 14.  Thus, the "explanation" for the small decrease in Global Payments' stock price over that period lies in the performance of the broader market.  *See D.E.&J Ltd. P'ship v. Conaway*, 284 F. Supp. 2d 719, 749 n.26 (E.D. Mich. 2003) (finding loss causation not pled and noting that "the stock market, in general, was in a period of decline"), *aff'd*, 133 F. App'x 994 (6th Cir. 2005); *see also FindWhat*, 658 F.3d at 1309 ("The plaintiff must show that the defendant's fraud—as opposed to some other factor— proximately caused his claimed losses.").

Even if Plaintiffs had pleaded a significant negative stock price reaction to the CFPB suit, Eleventh Circuit precedent holds that the announcement of a lawsuit asserting allegations of wrongdoing is not a corrective disclosure.  *See MacPhee v.*

16

*MiMedx Grp., Inc.*, 73 F.4th 1220, 1248 (11th Cir. 2023); Doc. 49-1 at 26. Plaintiffs'

argument that Defendants' cases address "announcements, rather than findings, of

investigations" (Opp. at 27) fails. The CFPB's allegations against Active are not

"findings," and the Eleventh Circuit has made clear that allegations of wrongdoing

only "qualify as a partial corrective disclosure" if they are "coupled with a later

*finding* of fraud or wrongdoing." *Meyer*, 710 F.3d at 1201 n.13 (emphasis added).

The AC does not allege this, and Plaintiffs cite no in-circuit authority distinguishing

"investigations" from "allegations" for loss causation purposes. Instead, courts have

rejected the argument Plaintiffs advance. *See, e.g., Sapssov v. Health Mgmt. Assocs.,

Inc.*, 22 F. Supp. 3d 1210, 1231 (M.D. Fla. 2014) (holding that neither the revelation

of a government investigation or the "filing of a civil complaint" "reveal[ed] the

falsity of a prior statement"), *aff'd*, 608 F. App'x 855 (11th Cir. 2015).

### B.    Mr. Sloan's Resignation Is Not A Corrective Disclosure.

Plaintiffs have not identified a single allegation of fact linking Mr. Sloan's

resignation on May 1, 2023 to the alleged Active Advantage "scheme." That is fatal.

The Eleventh Circuit has explained that "[i]n order to qualify as corrective, the

disclosure must share the same subject matter as the prior misstatement." *FindWhat*,

658 F.3d at 1312 n.28; *see also Goldman Sachs Grp., Inc. v. Arkansas Tchr. Ret.

Sys.*, 141 S. Ct. 1951, 1961 (2021) (rejecting inference that a "back-end price drop"

17

shows "front-end inflation" when "there is a mismatch between the contents of the misrepresentation and the corrective disclosure").  That requirement is not met here. Plaintiffs allege that "analysts described [Sloan's departure] as surprising and confusing" (¶ 131), but they do not allege that anyone suggested Mr. Sloan's resignation was at all related to Active Advantage.  And Plaintiffs' argument that "Sloan's resignation followed revelations about Active Advantage" (Opp. at 30) is insufficient to plead a corrective disclosure.  *See* Doc. 49-1 at 28–29.[12]  Finally, a price drop occurring *more than six months after* the end of the class period cannot support loss causation. *See* Doc. 49-1 at 28.

## IV.    Additional Grounds For Dismissal Of Claims.

*Items 105 and 303.* Plaintiffs appear to concede that they may not predicate a Rule 10b-5 claim on alleged violations of SEC Regulation S-K Items 105 and 303 without independently satisfying the PSLRA's pleading requirements.  *See* Opp. at 18 (citing *Ocwen*, 934 F.3d at 1331, which held "Item 303 imposes a more sweeping disclosure obligation than Rule 10b-5, such that a violation of the former does not

---

[12] Plaintiffs argue that Mr. Sloan's resignation also "constituted a materialization of the risk misrepresented by Defendants." Opp. at 30. The Eleventh Circuit has not decided whether loss causation may be pled by alleging "materialization" of a concealed risk. *Sapssov*, 608 F. App'x at 861 n.7. Regardless, Plaintiffs must allege facts showing "that the fraud-induced inflation that was baked into [their] purchase price was subsequently removed from the stock's price, thereby causing losses." *FindWhat*, 658 F.3d at 1311.  They have not done so.

*ipso facto* indicate a violation of the latter," and *Firemen's Ret. Sys. of St. Louis v. Telos Corp.*, 2023 WL 1512207, at *11 (E.D. Va. Feb. 1, 2023), which held that alleged omissions under Reg. S-K "do not create an independent cause of action," or excuse plaintiffs from satisfying the PSLRA). Plaintiffs have not done so.[13]

***Defendants Face No § 10(b) Liability For Statements They Did Not Make.*** Plaintiffs' arguments and cited cases on statement "maker" liability under *Janus Capital Group, Inc. v. First Derivative Traders*, 564 U.S. 135 (2011) (Opp. at 18–20) only confirm the AC's fatal deficiencies. Plaintiffs argue that the Individual Defendants must have exerted authority and control over the challenged statements because they were "senior" executives. Opp. at 18–19. But Plaintiffs may not plead control and authority based solely on a defendant's position. *See S.E.C. v. Complete Business Solutions Group, Inc.*, 538 F. Supp. 3d 1309, 1338 (S.D. Fla. May 11, 2021). Plaintiffs must plead "specific factual allegations linking [each defendant] to allegedly false and misleading statements." *Plaisance v. Schiller*, 2019 WL

---

[13] Plaintiffs also fail to adequately plead that Defendants knew the Advantage program violated laws, much less that any such violations were "reasonably likely to . . . materially impact" Global Payments' results. *See* 17 C.F.R. § 229.303(b)(2)(ii) ("Describe any **known** trends or uncertainties **that have had or that are reasonably likely to have a material** favorable or unfavorable **impact**" on performance); 17 C.F.R. § 229.105(a) (instructing companies to provide "'Risk Factors' [discussing] the **material** factors that make an investment in the registrant or offering speculative or risky.") (all emphases added); *see also* Doc. 49-1 at 17–20, 24; *id.* at 10–11.

1205628, at *16 (S.D. Tex. Mar. 14, 2019). The AC fails to do so for the statements and defendants listed at page 30 of Defendants' opening brief.[14]

**Section 20(a).** Defendants addressed the AC's 20(a) claim in the text of their opening brief. *See* Doc. 49-1 at 30. The points in footnote 14 of the brief were not "waived." *Cf. Otogenetics, Corp. v. Omega Biosciences, Inc.*, 2018 WL 11243794, at *5 n.3 (N.D. Ga. Aug. 29, 2018) (addressing footnoted argument rather than deeming it waived). Plaintiffs tacitly concede the AC's failure to plead that Facini exercised Section 20(a) "control" as defined by the Eleventh Circuit (*see Theoharous v. Fong*, 256 F.3d 1219, 1227 (11th Cir. 2001)), and as to Whipple, they offer only a "formulaic recitation" of claim elements, which is patently insufficient. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see* Opp. at 30.

## CONCLUSION

As shown above and in Defendants' opening brief, the AC must be dismissed.

Dated: November 15, 2023

*/s/ Michael R. Smith*
Michael R. Smith
Georgia Bar No. 661689
Benjamin Lee

---

[14] The *Thorpe* decisions (cited Opp. at 20), where plaintiffs specifically pled defendants' direct involvement in the preparation of materially misleading financial statements that were included in a challenged SEC filing, are inapposite. *See Thorpe v. Walter Inv. Mgmt.*, Corp., 111 F. Supp. 3d 1336, 1355 (S.D. Fla. 2015).

20

Georgia Bar No. 443082
Peter Starr
Georgia Bar No. 648453
Matthew Rosenthal
Georgia Bar No. 871852
**KING & SPALDING LLP**
1180 Peachtree Street, NE, Suite 1600
Atlanta, Georgia 30309
Tel: (404) 572-4600
Fax: (404) 572-5100
mrsmith@kslaw.com
blee@kslaw.com
pstarr@kslaw.com
mrosenthal@kslaw.com

*Attorneys for Defendants Global Payments,
Inc., Active Network LLC, Jeff Sloan,
Cameron Bready, Paul Todd,
Josh Whipple, and Andrea Facini*

2

## RULE 7.1(D) CERTIFICATION

The undersigned counsel certifies that this document has been prepared with

one of the font and point selections approved by the Court in Local Rule 5.1(C).

_/s/ Michael R. Smith_
Michael R. Smith
Georgia Bar No. 661689

_Counsel for Defendants_

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of November 2023, I electronically filed the above and foregoing with the Clerk using the CM/ECF system, which will automatically send email notification of such filing to all attorneys of record.

/s/ Michael R. Smith
Michael R. Smith
Georgia Bar No. 661689

*Counsel for Defendants*