**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| MIKE SHAFER, DAVID KEATING, and WILLIAM JEFFREY IGOE, on Behalf of Themselves and All Others Similarly Situated,<br><br>        Plaintiff,<br><br>   v.<br><br>GLOBAL PAYMENTS INC., ACTIVE NETWORK LLC, JEFF SLOAN, CAMERON BREADY, PAUL TODD, JOSH WHIPPLE, and ANDREA FACINI,<br><br>Defendants. | Case No. 1:23-cv-00577-LMM |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANTS' MOTION TO CERTIFY QUESTION**
**PRESENTED BY THE COURT'S MARCH 29, 2024 ORDER**
**FOR INTERLOCUTORY REVIEW PURSUANT TO 28 U.S.C. § 1292(b)**

**TABLE OF CONTENTS**

I.   INTRODUCTION ...........................................................................................1

II.  QUESTION PRESENTED.............................................................................2

III. ARGUMENT .................................................................................................3

    A. The Question Presented Is Purely Legal. ........................................................3

    B. Substantial Grounds For Difference Of Opinion Exist Concerning The
       Question Presented. ........................................................................................4

    C. The Question Presented Is Controlling And Its Resolution May
       Materially Advance The Ultimate Termination Of This Litigation. ...............7

       1. Loss causation is an essential element of Plaintiffs' fraud claim..............7

       2. The allegations concerning the disclosure of the CFPB lawsuit do
          not satisfy Rule 9(b). .................................................................................9

IV. CONCLUSION.............................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Acterna Corp. Sec. Litig.*,
   378 F. Supp. 2d 561 (D. Md. 2005)......................................................13

*In re BofI Holding, Inc. Sec. Litig.*,
   977 F.3d 781 (9th Cir. 2020) ...............................................................10

*Bryant v. Apple South, Inc.*,
   25 F. Supp. 2d 1372 (M.D. Ga. 1998) ...................................................4

*Bryant v. Avado Brands, Inc.*,
   187 F.3d 1271 (11th Cir. 1999) .............................................................3

*Carey Camp v. Qualcomm Inc.*,
   2020 WL 1157192 (S.D. Cal. Mar. 10, 2020).....................................14

*Daniels Family 2001 Revocable Trust v. Las Vegas Sands Corp.*,
   — F. Supp. 3d —, 2024 WL 21971 (D. Nev. Jan. 2, 2024)...................10, 12, 13

*Dura Pharms., Inc. v. Broudo*,
   544 U.S. 336 (2005)..........................................................................7, 13

*Eng. v. Edison Int'l*,
   2017 WL 1857243 (S.D. Cal. May 5, 2017) ........................................14

*In re Facebook, Inc. Sec. Litig.*,
   87 F.4th 934 (9th Cir. 2023) ..................................................................5

*Georgia State Conf. of NAACP v. Fayette Cnty. Bd. of Comm'rs*,
   952 F. Supp. 2d 1360 (N.D. Ga. 2013)................................................15

*Irving Firemen's Relief & Ret. Fund v. Uber Techs., Inc.*,
   998 F.3d 397 (9th Cir. 2021) .................................................................5

*Katyle v. Penn Nat'l Gaming, Inc.*,
   637 F.3d 462 (4th Cir. 2011) ..............................................5, 6, 9, 10, 11

*Kiken v. Lumber Liquidators Holdings, Inc.*,
   155 F. Supp. 3d 593 (E.D. Va. 2015) ..................................................10

*Lipton v. Documation, Inc.*,
  590 F. Supp. 290 (M.D. Fla. 1982)..............................................................3

*Lormand v. U.S. Unwired, Inc.*,
  565 F.3d 228 (5th Cir. 2009) .......................................................................5

*Luczak v. Nat'l Beverage Corp.*,
  812 F. App'x 915 (11th Cir. 2020) ..............................................................4

*Mass. Ret. Sys. v. CVS Caremark Corp.*,
  716 F.3d 229 (1st Cir. 2013).........................................................................5

*McFarlin v. Conseco Servs., LLC*,
  381 F.3d 1251 (11th Cir. 2004) ................................................................3, 7

*Meyer v. Green*,
  710 F.3d 1189 (11th Cir. 2013) ...................................................................8

*Nakkhumpun v. Taylor*,
  782 F.3d 1142 (10th Cir. 2015) ...................................................................6

*Nathanson v. Polycom, Inc.*,
  87 F. Supp. 3d 966 (N.D. Cal. 2015).........................................................10

*Ohio Pub. Emps. Ret. Sys. v. Fed. Home Loan Mortg. Corp.*,
  830 F.3d 376 (6th Cir. 2016) .......................................................................5

*Oregon Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*,
  774 F.3d 598 (9th Cir. 2014) ....................................................................5, 6

*Phillips v. Scientific-Atlanta, Inc.*,
  374 F.3d 1015 (11th Cir. 2004) ...................................................................3

*United States ex rel. Clausen v. Lab'y Corp. of Am.*,
  198 F.R.D. 560 (N.D. Ga. 2000) .................................................................9

*United States ex. rel. Powell v. Am. InterContinental Univ., Inc.*,
  756 F. Supp. 2d 1374 (N.D. Ga. 2010).......................................................4

*In re Scientific-Atlanta, Inc. Sec. Litig.*,
  2003 WL 25740734 (N.D. Ga. Apr. 15, 2003)...........................................4

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)......................................................................................6

*Theodore v. Purecycle Techs., Inc.*,
    2022 WL 20157415 (M.D. Fla. Aug. 4, 2022)..........................................4

*In re Witness Sys., Inc. Sec. Litig.*,
    2008 WL 9020540 (N.D. Ga. Mar. 31, 2008) ..........................................8

**Statutes**

28 U.S.C. § 1292(b) ..............................................................................*passim*

Private Securities Litigation Reform Act ("PSLRA").......................................1, 4, 6

Fed. R. Civ. P. 8 ....................................................................................*passim*

Fed. R. Civ. P. 9 ....................................................................................*passim*

## I.   INTRODUCTION

In its Order on Defendants' Motion to Dismiss (Dkt. 55, the "Order"), this Court declined to apply Federal Rule of Civil Procedure 9(b) to the loss causation element of Plaintiffs' securities fraud claim.  Instead, it applied the less-stringent requirements of Rule 8(a)(2) to test the sufficiency of the loss causation allegations in Plaintiffs' Amended Complaint (Dkt. 39, the "AC").  Order at 28.

Defendants seek the Court's permission to pursue immediate appeal of the question of which pleading standard applies to the element of loss causation. Whether Rule 8 or Rule 9(b) governs the pleading of loss causation is a pure question of law, and substantial grounds for difference of opinion exists, as the Fourth and Ninth Circuits have held that Rule 9(b) applies, while the Fifth and Sixth Circuits apply Rule 8.  This question is one of first impression in the Eleventh Circuit, and that court's resolution of this frequently-recurring question of law would benefit courts and litigants within this Circuit.

A conclusion that Rule 9(b) governs allegations of loss causation—as it governs pleading the other elements of securities fraud not supplanted by the even-more-rigorous standards in the Private Securities Litigation Reform Act ("PSLRA")—would materially advance the termination of this litigation.  Because this Court held that one of Plaintiffs' two alleged corrective disclosures could not support loss causation, Plaintiffs' efforts to plead loss causation "are limited only to

their allegations about the CFPB complaint filed in October 2022." Order at 33. The Court concluded that Plaintiffs' general allegations that "GPN's stock price fell after the corrective disclosure" (the CFPB complaint against Global Payments' subsidiary, Active Network LLC) "satisfy the Rule 8 pleading standards for this element." *Id*. at 31–32. But if Rule 9(b) applied, Plaintiffs would have to plead more particularized facts to plausibly allege a price decline caused by correction of the alleged fraud—especially where judicially noticeable facts show that Global Payments' stock price actually *rose* immediately following the alleged corrective disclosure and that its less-than-1% decline the next day was in line with broader market movements. With those particularized facts in play—rather than deemed beyond the scope of the analysis under Rule 8—the implausibility of Plaintiffs' loss causation conclusion would be clear, and dismissal of Plaintiffs' complaint would be required.

Accordingly, Defendants respectfully request that this Court certify the question presented for interlocutory appeal under 28 U.S.C. § 1292(b).

## II.    QUESTION PRESENTED

In a private action alleging securities fraud under Section 10(b) of the Securities Exchange Act of 1934, is the loss causation element of the plaintiff's claim subject to the pleading requirements of Rule 9(b)?

2

## III.   ARGUMENT

Certifying an order for immediate interlocutory review is appropriate where the "order involves a controlling question of law as to which there is substantial ground for difference of opinion and [where] an immediate appeal from the order may materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b).  The question presented here satisfies those criteria.  This Court should certify it for immediate interlocutory review.

### A.   The Question Presented Is Purely Legal.

Review under § 1292(b) is proper where "the court of appeals can rule on a pure, controlling question of law without having to delve beyond the surface of the record in order to determine the facts." *McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1259 (11th Cir. 2004).  The question presented here—identifying the applicable standard for pleading the loss causation element of a claim under Section 10(b)—is a pure legal question.  *See Phillips v. Scientific-Atlanta, Inc.*, 374 F.3d 1015, 1015–16 (11th Cir. 2004) (addressing certified question concerning scienter pleading standard); *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1281 (11th Cir. 1999) (same); *Lipton v. Documation, Inc.*, 590 F. Supp. 290, 292 (M.D. Fla. 1982) (finding that an order addressing securities fraud pleading issues presented "precisely the type of question for which § 1292(b) was drafted").  Further, certifying this question for review would afford the Eleventh Circuit an opportunity

3

to provide guidance concerning a fundamental pleading issue that arises in all securities fraud cases, which further enhances the desirability of certification. *See In re Scientific-Atlanta, Inc. Sec. Litig.*, 2003 WL 25740734, at \*1 (N.D. Ga. Apr. 15, 2003) ("In determining whether permission for an interlocutory appeal should be granted, the Court may also consider … whether the certified issue could have precedential value for a large number of cases.") (citation omitted).

### B. Substantial Grounds For Difference Of Opinion Exist Concerning The Question Presented.

Substantial grounds for difference of opinion exist where "the issue is difficult and of first impression" or where "the circuits are split on the issue." *United States ex. rel. Powell v. Am. InterContinental Univ., Inc.*, 756 F. Supp. 2d 1374, 1378–79 (N.D. Ga. 2010) (citation omitted); *accord Bryant v. Apple South, Inc.*, 25 F. Supp. 2d 1372, 1383 (M.D. Ga. 1998).  Both are true here.

*First*, as this Court recognized, the pleading standard applicable to allegations of loss causation is an issue of first impression in the Eleventh Circuit. *See* Order at 28 n.7.  For its part, the Eleventh Circuit has likewise noted that it has not yet "taken a position on whether … heightened pleading standards apply to allegations of loss causation." *Luczak v. Nat'l Beverage Corp.*, 812 F. App'x 915, 920 (11th Cir. 2020) (explaining that the court "need not resolve that question in this case because we conclude that [plaintiff] has alleged loss causation … even under the heightened pleading standards of Rule 9(b) and the PSLRA"); *see also Theodore v. Purecycle*

4

*Techs., Inc.*, 2022 WL 20157415, at \*16 n.21 (M.D. Fla. Aug. 4, 2022) (noting that "there is no established rule within this Circuit" concerning whether loss causation must be pled with particularity).

**Second**, there is a split in Court of Appeals authority on the issue. The Fourth and Ninth Circuits have held that Rule 9(b) applies to loss causation. *See Oregon Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 605 (9th Cir. 2014) ("Rule 9(b) applies to all elements of a securities fraud action, including loss causation."); *Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 471 (4th Cir. 2011) (loss causation must be pled with "sufficient specificity, a standard largely consonant with [Rule] 9(b)'s requirement that averments of fraud be pled with particularity") (internal citation omitted); *see also In re Facebook, Inc. Sec. Litig.*, 87 F.4th 934, 954 (9th Cir. 2023) (noting that loss causation must be pled with particularity); *Irving Firemen's Relief & Ret. Fund v. Uber Techs., Inc.*, 998 F.3d 397, 404–05 (9th Cir. 2021) (assessing the sufficiency of allegations of loss causation under Rule 9(b)). In contrast, the Fifth and Sixth Circuits apply Rule 8 to the element of loss causation. *See Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 258 (5th Cir. 2009); *Ohio Pub. Emps. Ret. Sys. v. Fed. Home Loan Mortg. Corp.*, 830 F.3d 376, 384 (6th Cir. 2016). This circuit split is widely acknowledged. *See, e.g., Mass. Ret. Sys. v. CVS Caremark Corp.*, 716 F.3d 229, 239 n.6 (1st Cir. 2013) (highlighting split of authority and noting it is "unclear whether a plaintiff may plead loss causation with

5

'a short and plain statement'" under Rule 8 or if "there is a heightened standard akin"

to Rule 9(b)); *Nakkhumpun v. Taylor*, 782 F.3d 1142, 1153–54 (10th Cir. 2015)

(noting the uncertainty on this issue but finding it unnecessary to address).

In holding that Rule 9(b) governs the pleading of loss causation, the Fourth

Circuit explained that, before the PSLRA was enacted, securities fraud complaints

were comprehensively governed by Rule 9(b); and since the PSLRA "does not

address the pleading standards applicable to" loss causation, "presumably … Rule

9(b) still applies to those elements." *Katyle*, 637 F.3d at 471 n.5; *see also Tellabs,*

*Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007) ("Prior to the

enactment of the PSLRA, the sufficiency of a complaint for securities fraud was

governed not by Rule 8, but by the heightened pleading standard set forth in Rule

9(b)."). The Fourth Circuit also explained that loss causation is "among the

circumstances" constituting fraud and therefore must be pled with particularity

according to the plain terms of Rule 9(b). *Katyle*, 637 F.3d at 471 n.5. Similarly,

the Ninth Circuit reasoned that: (1) "the law on securities fraud is derived from

common-law fraud" and "Rule 9(b) applies to all circumstances of common-law

fraud"; (2) "[l]oss causation is part of the 'circumstances' constituting fraud because,

without it, a claim of securities fraud does not exist"; and (3) applying Rule 9(b) to

loss causation creates a "consistent standard … to assess pleadings in 10(b) actions"

instead of a "piecemeal standard." *Apollo Grp. Inc.*, 774 F.3d at 604. If the question

6

presented here were certified to the Eleventh Circuit, the cogent reasoning of these decisions would likely be persuasive.

The lack of Eleventh Circuit guidance on the issue combined with the circuit split demonstrates that there are substantial grounds for difference of opinion on the proper standard for pleading loss causation, making it appropriate for interlocutory review under § 1292(b).

### C. The Question Presented Is Controlling And Its Resolution May Materially Advance The Ultimate Termination Of This Litigation.

Finally, certification under § 1292(b) is appropriate because the question presented is controlling and its resolution may materially advance the ultimate termination of this litigation. "This is not a difficult requirement to understand. It means that resolution of a controlling legal question would serve to avoid a trial or otherwise substantially shorten the litigation." *McFarlin*, 381 F.3d at 1259 (citation omitted). As explained below, the question presented here would dispose of the case entirely and thus easily meets this requirement.

### 1. Loss causation is an essential element of Plaintiffs' fraud claim.

The Supreme Court has recognized that "loss causation"—the "causal connection between the material misrepresentation and the [plaintiff's claimed] loss"—is one of the "basic elements" of a 10b-5 action. *Dura Pharms., Inc. v.*

*Broudo*, 544 U.S. 336, 341 (2005).[1] If a securities plaintiff has not adequately alleged loss causation, the action must be dismissed. *See Meyer v. Green*, 710 F.3d 1189, 1201–02 (11th Cir. 2013) (affirming dismissal of complaint for failure to adequately allege loss causation*)*; *In re Witness Sys., Inc. Sec. Litig.*, 2008 WL 9020540, at *11 (N.D. Ga. Mar. 31, 2008) ("In this case, dismissal is required because the [complaint] fails to adequately plead loss causation."), *aff'd sub nom. Rosenberg v. Gould*, 554 F.3d 962 (11th Cir. 2009).

An Eleventh Circuit decision following the Fourth and Ninth Circuits and holding that Rule 9(b) governs loss causation pleading would dispose of this case because Plaintiffs' allegations of loss causation are insufficiently particularized to meet that rule's heightened pleading standard. Plaintiffs alleged only two corrective disclosures. *See* AC ¶ 128 (identifying October 18, 2022 and May 1, 2023 as the two dates on which "artificial inflation in the price of GPN common stock was removed when … the truth about the material misrepresentations" was "revealed"). This Court has already ruled that Plaintiffs cannot plead loss causation based on the alleged corrective disclosure on May 1, 2023—the date of Mr. Sloan's post-Class Period resignation as CEO. Order at 32–33. So Plaintiffs are left with only one

---

[1] Because the allegations in *Dura* did not satisfy even Rule 8's more lenient standards, the Supreme Court "assume[d], at least for argument's sake, that neither the [Federal] Rules nor the securities statutes impose any special further requirement" for pleading loss causation. *Id.* at 346. Thus, *Dura* did not purport to decide the question either way.

alleged corrective disclosure—the filing of the CFPB complaint on October 18, 2022. *Id.* at 33 ("Plaintiffs cannot rely on their allegations about Sloan's departure for loss causation and are limited only to their allegations about the CFPB complaint filed in October 2022 for this element."). The Court held that these allegations satisfied Rule 8, but declined to say whether they would satisfy Rule 9(b). *Id.* at 31–32. As explained below, they would not.

### 2. The allegations concerning the disclosure of the CFPB lawsuit do not satisfy Rule 9(b).

Rule 9(b) requires a plaintiff to "present[] in detail the 'who, what, when, where, and how' of the alleged fraud." *United States ex rel. Clausen v. Lab'y Corp. of Am.*, 198 F.R.D. 560, 561 (N.D. Ga. 2000) (citation omitted), *aff'd*, 290 F.3d 1301 (11th Cir. 2002). That particularity requirement serves to assist the court in assessing plausibility by ensuring that, where fraud is at issue, plaintiffs cannot skate by with generalized allegations. In the context of loss causation, "the degree of specificity demanded is that which will enable the court to evaluate whether the necessary causal link exists." *Katyle*, 637 F.3d at 471. In other words, "the complaint must allege a sufficiently direct relationship between the plaintiff's economic loss and the defendant's fraudulent conduct"; if "the connection is attenuated[,] a fraud claim will not lie." *Id.* at 472 (citation omitted).

There are numerous factors courts can consider to determine whether, in a given case, loss causation is adequately pled under Rule 9(b). These include, for

9

example, (1) the magnitude of the stock price reaction, *see In re BofI Holding, Inc. Sec. Litig.*, 977 F.3d 781, 791 (9th Cir. 2020) (noting that "stock price fell by more than 30% on extremely high trading volume immediately after" the corrective disclosure); (2) whether the stock price decline occurred promptly after the release of corrective information, *see id.*; *Kiken v. Lumber Liquidators Holdings, Inc.*, 155 F. Supp. 3d 593, 609 (E.D. Va. 2015); (3) how market participants like stock analysts reacted to the news, *see Nathanson v. Polycom, Inc.*, 87 F. Supp. 3d 966, 985 (N.D. Cal. 2015) ("[A]nalyst responses quoted in the Complaint suggest[] that the market was responding to the disclosure of the [allegedly concealed] misconduct"); (4) whether the stock price decline was abnormal in comparison with the broader market or that security's historical trading patterns, *see Daniels Family 2001 Revocable Trust v. Las Vegas Sands Corp.*, — F. Supp. 3d —, 2024 WL 21971, at *11-12 (D. Nev. Jan. 2, 2024);[2] and (5) the degree of overlap between the alleged corrective disclosures and the alleged misrepresentations, *see Katyle*, 637 F.3d at 478 (complaint failed to allege that the corrective "disclosures revealed to the market something about the fraudulent nature of" the alleged misstatements).

---

[2] In *Daniels Family*, the court noted that the stock at issue experienced "regular price fluctuations" and found loss causation lacking because plaintiffs had not plausibly alleged that certain price declines were due to "fraud rather than industry-wide turmoil, given that the peer stocks and industry index appear to move in tandem with [the subject stock's] decline." *Id.* at *12.

10

Plaintiffs' allegations here fall short of what Rule 9(b) requires.  Plaintiffs fail to plead with particularity the time on October 18, 2022 at which the CFPB lawsuit was announced (the "*when*," for 9(b) purposes) and instead allege only generally that the market learned of the news "during the trading day."  AC ¶ 129.  The Complaint also lacks particularized allegations addressing *how* Global Payments' stock performed after the news became public, instead quoting only the day's opening and closing trading prices.  *Id.*  Nor do Plaintiffs plead *any* facts suggesting that market participants—*e.g.*, analysts or financial journalists—attributed the stock price reaction to the announcement.  Indeed, Plaintiffs' only loss causation allegations with respect to this alleged corrective disclosure are that Global Payments' stock price declined by 1.17% (or $1.33) from opening to closing on October 18—the day of the CFPB announcement—and then by another 0.88% ($1.00) the next day.  *Id.*; *see also id.* ¶ 86 (alleging in conclusory terms that Global Payments' stock price declined "[i]n response to th[e] news" of the CFPB complaint).

The lack of particularity in Plaintiffs' allegations is especially significant here, where judicially noticeable facts show that Plaintiffs' reliance on highly generalized loss causation allegations is no accident.  *See* Dkt. 49-1 at 26-27; Dkt. 53 at 14-17.  Particularized allegations about the "when" of the alleged corrective disclosure would have shown that news of the CFPB's lawsuit was first publicly reported at

11

1:39 p.m. on October 18, 2022, *see* Dkt. 49-14—at which time shares of Global Payments stock were trading at $113.35, *see* Dkt. 49-15.  That particularity would have undermined Plaintiffs' generalized allegation that the stock price declined "[i]n response to th[e] news" of the CFPB suit, AC ¶ 86, because in fact, Global Payments' stock price *increased* over the remainder of the day's trading to close at $113.67. *See id.* ¶ 129; *see also* Dkt. 49-1 at 27.[3]  "[D]isclosures that are 'unaccompanied by a stock price drop'" cannot show loss causation.  *Daniels Family*, 2024 WL 21971, at *11 (quoting *In re Facebook*, 87 F.4th at 954).

And while Plaintiffs also point to the 0.88% decline in Global Payments' stock price on October 19, 2022, *see* AC ¶ 129, the judicially noticeable facts before the Court again undercut the plausibility of any inference that the prior day's news of the CFPB lawsuit caused this drop.  Specifically, "the price of Global Payments' stock moved in virtual lock-step with the S&P 500 Index" on both October 18 and 19, 2022, Dkt. 53 at 16, as reflected in the following chart (excerpted from Dkt. 53-2):

---

[3] Plaintiffs do not dispute that these facts or the information sources from which they are derived are properly subject to judicial notice.



Where "peer stocks and [the] industry index appear to move in tandem with [the stock's] decline," Rule 9(b) requires more than what Plaintiffs have provided here. *Daniels Family*, 2024 WL 21971, at *12.

The Supreme Court has recognized that a security's "lower price may reflect, not the earlier misrepresentation, but changed economic circumstances, changed investor expectations, new industry-specific or firm-specific facts, conditions, or other events, which taken separately or together account for some or all of that lower price." *Dura Pharms*., 544 U.S. at 343; *see, e.g., In re Acterna Corp. Sec. Litig.*, 378 F. Supp. 2d 561, 588 (D. Md. 2005) (94% stock price drop attributable to "severe economic slowdown that continued throughout the Class Period" could not support loss causation allegation). To disentangle stock drops resulting from fraud from

13

those caused by market conditions, courts applying Rule 9(b) to allegations of loss causation regularly reject claims based on small price flutters like those at issue here. *E.g.*, *Carey Camp v. Qualcomm Inc.*, 2020 WL 1157192, at *6 (S.D. Cal. Mar. 10, 2020) (noting that "securities complaints tend to be predicated on double digit declines" and categorizing a two-day 4.02% stock drop as "minimal"); *Eng. v. Edison Int'l*, 2017 WL 1857243, at *4 (S.D. Cal. May 5, 2017) ("scanty .79% to 2.71% declines" were not *"plausibly* alleged" to be "statistically significant" (emphasis in original)) & *id.* at 3 n.7 (noting that the court assessed loss causation under Rule 9(b)).

Both of the minimal stock price declines on which Plaintiffs rely are entirely consistent with routine market fluctuation. The highly generalized pleading approach taken by Plaintiffs obscures this reality, but particularized allegations about "how" the news of the CFPB suit supposedly caused Global Payments' stock price to decline by revealing prior statements to be fraudulent would bring the implausibility of Plaintiffs' theory into sharp relief. Indeed, when the particularized facts of the announcement's timing and subsequent stock-price changes are considered, one of the two changes on which Plaintiffs rely is *not even a decline*. *See* Dkt. 49-1 at 27 (citing Dkts. 49-12 – 49-15 & AC ¶ 129).

Plaintiffs' case, in short, could not proceed on their thinly pleaded allegations if Rule 9(b) applied. Accordingly, if the Eleventh Circuit follows the cogent

14

reasoning of the Fourth and Ninth Circuits and concludes that Rule 9(b) governs

allegations of loss causation, dismissal of Plaintiffs' complaint would be appropriate,

"materially advanc[ing] the ultimate termination of the litigation."  *See* 28 U.S.C.

§ 1292(b).[4]

## IV.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court

amend its March 29, 2024 Order to certify the question presented herein for

interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

Respectfully submitted this 18th day of April 2024.

> /s/ Michael R. Smith
> Michael R. Smith
> Georgia Bar No. 661689
> Benjamin Lee
> Georgia Bar No. 443082
> Peter Starr
> Georgia Bar No. 648453
> Matthew Rosenthal
> Georgia Bar No. 871852
> **KING & SPALDING LLP**
> 1180 Peachtree Street, NE, Suite 1600

---

[4] Under the plain terms of § 1292(b), certification is appropriate where an immediate appeal "*may* materially advance the ultimate termination of the litigation."  *Id.* (emphasis added).  Accordingly, while Defendants believe it is clear that Plaintiffs' complaint could not survive scrutiny under Rule 9(b), it is sufficient for certification that the choice between Rule 8 and Rule 9(b) may well be dispositive.  *See Georgia State Conf. of NAACP v. Fayette Cnty. Bd. of Comm'rs*, 952 F. Supp. 2d 1360, 1362 (N.D. Ga. 2013) (interlocutory appeal appropriate where the question presented "has the potential of substantially accelerating disposition of the litigation, even if it would not terminate the case") (citations omitted).

15

Atlanta, Georgia 30309
Tel: (404) 572-4600
Fax: (404) 572-5100
mrsmith@kslaw.com
blee@kslaw.com
pstarr@kslaw.com
mrosenthal@kslaw.com

*Attorneys for Defendants Global Payments,
Inc., Active Network LLC, Jeff Sloan,
Cameron Bready, Paul Todd,
Josh Whipple, and Andrea Facini*

16

## **RULE 7.1(D) CERTIFICATION**

The undersigned counsel certifies that this document has been prepared with

one of the font and point selections approved by the Court in Local Rule 5.1(C).

> */s/ Michael R. Smith*
> Michael R. Smith
> Georgia Bar No. 661689
>
> *Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of April 2024, I electronically filed the above and foregoing with the Clerk using the CM/ECF system, which will automatically send email notification of such filing to all attorneys of record.

/s/ Michael R. Smith
Michael R. Smith
Georgia Bar No. 661689

*Counsel for Defendants*