# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

|  |  |
|---|---|
| MIKE SHAFER, DAVID KEATING, and WILLIAM JEFFREY IGOE, on Behalf of Themselves and All Others Similarly Situated,<br><br>     Plaintiff,<br><br> v.<br><br>GLOBAL PAYMENTS INC., ACTIVE NETWORK LLC, JEFF SLOAN, CAMERON BREADY, PAUL TODD, JOSH WHIPPLE, and ANDREA FACINI,<br><br>Defendants. | Case No. 1:23-cv-00577-LMM |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO CERTIFY QUESTION
PRESENTED BY THE COURT'S MARCH 29, 2024 ORDER
<u>FOR INTERLOCUTORY REVIEW PURSUANT TO 28 U.S.C. § 1292(b)</u>**

**TABLE OF CONTENTS**

I.  INTRODUCTION .................................................................................1

II.  ARGUMENT .....................................................................................2

    A.  The Question Presented is Purely Legal. .......................................2

    B.  Substantial Ground for Difference of Opinion Exists. ....................4

    C.  The Question Presented is Controlling, and its Resolution Will
        Materially Advance the Ultimate Termination of this Litigation. ..................9

        1.  Plaintiffs' loss causation allegations do not satisfy Rule 9(b). ..................9

        2.  Plaintiffs' hypotheticals do not undermine the appropriateness of
           interlocutory review..................................................................14

III. CONCLUSION.................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abner v. U.S. Pipe & Foundry Co.*,
2018 WL 3804188 (N.D. Ala. Feb. 21, 2018)......................................................5

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...........................................................................................13

*Beckel v. Fagron Holding USA, LLC*,
2017 WL 3730395 (M.D. Fla. June 30, 2017) .....................................................7

*Bryant v. Avado Brands, Inc.*,
187 F.3d 1271 (11th Cir. 1999) .......................................................................2, 3

*Burt v. Maasberg*,
2013 WL 1314160 (D. Md. Mar. 31, 2013) .........................................................6

*CCP SP Hotel, LLC v. Heritage Hotel Assocs., LLC*,
2021 WL 229532 (M.D. Fla. Jan. 22, 2021) .......................................................2

*Coyne v. Metabolix, Inc.*,
943 F. Supp. 2d 259 (D. Mass. 2013).............................................................5, 6

*Dura Pharms., Inc. v. Broudo*,
544 U.S. 336 (2005)...................................................................................4, 5, 7

*Durham v. Whitney Info. Network, Inc.*,
2009 WL 3783375 (M.D. Fla. Nov. 10, 2009)....................................................7

*In re eSpeed, Inc. Sec. Litig.*,
457 F. Supp. 2d 266 (S.D.N.Y. 2006) .................................................................5

*Georgia State Conf. of NAACP v. Fayette Cnty. Bd. of Comm'rs*,
952 F. Supp. 2d 1360 (N.D. Ga. 2013)..............................................................14

*Giardiello v. Balboa Ins. Co.*,
661 F. Supp. 644 (S.D. Fla. 1985) ......................................................................5

*Grand Lodge of Pa. v. Peters*,
2008 WL 2790237 (M.D. Fla. July 15, 2008) .....................................................3

ii

*Int'l Brominated Solvents Ass'n v. Am.*
   *Conf. of Governmental Indus. Hygienists, Inc.*,
   2005 WL 8165516 (M.D. Ga. July 12, 2005)....................................................15

*Katyle v. Penn Nat. Gaming, Inc.*,
   637 F.3d 462 (4th Cir. 2011) ...............................................................5, 6

*Kohen v. Pac. Inv. Mgmt. Co.*,
   571 F.3d 672 (7th Cir. 2009) ...................................................................9

*Mass. Ret. Sys. v. CVS Caremark Corp.*,
   716 F.3d 229 (1st Cir. 2013)....................................................................6

*McFarlin v. Conseco Servs., LLC*,
   381 F.3d 1251 (11th Cir. 2004) ..........................................................4, 15

*Mustafic v. U.S. Att'y Gen.*,
   591 F. App'x 726 (11th Cir. 2014) ...........................................................2

*Nest USA, Inc. v. Shaw*,
   2005 WL 8158366 (N.D. Ala. Sept. 7, 2005).............................................7

*Phillips v. Scientific-Atlanta, Inc.*,
   374 F.3d 1015 (11th Cir. 2004) ................................................................2

*United States ex rel. Powell v. Am. InterContinental Univ., Inc.*,
   756 F. Supp. 2d 1374 (N.D. Ga. 2010)......................................................4

*Proffitt v. Wainwright*,
   685 F.2d 1227 (11th Cir. 1982) ..............................................................10

*In re Sahlen & Assocs., Inc. Sec. Litig.*,
   773 F. Supp. 342 (S.D. Fla. 1991)............................................................7

*In re Suntrust Banks, Inc. ERISA Litig.*,
   2011 WL 13824 (N.D. Ga. 2011).........................................................6, 7

*Theodore v. Purecycle Techs., Inc.*,
   2022 WL 20157415 (M.D. Fla. Aug. 4, 2022)...........................................8

*TSC Industries, Inc. v. Northway, Inc.*,
   426 U.S. 438 (1976).................................................................................2

iii

*Trondheim Cap. Partners, LP v. Life Ins. Co. of Alabama*,
    505 F. Supp. 3d 1213 (N.D. Ala. 2020)...............................................................7

*Urvan v. v. TVP Ventures, LLC*,
    2021 WL 8648896 (N.D. Ga. Mar. 25, 2021) .....................................................8

**Statutes**

28 U.S.C. § 1292(b) .......................................................................................*passim*

Securities Exchange Act of 1934............................................................................2

iv

## I.     INTRODUCTION

Plaintiffs' Opposition (Dkt. 57, "Opp.") fails to rebut Defendants' showing that the Court's Order addressing the loss causation pleading standard should be certified for interlocutory review. *First*, contrary to Plaintiffs' strawman assertions, Defendants do not propose to ask the Eleventh Circuit to "wad[e] through Plaintiffs' factual allegations" or "mak[e] highly technical factual determinations." *See* Opp. at 13. Defendants' Motion instead presents a pure question of law: what standard governs the pleading of loss causation—Rule 8 or Rule 9(b)? The Eleventh Circuit can answer that question without addressing whether Plaintiffs satisfy the applicable standard. *Second*, Plaintiffs' focus on the standard applied by district courts *within* the Eleventh Circuit ignores that the existence of a split in court of appeals authority suffices to establish a "substantial ground for difference of opinion" under 28 U.S.C. § 1292(b). Plaintiffs concede that such a split exists. *Finally*, Plaintiffs argue that certification would not "materially advance" this litigation because they would amend their complaint to satisfy Rule 9(b). But that argument misstates the governing legal standards—and puts the cart before the horse.

In short, Plaintiffs have no persuasive answer to Defendants' showing that all three requirements for § 1292(b) review are met. The Court should grant certification and allow the Eleventh Circuit to resolve the long-running and broadly important question of which pleading standard applies to loss causation allegations.

## II.  ARGUMENT

### A.  The Question Presented is Purely Legal.

Plaintiffs contend that the question presented is "fact-intensive."  Opp. at 13. Not so.  Determining the governing legal standard is an "abstract legal issue that can be decided quickly and cleanly."  *CCP SP Hotel, LLC v. Heritage Hotel Assocs., LLC*, 2021 WL 229532, at *4 (M.D. Fla. Jan. 22, 2021); *see also Mustafic v. U.S. Att'y Gen.*, 591 F. App'x 726, 729 (11th Cir. 2014) ("Whether the agency applied an *incorrect legal standard* presents *a question of law*.") (emphasis added).  Indeed, the Supreme Court's seminal decision setting forth the governing standard for "resolving the question of materiality" with respect to Exchange Act claims—*TSC Industries, Inc. v. Northway, Inc.*—stemmed from an interlocutory appeal under § 1292(b).  426 U.S. 438, 443–44 (1976).  And the Eleventh Circuit has repeatedly granted § 1292(b) review to address questions pertaining to securities-fraud pleading standards.  *See Phillips v. Scientific-Atlanta, Inc.*, 374 F.3d 1015, 1015–16 (11th Cir. 2004); *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1281 (11th Cir. 1999).

Plaintiffs' contrary argument rewrites the question presented.  Plaintiffs point to "the 'numerous factors' listed in Defendants' Motion" and contend that "whether, and when, a Plaintiff must plead facts regarding [them]" would be "an expansive, fact-intensive issue."  Opp. at 2–3, 12–13.  But Defendants do not seek leave to ask the Eleventh Circuit to "address those 'numerous factors' at the pleading stage" or

2

apply them to "Plaintiffs' factual allegations." *Id*. at 13. Instead, as Defendants' Motion to Certify makes clear, those are factors "courts can consider to determine whether, in a given case, loss causation is adequately pleaded under Rule 9(b)." *See* Dkt. 56-1 ("Motion" or "Mot.") at 9–10. Whether a complaint satisfies Rule 9(b) is a distinct question from whether Rule 9(b) applies at all.

In other words, Plaintiffs have confused the question of *which* legal standard applies with *how* this Court should apply that standard to this case. The latter is a question that the Eleventh Circuit could decline to reach. In *Bryant*, for instance, the Eleventh Circuit noted that the parties' briefing included "several arguments relating to the sufficiency of the allegations." 187 F.3d at 1275 & n.4. But the court "decline[d] to address such arguments," opting instead to decide only "two discrete legal issues," while noting that the "district court will on remand reconsider [the sufficiency of the allegations] in light of this opinion." *Id.*; *cf. Grand Lodge of Pa. v. Peters*, 2008 WL 2790237, at *1 (M.D. Fla. July 15, 2008) (explaining that a "substantial ground for difference of opinion means whether courts espouse different opinions as to the particular question of law, *separate and apart from an application of the law to the facts*") (emphasis added).

Here, the Eleventh Circuit could fully answer the question presented by holding that allegations of loss causation must satisfy Rule 9(b). The Eleventh Circuit could remand to *this* Court to consider in the first instance whether Plaintiffs'

3

complaint meets that standard.  Accordingly, this is a case where "the court of appeals can rule on a pure, controlling question of law without having to delve beyond the surface of the record in order to determine the facts."  *McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1259 (11th Cir. 2004).  Despite Plaintiffs' efforts to suggest otherwise, this case presents precisely the type of question for which § 1292(b) was intended.[1]

### B.    Substantial Ground for Difference of Opinion Exists.

Similarly meritless is Plaintiffs' attack on the substantial ground for difference of opinion on the question presented.  Substantial grounds exist where the issue is one of first impression or the courts of appeals are split.  *United States ex rel. Powell v. Am. InterContinental Univ., Inc*., 756 F. Supp. 2d 1374, 1378–79 (N.D. Ga. 2010) (citation omitted).  This question satisfies both criteria.

*First,* Plaintiffs do not contest that the question presented is undecided in the Eleventh Circuit.  At a minimum, therefore, it is a question of first impression here, as this Court has already recognized.  *See* Dkt. 55, Motion to Dismiss Order ("Order") at 28 n.7; Mot. at 4.

*Second,* Plaintiffs exaggerate the import of dicta in the Supreme Court's *Dura*

---

[1] To the extent Plaintiffs fear that the Eleventh Circuit may *elect* to consider factual questions implicated by this Court's Order, *see* Opp. at 14 n.5, their quibble is with the statute.  If the Eleventh Circuit grants review, "appellate jurisdiction applies to the *order* certified … and is not tied to the particular question formulated by the district court." *McFarlin*, 381 F.3d at 1255 (citation omitted).

decision, which stated: "we assume, at least for argument's sake, that neither the Rules nor the securities statutes impose any special further requirement" for pleading loss causation. Opp. at 4–5; *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346 (2005). In *Dura*, the Supreme Court concluded that plaintiffs failed to meet even the *lower* Rule 8 standard, so it had no need to decide which standard applied. *Id.* Numerous courts have since recognized that the *Dura* Court took no position on whether Rule 8 or Rule 9(b) governs pleading loss causation. *See, e.g.*, *Katyle v. Penn Nat. Gaming, Inc.*, 637 F.3d 462, 470 n.5 (4th Cir. 2011) (*Dura* resulted in "[u]ncertainty" because it "only '*assume[d], at least for argument's sake*," that Rule 8 applied).[2]

*Third*, and just as importantly, the circuits have split on the question. Plaintiffs concede the split: they acknowledge that the Fifth and Sixth Circuits apply Rule 8 while the Ninth Circuit "definitively holds that Rule 9(b) applies to loss causation allegations." Opp. at 6–7. That alone is sufficient to satisfy § 1292(b). *See Abner v. U.S. Pipe & Foundry Co.*, 2018 WL 3804188, at *2 (N.D. Ala. Feb. 21, 2018) (certifying question where the Fourth and Fifth Circuits were split on an issue the Eleventh Circuit had not yet addressed); *Giardiello v. Balboa Ins. Co.*, 661 F. Supp.

---

[2] *Accord In re eSpeed, Inc. Sec. Litig.*, 457 F. Supp. 2d 266, 295 (S.D.N.Y. 2006) ("Plaintiffs incorrectly assert that *Dura* adopted a liberal notice pleading standard for loss causation."); *Coyne v. Metabolix, Inc.*, 943 F. Supp. 2d 259, 274 (D. Mass. 2013) (criticizing the Fifth Circuit's reliance on *Dura* to hold that Rule 8 governs the pleading of loss causation because the Supreme Court "specifically did not decide the issue"); *see also* Order at 28 n.7 (citing the lack of "Supreme Court precedent" on the question).

5

644, 646 (S.D. Fla. 1985) (certifying question due to "dichotomy" between the "square holdings of the Ninth Circuit" and the "implied holding[]" of the pre-split Fifth Circuit), *rev'd in part on other grounds*, 837 F.2d 1566 (11th Cir. 1988).

Despite conceding the existence of a circuit split, Plaintiffs seek to minimize it by asserting that the Fourth Circuit's position is "far less definitive than characterized by Defendants." Opp. at 6. But a circuit split does not require more than one court on each side, as explained above. And Plaintiffs are wrong to contend that the Fourth Circuit does not require allegations of loss causation to satisfy Rule 9(b). That court clearly held in *Katyle* that "[w]e review allegations of loss causation for 'sufficient specificity,' a standard largely consonant with Fed. R. Civ. P. 9(b)[.]" 637 F.3d at 471 & n.5. Other courts have likewise recognized that the Fourth Circuit applies Rule 9(b) to loss causation allegations. *See, e.g.*, *Mass. Ret. Sys. v. CVS Caremark Corp.*, 716 F.3d 229, 239 n.6 (1st Cir. 2013) (Souter, J.) (noting that the Fourth Circuit "appli[es] Rule 9(b)"); *Burt v. Maasberg*, 2013 WL 1314160, at *14 (D. Md. Mar. 31, 2013) (*Katyle* "appl[ied] Rule 9 to element of loss causation"); *Coyne v. Metabolix, Inc.*, 943 F. Supp. 2d 259, 273 (D. Mass. 2013) (similar).

*Finally,* Plaintiffs seek to distract from the circuit split by emphasizing the supposed "weight of authority" in district court decisions from within this Circuit. *See* Opp. at 5. That is irrelevant. The existence of a circuit split itself satisfies § 1292(b)'s substantial-ground requirement. *In re Suntrust Banks, Inc. ERISA Litig.*,

2011 WL 13824, at *2 (N.D. Ga. Jan. 3, 2011) (citing cases). Regardless, Plaintiffs are wrong to claim that there is not "a single court in the Eleventh Circuit that has held" that Rule 9(b) applies to loss causation (Opp. at 5). *See In re Sahlen & Assocs., Inc. Sec. Litig.*, 773 F. Supp. 342, 351 (S.D. Fla. 1991) (noting that arguments as to reliance, scienter, and loss causation will "[e]ach … be considered in light of Rule 9(b)'s requirement of pleading fraud with particularity"); *Beckel v. Fagron Holding USA, LLC*, 2017 WL 3730395, at *9 (M.D. Fla. June 30, 2017) (finding that the plaintiff "failed to plead with particularity" a "significant or substantial connection between Defendants' allegedly false statements … and the drop in the [company's] stock price"); *Trondheim Cap. Partners, LP v. Life Ins. Co. of Alabama*, 505 F. Supp. 3d 1213, 1229 (N.D. Ala. 2020) (stating that the fraud on the market theory "carr[ies] with it a strict pleading standard" for loss causation); *see also Nest USA, Inc. v. Shaw*, 2005 WL 8158366, at *4 (N.D. Ala. Sept. 7, 2005) (the complaint did not provide "proper specificity" as to economic loss).

In addition, district courts within this Circuit have signaled uncertainty about which standard applies due to the absence of binding circuit guidance. *See Durham v. Whitney Info. Network, Inc.,* 2009 WL 3783375, at *19 (M.D. Fla. Nov. 10, 2009) (explaining that "*Dura* did not resolve the issue of whether Rule 8 or Rule 9(b) should be applied" and that "lower courts are divided on the issue"). This further supports certifying the question presented. *See, e.g.*, *In re Suntrust Banks*, 2011 WL

13824, at *4 (finding that the court's disagreement with "three other Judges" in the district demonstrated "substantial ground for difference of opinion"). In fact, some of the cases cited by Plaintiffs chose to apply Rule 8 specifically *because* the Eleventh Circuit has not ruled on the issue. *Theodore v. Purecycle Techs., Inc.*, 2022 WL 20157415, at *16 n.21 (M.D. Fla. Aug. 4, 2022) (noting that the "Eleventh Circuit has not conclusively established whether the PSLRA's heightened pleading standards apply to allegations of loss causation" and applying Rule 8 because "there is no established rule within this Circuit"); *see Urvan v. v. TVP Ventures, LLC*, No. 1:20-CV-153-TCB, 2021 WL 8648896, at *18 (N.D. Ga. Mar. 25, 2021), *on reconsideration in part*, 2021 WL 8572796 (N.D. Ga. June 29, 2021) (citing *Luczak* to note that the Eleventh Circuit has "never taken a position" on Rule 9(b) and loss causation); *see* Order at 28 n.7 (citing the lack of "Eleventh Circuit … precedent on this issue").

The circuit split and the absence of guidance from the Eleventh Circuit on the question of which pleading standard governs allegations of loss causation in class actions asserting Section 10(b)/Rule 10b-5 claims supports Defendants' request for a certificate under Section 1292(b). Further, as discussed below, the question presented is ideally suited for interlocutory review because its resolution may materially advance the ultimate termination of this suit (as well as that of future suits in which the loss causation allegations similarly fall short of satisfying Rule 9(b)).

8

Moreover, because 10b-5 cases that survive dismissal and are certified as class actions overwhelmingly settle thereafter,[3] the Eleventh Circuit is unlikely to have an opportunity to consider the question presented in a context other than certification of the question for interlocutory review under Section 1292(b).

> **C.    The Question Presented is Controlling, and its Resolution Will Materially Advance the Ultimate Termination of this Litigation.**

Plaintiffs do not dispute that loss causation is a necessary element of their fraud claim, which means that whether they have adequately pleaded it is a controlling question.    Instead, Plaintiffs launch a broadside against specific considerations Defendants identified as possible factors for courts to consider in assessing loss causation allegations under Rule 9(b). Opp. at 10–12.  Those meritless attacks serve only to highlight the deficiency of Plaintiffs' complaint.   Further, contrary to their arguments, Plaintiffs cannot sidestep interlocutory review merely by pointing to the possibility that they might be granted leave to amend if their attempt to plead loss causation were found inadequate under Rule 9(b).

> **1.    Plaintiffs' loss causation allegations do not satisfy Rule 9(b).**

Plaintiffs pleaded loss causation only generally, alleging that the market learned of the CFPB suit "during the trading day" and that Global Payments' stock

---

[3] *See, e.g., Kohen v. Pac. Inv. Mgmt. Co.,* 571 F.3d 672, 678 (7th Cir. 2009) ("When the potential liability created by a lawsuit is very great, even though the probability that the plaintiff will succeed in establishing liability is slight, the defendant will be under pressure to settle rather than to bet the company . . . .").

price declined by a small amount "[i]n response to this news."  AC ¶¶ 86, 129.  The

Court found that Plaintiffs' allegations satisfied Rule 8, but declined to find or even

suggest that those allegations would satisfy Rule 9(b).  Order at 28, 32.  If assessed

for compliance with the particularity Rule 9(b) requires, those allegations would fall

short, and Plaintiffs' Opposition offers no reason to conclude otherwise.

*First*, Plaintiffs' contention that Defendants "implicitly recogniz[ed]" that the

distinction between Rules 8 and 9(b) "is of no consequence here," Opp. at 7, is

nonsensical in light of the present Motion and the arguments in Defendants' motion

to dismiss brief.  *See* Dkt. 49-1 at 9–15.  Plaintiffs are also incorrect that Defendants

"waived" the contention that Rule 9(b) governs allegations of loss causation.  *See*

Opp. at 7.[4]  Defendants argued that heightened pleading standards applied across the

board to Plaintiffs' fraud claims.  Dkt. 49-1 at 5.  They then bolstered that argument

specifically with respect to loss causation.  *Id.* at 26 n.8.  This Court acknowledged

that Defendants "urge the Court" to apply Rule 9(b) to loss causation, and the Court

ruled on the issue.  Order at 28 n.7.  The argument is not waived.

*Second*, Plaintiffs contend that Defendants and the cases on which they rely

acknowledge that courts are not always required to consider all of the factors they

identified in their Motion.  Opp. at 10.  That is true as far as it goes:  the loss-

---

[4] If anything, Plaintiffs "waived any waiver argument." *Proffitt v. Wainwright*, 685
F.2d 1227, 1266 n.60 (11th Cir. 1982); *see* Dkt. 52 at 26 (contending on the merits
that Rule 8 should apply and not mentioning waiver).

10

causation inquiry is context-dependent, and the "degree of specificity demanded is that which will enable the court to evaluate whether the necessary causal link exists." Dkt. 56-1 at 9 (quoting *Katyle*, 637 F.3d at 471).  The factors Defendants identified are among those that courts have used to determine whether loss causation was sufficiently pled under a particularized standard.  Defendants' point was not that courts must always consider *every* factor identified in their Motion, but instead that when Rule 9(b) applies, courts must employ a more searching review of the sufficiency of the allegations, using some or all of those factors, or similar factors, as appropriate in the context of a given complaint.  Here, however, Plaintiffs do not dispute that their thin allegations satisfy *none* of those factors.

To the contrary, Plaintiffs' Opposition underlines their pleading failure.  To take just one example, rather than relying on their complaint for their contention that "analysts *did* react to the CFPB lawsuit," Opp. at 11, Plaintiffs append new materials to their Opposition that they do not even contend are subject to judicial notice.  Even if those materials said what Plaintiffs claim they do—and they do not[5]—Plaintiffs'

---

[5] Plaintiffs' improperly introduced documents do not, in any event, link any price drop to the CFPB lawsuit.  Of the four new documents Plaintiffs cite, two merely reiterate that the CFPB sued Global Payments but do not suggest any connection to a price drop.  Dkt. 57-2 at 2 (quoting the CFPB's statements) & *id.* at 3 (rating Global Payments as a "Buy"); Dkt. 57-3 at 5 (noting that "any outcome [from the litigation] could take years") & *id.* at 2 (showing uptick of stock price in October of 2022).  The other two cite only generalized, forward-looking concerns about the "regulatory" environment and do not even mention the CFPB suit.  Dkt. 57-4 at 8 ("the *prospect of* increased litigation and/or regulatory activity pose the greatest risks

11

need to rely on them only confirms Defendants' argument that Plaintiffs did not "*plead* any facts suggesting that market participants … attributed the stock price reaction to the announcement," Mot. at 11 (emphasis altered), and emphasizes the rationale for requiring particularized pleading of loss causation.

*Third*, Plaintiffs also object to the judicially noticeable facts Defendants identified concerning the manner in which Global Payments' stock price closely tracked the S&P 500 index over the two days on which Plaintiffs contend relevant price drops occurred. Opp. at 12. Plaintiffs' contention that "the chart on which Defendants rely clearly shows that [Global Payments'] share price was *below*" the S&P 500 "during the days at issue" is a red herring. *Id.* Because the chart employs different price scales for the two prices at issue, the placement of the two lines is arbitrary. *See* Mot. at 13 (comparing Global Payments' stock price fluctuations between $111 and $116 with S&P 500 stock price fluctuations between $3,640 and $3,790). The purpose of the chart was not to show that the price of Global Payments' stock equaled that of the S&P 500; plainly, a market index is not meant to directly mirror the price of any of the individual stocks included in it. The chart's purpose was instead to show that the changes in Global Payments' stock price matched contemporaneous moves in the index—that, for example, Global Payments *and the*

---

to our price target"); Dkt. 57-5 at 4 (citing "changes in the regulatory backdrop or changes in interchange fees").

12

*market as a whole* declined, by comparable degrees, between opening and noon on October 18, 2022, and that both Global Payments and the market then made up similar amounts of ground by the close of trading that day. *See id.* Plaintiffs do not dispute that Global Payments' performance mirrored that of the S&P 500.

Meanwhile, Plaintiffs' contentions that Defendants "do not even attempt to explain why [the S&P 500] is an appropriate comparator" and that "Defendants themselves have not established the time of day when the CFPB complaint was filed," Opp. at 12, miss the point. Defendants bear no pleading burden under Rule 12; instead, it was *up to Plaintiffs* to allege facts that make their claims plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Absent from the complaint are any allegations that Global Payments' stock price bucked the movements of *any* index, or that some other index would be a more appropriate comparator,[6] what particular time during the October 18, 2022 trading day the CFPB's complaint was filed, or when such news became available to the market. Had Plaintiffs pleaded loss causation with particularity and included those or similar allegations, this Court would be better equipped to determine whether their claim alleging securities fraud is plausible or is—as Defendants contend—opportunistic piggybacking on a *de minimis* stock drop that is not connected to the CFPB suit.

---

[6] Plaintiffs neglect to mention that Global Payments is one of the 500 companies whose stock is included in the S&P 500 Index.

### 2.    Plaintiffs' hypotheticals do not undermine the appropriateness of interlocutory review.

Plaintiffs contend that even if this Court grants certification and the Eleventh Circuit concludes that Rule 9(b) governs, the Eleventh Circuit's holding will not matter because they will simply amend their complaint. Opp. at 15. That argument is premature and assumes that this Court would grant leave to amend. But even if Plaintiffs were permitted to amend, they would not be able to plead loss causation. A properly particularized recounting of a *de minimis* price decline—in line with market trends and occurring the day after the price *rose* following news of the allegedly corrective disclosure—would only demonstrate that Plaintiffs' loss causation theory is not, in fact, plausible.

Plaintiffs' argument, moreover, rests on a false legal premise. In opposing certification on the rationale that they might be granted leave to amend, Plaintiffs insinuate that only legal questions whose resolution would *necessarily* terminate the case are appropriate for interlocutory appeal. *See* Opp. at 15 (contending that "the matter would merely be reset here" if Defendants prevail in the Eleventh Circuit). Section § 1292(b) imposes no such requirement—it requires only that appeal "*may materially advance the ultimate termination of the litigation.*" (emphasis added.) Courts have accordingly made clear that the potential to speed up or narrow the litigation is enough. *E.g.*, *Georgia State Conf. of NAACP v. Fayette Cnty. Bd. of Comm'rs,* 952 F. Supp. 2d 1360, 1362 (N.D. Ga. 2013) ("A question of law is

14

considered 'controlling' if it has the potential of substantially accelerating disposition of the litigation, even if it would not terminate the case.") (cleaned up); *McFarlin*, 381 F.3d at 1259 (recognizing that appeal under § 1292(b) is "appropriate where resolution of controlling questions *could* shorten the time, effort, and expense of the litigation") (emphasis added). Section 1292(b) "does not require that the resolution of a controlling legal question bring the entire lawsuit to an end." *Int'l Brominated Solvents Ass'n v. Am. Conf. of Governmental Indus. Hygienists, Inc.*, 2005 WL 8165516, at *8 (M.D. Ga. July 12, 2005).

To be clear, Defendants believe that if the Eleventh Circuit follows the Fourth and Ninth Circuits in requiring particularized pleading of loss causation, dismissal of Plaintiffs' complaint will be required. But this Court need not prejudge how Plaintiffs' loss causation allegations would fare under Rule 9(b) or whether the Court would grant leave to amend if the allegations did not satisfy Rule 9(b). Indeed, it would be appropriate not to prejudge those questions given that the Eleventh Circuit's decision could shed light on them even if it does not resolve them. All that matters for present purposes is that the choice between Rule 8 and Rule 9(b) "could shorten the time, effort, and expense of the litigation." *McFarlin*, 381 F.3d at 1259.

## III.   CONCLUSION

Defendants respectfully request that this Court certify the question presented herein for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

15

Respectfully submitted this 14th day of May 2024.

>*/s/ Michael R. Smith*
>Michael R. Smith
>Georgia Bar No. 661689
>Benjamin Lee
>Georgia Bar No. 443082
>Peter Starr
>Georgia Bar No. 648453
>Matthew Rosenthal
>Georgia Bar No. 871852
>**KING & SPALDING LLP**
>1180 Peachtree Street, NE, Suite 1600
>Atlanta, Georgia 30309
>Tel: (404) 572-4600
>Fax: (404) 572-5100
>mrsmith@kslaw.com
>blee@kslaw.com
>pstarr@kslaw.com
>mrosenthal@kslaw.com
>
>*Attorneys for Defendants Global Payments, Inc., Active Network LLC, Jeff Sloan, Cameron Bready, Paul Todd, Josh Whipple, and Andrea Facini*

16

## <u>RULE 7.1(D) CERTIFICATION</u>

The undersigned counsel certifies that this document has been prepared with

one of the font and point selections approved by the Court in Local Rule 5.1(C).

*/s/ Michael R. Smith*
Michael R. Smith
Georgia Bar No. 661689

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of May 2024, I electronically filed the above and foregoing with the Clerk using the CM/ECF system, which will automatically send email notification of such filing to all attorneys of record.

/s/ Michael R. Smith
Michael R. Smith
Georgia Bar No. 661689

*Counsel for Defendants*