# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| MIKE SHAFER, DAVID KEATING, and WILLIAM JEFFREY IGOE, on Behalf of Themselves and All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> GLOBAL PAYMENTS INC., ACTIVE NETWORK LLC, JEFF SLOAN, CAMERON BREADY, PAUL TODD, JOSH WHIPPLE, and ANDREA FACINI, <br><br> Defendants. | Case No. 1:23-cv-00577-LMM <br><br> CLASS ACTION |

**BRIEF IN SUPPORT OF CO-LEAD PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AND <u>APPROVAL OF NOTICE TO THE SETTLEMENT CLASS</u>**

**TABLE OF CONTENTS**

I.    PRELIMINARY STATEMENT ................................................................1

II.   BACKGROUND ...................................................................................3

      A.    Procedural Background ...........................................................3

      B.    Negotiation of the Settlement.................................................4

      C.    The Terms of the Settlement. .................................................5

III.  ARGUMENT.........................................................................................5

      A.    The Proposed Settlement Warrants Preliminary Approval..................5

            1.    Plaintiffs and Co-Lead Counsel Adequately Represented the
                  Class. ..............................................................................8

            2.    The Settlement Is The Result Of Good Faith, Arm's-Length
                  Negotiations By Well-Informed And Experienced Counsel ......9

            3.    The Substantial Benefits For The Settlement Class, Weighted
                  Against Litigation Risks, Support Preliminary Approval of the
                  Settlement.......................................................................11

                  a.    Risks Concerning Liability.............................................11

                  b.    Risks Related to Loss Causation and Damages..............12

                  a.    Risks Related to Class Certification ..............................14

      B.    The Settlement Treats All Settlement Class Members Equitably.......16

      C.    The Settlement Class Should Be Certified for Settlement Purposes ..18

            1.    The Settlement Class Satisfies Rule 23(a)................................18

            2.    The Settlement Class Satisfies Rule 23(b)(3) ..........................21

      D.    THE PROPOSED FORM AND METHOD OF NOTICE ARE
            APPROPRIATE AND SHOULD BE APPROVED..........................22

      E.    THE COURT SHOULD ADOPT THE PROPOSED SCHEDULE...24

i

IV.    CONCLUSION..........................................................................................25

ii

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agnone v. Camden Cnty., Ga.*,
  2018 WL 4937061 (S.D. Ga. Oct. 10, 2018)................................................7, 10

*Almanzar v. Select Portfolio Servicing, Inc.*,
  No. 14-CIV-22586 2015 WL 10857401 (S.D. Fla. Oct. 15, 2015).....................9

*Amchem Prod., v. Windsor*,
  521 U.S. 591, 623, 625 (1997)...................................................................21, 22

*Basic Inc. v. Levinson*,
  485 U.S. 224 (1988).............................................................................................14

*Christine Asia Co. v. Yun Ma*,
  No. 115MD02631CMSDA,, 2019 WL 5257534, (S.D.N.Y. Oct.
  16, 2019) ...............................................................................................................17

*City of Sunrise Gen. Emps. Ret. Plan v. FleetCor Techs., Inc.*,
  2019 WL 3449671 (N.D. Ga. July 17, 2019) ....................................................22

*Cook v. Palmer*,
  2019 WL 3383634 (M.D. Fla. May 17, 2019) ....................................................6

*Gordon v. Vanda Pharms. Inc.*,
  2022 WL 4296092 (E.D.N.Y. Sept. 15, 2022) ...................................................21

*Gunthert v. Bankers Std. Ins. Co.*,
  2019 WL 1103408 (M.D. Ga. Mar. 8, 2019)........................................................9

*Halliburton Co. v. Erica P. John Fund, Inc.*,
  573 U.S. 258 (2014)............................................................................................14

*In re BankAtlantic Bancorp, Inc. Sec. Litig.*,
  No. 07-61542-CIV, 2011 WL 1585605, (S.D. Fla. Apr. 25, 2011)
  aff'd on other grounds sub nom. Hubbard v. BankAtlantic Bancorp,
  Inc., 688 F.3d 713 (11th Cir. 2012) ...................................................................15

iii

*In re Checking Account Overdraft Litig.*,
275 F.R.D. 654, 662 (S.D. Fla. 2011)..................................................................10

*In re Citigroup, Inc. Sec. Litig.*,
965 F. Supp. 2d 369, 386-87 (S.D.N.Y. 2013)....................................................17

*In re Domestic Air Transp. Antitrust Litig.*,
148 F.R.D. 297, 312-13 (N.D. Ga. 1993)..............................................................9

*In re Equifax Inc. Customer Data Security Breach Litig.*,
1:17-MD-2800-TWT, 2020 WL 256132, (N.D. Ga. March 17,
2020) aff'd in part, rev'd in part and remanded, 999 F.3d 1247
(11th Cir. 2021)....................................................................................................11

*In re HealthSouth Corp. Sec. Litig.*,
572 F.3d 854, 862 (11th Cir. 2009.......................................................................5

*In re Internap Network Servis Corp. Sec. Litig.*,
No. 1:08-CV-03462-JOF, 2012 WL 12878579, (N.D. Ga. Aug. 23,
2012) ....................................................................................................................20

*In re Marsh ERISA Litig.*,
265 F.R.D. 128 (S.D.N.Y. 2010) .........................................................................17

*In re Merrill Lynch Tyco Rsch. Sec. Litig.*,
249 F.R.D. 124 (S.D.N.Y. 2008) .........................................................................17

*In re Netbank, Inc. Sec. Litig.*,
259 F.R.D. 656, 664 (N.D. Ga. 2009) ..................................................................19

*In re Polaroid ERISA Litig.*,
240 F.R.D. 65 (S.D.N.Y. 2006) .............................................................................8

*In re Scientific-Atlanta, Inc. Sec. Litig.*,
571 F.Supp.2d 1315, 1325 (N.D. Ga. 2007).........................................................19

*Junior v. Infinity Ins. Co.*,
No. Case No: 6:18-cv-1598-WWB-EJK, 2021 WL 4944311, (M.D.
Fla. Apr. 29 2021)................................................................................................11

*Lunsford v. Woodforest Nat'l Bank*,
No. 1:12-CV-103-CAP, 2014 WL 12740375 (N.D. Ga. May 19,
2014) ......................................................................................................................9

iv

*Mashburn v. Nat'l Healthcare, Inc.*,
    684 F. Supp. 660 (M.D. Ala. 1988) ..........................................................................6

*Medical & Chiropractic Clinic, Inc., v. KMH Cardiology Centres*
    *Inc*., 2017 WL 2773932, (M.D. Fla. June 1, 2017). ..........................................18

*Micholle v. Ophthotech Corp*.,
    2022 WL 1158684 (S.D.N.Y. Mar. 14, 2022).....................................................21

*Monroe Cnty. Employees' Ret. Sys. v. S. Co*.,
    332 F.R.D. 370, 379 (N.D. Ga. 2019) ...............................................................20

*Robbins v. Koger Props. Inc*.,
    116 F.3d 1441 (11th Cir. 1997), reh'g en banc denied, 129 F.3d
    617 (11th Cir. 1997).............................................................................................15

*Smith v. Wm. Wrigley Jr. Co.*,
    2010 WL 2401149 (S.D. Fla. June 15, 2010).......................................................7

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005) ...................................................................................8

**Statutes**

15 U.S.C. §78j(b) ...........................................................................................................3

15 U.S.C. §78t(a) ...........................................................................................................3

15 U.S.C. § 78u-4..........................................................................................................24

28 U.S.C. § 1292(b) ........................................................................................................4

Private Securities Litigation Reform Act of 1995 .............................................2, 3,23

Securities Exchange Act of 1934........................................................................17

**Rules**

Fed. R. Civ. P. 23 .................................................................................................*passim*

Co-Lead Plaintiffs Mike Shafer, David Keating and William Jeffrey Igoe ("Plaintiffs"), on behalf of themselves and the other members of the Settlement Class, respectfully submit this memorandum of law in support of their motion for preliminary approval of the proposed settlement (the "Motion") reached in the above-captioned litigation (the "Settlement").[1]

## I.      PRELIMINARY STATEMENT

Plaintiffs have negotiated a Settlement that provides a strong and immediate recovery to Class Members that is highly favorable in light of the risks of continued litigation.   Pursuant to the proposed Settlement, the Parties have reached an agreement to settle this Action in exchange for Defendants' payment of $3,600,000 for the benefit of the Settlement Class. If approved, the Settlement will mark an efficient resolution of this Action, which has been pending for sixteen months and has involved a thorough investigation by Co-Lead Counsel, dispositive motion practice, and extensive negotiations between the Parties.

By its Motion, Plaintiffs seek entry of an Order: (i) granting preliminary approval of the Settlement; (ii) certifying the proposed Settlement Class for purposes of the Settlement; (iii) approving the form and manner of providing notice of the

---

[1] All capitalized terms used in this Memorandum that are not otherwise defined shall have the meanings given to them in the Stipulation and Agreement of Settlement, dated June 10, 2024 (the "Stipulation"), which is filed contemporaneously herewith. "¶ __" citations are to the Declaration of Jonathan D. Park filed contemporaneously herewith ("Park Declaration" or "Park Decl.").

Settlement to the Settlement Class; and (iv) scheduling a hearing date for final approval of the Settlement (the "Settlement Hearing") and related events (the "Preliminary Approval Order").

Plaintiffs believe that the proposed Settlement, which is the result of robust arm's-length negotiations between counsel, represents a very favorable result for the Settlement Class because it provides a significant recovery, particularly when compared to the risks that continued litigation might result in a smaller recovery, or no recovery at all. While Plaintiffs and Co-Lead Counsel believe the claims asserted against Defendants have merit, they would have faced substantial challenges to certifying the class, proving liability, and proving loss causation and damages.

The Settlement meets the requirements of Federal Rule of Civil Procedure ("Rule") 23(e) and Eleventh Circuit precedent. Moreover, the proposed content and manner of providing notice satisfies requirements imposed by Rule 23, the Private Securities Litigation Reform Act of 1995 ("PSLRA"), and due process. For these reasons, the Court should approve Plaintiffs' motion.

At the Settlement Hearing, the Court will have before it extensive papers in support of the Settlement, and it will be asked to determine whether the Settlement is fair, reasonable, and adequate. At present, Plaintiffs request only that the Court grant preliminary approval of the Settlement so that notice may be provided to the Settlement Class. Specifically, Plaintiffs request that this Court enter the Parties'

agreed-upon proposed Preliminary Approval Order (attached as Exhibit A to the Stipulation and submitted herewith), which will, among other things, (i) grant preliminary approval of the Settlement; (ii) certify the Settlement Class for Settlement purposes; (ii) approve the form and manner of providing notice to the Settlement Class, including the form and content of the Notice, Claim Form, Summary Notice, and Postcard Notice; and (iii) schedule the Settlement Hearing and related events.  The Settlement warrants preliminary approval.

## II.   BACKGROUND

### A.   Procedural Background

This securities fraud class action commenced when Mike Shafer filed a putative class action complaint on February 8, 2023. Doc. No. 1. On May 11, 2023, the Court appointed Co-Lead Plaintiffs pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA") and appointed attorneys with Pomerantz LLP and Lowey Dannenberg, P.C. as Co-Lead Counsel and Evangelista Worley, LLC as Liaison Counsel. Doc. No. 29.

On June 26, 2023, Plaintiffs filed the operative Amended Complaint. (Doc. No. 39) ("Complaint"), asserting claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder against Defendants.

On August 17, 2023, Defendants filed and served a motion to dismiss the Complaint (Doc. No. 49) (the "Motion to Dismiss"), which Plaintiffs opposed on October 16, 2023 (Doc. No. 52). On March 29, 2024, the Court granted in part and denied in part the Motion to Dismiss. Doc. No. 55.

On April 18, 2024, Defendants filed and served a motion seeking interlocutory review pursuant to 28 U.S.C. § 1292(b) (the "Motion for Interlocutory Review"). Doc. No. 56. On May 2, 2024, Plaintiffs opposed the Motion for Interlocutory Review. Doc. No. 57. The Court denied this motion as moot after the Parties informed the Court of their agreement-in-principle to settle this Action. Doc. No. 60.

### B.    Negotiation of the Settlement

Following the resolution of the Motion to Dismiss, the Parties discussed the possibility of resolving the case through settlement. These discussions continued for a number of weeks. On May 21, 2024, the Parties reached an agreement to resolve the Action for $3,600,000 in cash. The Parties completed negotiating a term sheet memorializing this agreement, which was signed that same day ("Term Sheet").

On May 22, 2024, counsel for the Parties advised the Court that they had reached a settlement-in-principle. On May 23, 2024, the Court administratively closed the case and directed the Parties to file within sixty days either (1) the necessary documents to dismiss this case or (2) a joint status report notifying the Court why they are unable to file such documents. Doc. No. 60.  That order also

4

denied as moot Defendants' Motion for Interlocutory Review. *Id.* The parties then negotiated the terms of the full Stipulation, which was executed on June 10, 2024.

### C.     The Terms of the Settlement.

The proposed Settlement, which would resolve the Action in its entirety, provides that Defendants will pay or cause to be paid $3,600,000 in cash into an escrow account for the benefit of the Settlement Class. The full terms and conditions of the Settlement are set forth in the Stipulation. In addition, the Parties have entered into a confidential Supplemental Agreement that sets forth the conditions under which Defendants may terminate the Settlement if the number of persons or entities who request exclusion from the Settlement Class reaches a certain threshold. This agreement, often called a "blow provision," is standard in securities class action settlements. The terms of such agreements are generally maintained as confidential in order to prevent potential opt-outs from threatening to trigger the blow provision and leveraging that threat to obtain additional payment from the settling parties.[2]

### III.   ARGUMENT

### A.     The Proposed Settlement Warrants Preliminary Approval

Courts have long recognized a strong policy and presumption in favor of class action settlements. *See In re HealthSouth Corp. Sec. Litig.*, 572 F.3d 854, 862 (11th

---

[2] If the Court would like to review the Supplemental Agreement, Plaintiffs request that the Parties be permitted to submit it to the Court under seal for *in camera* review. *See* Stipulation ¶ 39.

Cir. 2009) ("Public policy strongly favors the pretrial settlement of class action lawsuits.") (quoting *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992)). Moreover, this policy consideration applies especially to securities fraud class actions. *See, e.g.*, M*ashburn v. Nat'l Healthcare, Inc.,* 684 F. Supp. 660, 667 (M.D. Ala. 1988) ("securities fraud class actions readily lend themselves to settlement"). A district court's review of a proposed class action settlement is a two-step process.

First, the Court performs a preliminary review of the terms of the proposed settlement to determine whether to send notice of the proposed settlement to the class. *See* Fed. R. Civ. P. 23(e)(1). Second, after notice has been provided and a hearing has been held, the Court determines whether to approve the settlement on a finding that it is "fair, reasonable, and adequate." *Id.* R. 23(e)(2).

A court should grant preliminary approval to authorize notice to the class where it "will likely be able" to finally approve the settlement under Rule 23(e)(2). Fed. R. Civ. P. 23(e)(1)(B); *see also Cook v. Palmer*, 2019 WL 3383634, at *3 (M.D. Fla. May 17, 2019) ("Notice of the proposed settlement must be provided to all class members who would be bound by the proposal if it is shown that the court will likely be able to [] approve the proposal as fair, reasonable, and adequate…") (internal quotation marks and citations omitted). In determining whether to grant preliminary approval to a class action settlement, the Court must consider whether:

> (A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

    (i)   the costs, risks, and delay of trial and appeal;

    (ii)  the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

    (iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

This standard for preliminary approval of class action settlements was newly established by amendments to Rule 23(e) that became effective on December 1, 2018. Prior to those amendments, courts had developed a standard for preliminary approval through case law that was substantively similar to the current standard but phrased differently. A common formulation was that the court should grant preliminary approval to a proposed settlement "if it is within range of possible approval or, in other words, [if] there is probable cause to notify the class of the proposed settlement." *See, e.g.*, *Agnone,* 2018 WL 4937061. Thus, "[p]reliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason." *Smith v. Wm. Wrigley Jr. Co.*, 2010 WL 2401149, at *2 (S.D. Fla. June 15, 2010) (citation omitted). As shown below, preliminary approval

7

should be granted because the proposed Settlement is the result of robust arm's-length negotiations and the Court will likely be able to approve the Settlement as fair, reasonable, and adequate at final approval.

### 1.    Plaintiffs and Co-Lead Counsel Adequately Represented the Class.

Plaintiffs and Co-Lead Counsel satisfy Rule 23(e)(2)(A)'s "adequate representation" requirement, which focuses on the "alignment of interests between class members." *See Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 106-07 (2d Cir. 2005). Plaintiffs' interests are fully aligned with those of other Settlement Class Members, as they share the same claims, which concern Global Payments common stock and are based on the same facts and legal theories over the same Class Period. Plaintiffs and Co-Lead Counsel "share the common goal of maximizing recovery" for the Settlement Class and "there is no conflict of interest[.]" *See In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006).

Moreover, Plaintiffs and Co-Lead Counsel have vigorously litigated this case since inception. ¶ 4. Among other things, Co-Lead Counsel (i) conducted a thorough investigation of the claims, (ii) filed an amended complaint (Doc No. 39) (the "Complaint"); (iii) defeated in part the Motion to Dismiss (*see* Doc. No. 55); (iv) opposed the Motion for Interlocutory Review (Doc. No. 57), and (v) engaged in significant mediation efforts over a number of weeks, leading to the Settlement.

### 2.    The Settlement Is The Result Of Good Faith, Arm's-Length Negotiations By Well-Informed And Experienced Counsel

Courts presume that a proposed settlement is fair and reasonable when it is the result of arm's-length negotiations between counsel. *See Gunthert v. Bankers Std. Ins. Co.*, 2019 WL 1103408, at *3 (M.D. Ga. Mar. 8, 2019) ("'There is a presumption of good faith in the negotiation process …. [and] [w]here the parties have negotiated at arm's length, the Court should find that the settlement is not the product of collusion'") (citation omitted); see *also Almanzar v. Select Portfolio Servicing, Inc.*, 2015 WL 10857401, at *1 (S.D. Fla. Oct. 15, 2015) ("Settlement negotiations that involve arm's length, informed bargaining with the aid of experienced counsel support a preliminary finding of fairness."). In assessing a proposed class action settlement, courts give considerable weight to the opinion of well-informed and experienced counsel. *See Lunsford v. Woodforest Nat'l Bank*, 2014 WL 12740375, at *9 (N.D. Ga. May 19, 2014) ("The Court should give 'great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation.'"); *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 312-13 (N.D. Ga. 1993) ("In determining whether to approve a proposed settlement, the Court is entitled to rely upon the judgment of the parties' experienced counsel. '[T]he trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel'").

Here, the Settlement was achieved after sixteen months of litigation as well robust arm's-length negotiations by well-informed and experienced counsel. Co-Lead Counsel, Pomerantz LLP and Lowey Dannenberg, P.C., are two of the nation's leading class action litigation firms. Co-Lead Counsel gave thorough consideration to the strength and weaknesses of the Parties' claims and defenses, and consulted with experts on market efficiency, loss causation, and damages to assess, among other things, Defendants' arguments concerning loss causation. As a result, Plaintiffs and Co-Lead Counsel were well-informed and had an adequate basis for assessing the strengths of the Settlement Class's claims and Defendants' defenses when they entered into the Settlement.

These facts strongly support the conclusion that the Settlement is fair. *See Agnone v. Camden Cnty., Ga.*, 2018 WL 4937061, at \*5 (S.D. Ga. Oct. 10, 2018) ("Settlement negotiations that involve arm's length, informed bargaining with the aid of experienced counsel support a preliminary finding of fairness"); *see also In re Checking Account Overdraft Litig.*, 275 F.R.D. 654, 662 (S.D. Fla. 2011) (approving settlement that was "the product of informed, good-faith, arm's length negotiations between the parties and their capable and experienced counsel").

### 3. The Substantial Benefits For The Settlement Class, Weighted Against Litigation Risks, Support Preliminary Approval of the Settlement

The Settlement provides $3,600,000 for the benefit of the Settlement Class. This is an excellent result, especially in light of the significant risks of continued litigation. Although Plaintiffs and Co-Lead Counsel believe that Plaintiffs' claims have merit, they recognize the significant risk and expense involved in prosecuting Plaintiffs' claims through class certification, discovery, summary judgment, trial, and appeals, as well as the inherent difficulties and delays of complex litigation. *See Junior v. Infinity Ins. Co.*, 2021 WL 4944311, at *4 (M.D. Fla. Apr. 29 2021) ("the benefits obtained by the Settlement are reasonable, particularly given the risk of no recovery at all through adverse ruling here or on appeal, and supports the fairness, the complexity, expense, and duration of litigating the case, and the adequacy of the Settlement terms."); *In re Equifax Inc. Customer Data Security Breach Litig.*, 2020 WL 256132, at *7 (N.D. Ga. March 17, 2020) aff'd in part, rev'd in part and remanded, 999 F.3d 1247 (11th Cir. 2021) ("the guaranteed and immediate recovery for the class made available by this settlement far outweighs the mere possibility of future relief after lengthy and expensive litigation.").

#### a. Risks Concerning Liability

First, Plaintiffs faced significant risks that, at either the summary judgment stage or after a trial, that it would not be to establish one of required elements of

11

falsity, materiality, scienter, and loss causation to sustain their securities fraud claims. ¶¶ 38-56. Defendants would likely argue at summary judgment that the alleged misstatements or omissions were not materially false and misleading. Indeed, the Court dismissed a number of alleged misstatements in its order resolving the Motion to Dismiss.  As to the remaining alleged misstatements, Plaintiffs would face significant risks to proving they were actionable. These risks are set forth in more detail in the accompanying Park Declaration. ¶¶ 39-43.

Even if Plaintiffs established that Defendants' alleged misstatements were materially false and misleading, Defendants would strenuously maintain that they did not act with scienter, which is often the most difficult element of a securities fraud claim for a plaintiff to plead or prove.  In this case, Defendants would likely raise numerous scienter arguments that could pose significant hurdles. ¶¶ 44-47. There was a very significant risk that the Court, at summary judgment, or a jury at trial, could conclude that Defendants did not act with scienter.

### b.  Risks Related to Loss Causation and Damages

Even if Plaintiffs overcame the above risks and successfully established liability, Defendants would likely argue that there are no recoverable damages or that damages are minimal.

Plaintiffs' consulting damages expert has estimated maximum aggregate damages of approximately $97 million, not accounting for the disaggregation of inactionable (or statistically non-significant) price movements.

Defendants would argue that damages are much less. In its order on the Motion to Dismiss, the Court sustained only the alleged corrective disclosure on October 18, 2022. Defendants would likely argue that, *inter alia*, the price of Global Payments common stock tracked the movement of the S&P 500 Index on October 18 and 19, 2022, and thus that all or nearly all of the decline in Global Payments share price on those days cannot serve as the basis for compensable damages. If Defendants prevailed on their loss-causation arguments, recoverable damages could be significantly reduced or eliminated. Co-Lead Counsel, in consultation with experts, thoroughly considered this before agreeing to the Settlement.

Of course, even a reduced damages estimate assumes liability and, as explained above, it is far from certain that Plaintiffs would be able to prove liability. Indeed, to recover any damages at trial, Plaintiffs would have to prevail at many stages in the litigation—namely, a motion for summary judgment, a motion for class certification, and trial—and, even if Plaintiffs prevailed at those stages, appeals would likely follow. At each of these stages, there would be significant risks attendant to the continued prosecution of the Action, and there is no guarantee that further litigation would have resulted in a higher recovery, or any recovery at all.

13

### a. Risks Related to Class Certification

The Settlement was reached before class certification. Were the Action to continue, Plaintiffs would move for certification of a class pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure. In order to satisfy the "predominance" requirement of Rule 23(b), Plaintiffs would invoke the fraud-on-the-market presumption of classwide reliance pursuant to *Basic Inc. v. Levinson*, 485 U.S. 224 (1988).

The *Basic* presumption is rebuttable. "Any showing that severs the link between the alleged misrepresentation and either the price received (or paid) by the plaintiff or his decision to trade at a fair market price will be sufficient to rebut the presumption of reliance." *Id.* at 249.

Defendants would likely seek to rebut the *Basic* presumption by attempting to "sever[] the link between the alleged misrepresentation and either the price received (or paid) by the plaintiff." *Id.* Under Supreme Court precedent, "defendants must be afforded an opportunity to rebut the presumption of reliance before class certification with evidence of a lack of price impact." *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 284 (2014).

Consistent with their argument that the Complaint did not adequately allege loss causation because "the price of Global Payments' stock moved in virtual lock-step with the S&P 500 Index" on October 18 and 19, 2022 (Doc. No. 53 at 16),

14

Defendants would likely argue that, for the same reason, their alleged misstatements did not have any impact on the price of Global Payments stock. Defendants would thus argue the Basic presumption was rebutted and class certification is inappropriate. This presents a risk to class certification, and a denial of class certification would effectively dispose of the Action, as it would then proceed with only the individual claims of Plaintiffs.

Therefore, Plaintiffs would have to prevail at several stages—on a motion for summary judgment and at trial, and if it prevailed on those, on the appeals that would likely follow—which could take years. *See, e.g.*, *Robbins v. Koger Props. Inc.*, 116 F.3d 1441 (11th Cir. 1997), reh'g en banc denied, 129 F.3d 617 (11th Cir. 1997) (finding no loss causation and overturning $81 million jury verdict); *In re BankAtlantic Bancorp, Inc. Sec. Litig.*, 2011 WL 1585605, at *1 (S.D. Fla. Apr. 25, 2011) aff'd on other grounds sub nom. *Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012) (overturning jury verdict in favor of plaintiff class and granting judgment as a matter of law in favor of defendants). The Settlement avoids these risks and will provide a prompt and certain benefit to the Settlement Class rather than the mere possibility of a recovery after additional years of litigation and appeals. The Settlement balances the risks, costs, and delay inherent in complex cases evenly with respect to all Parties. Thus, the benefits created by the Settlement weigh heavily in favor of granting the motion for preliminary approval. Plaintiffs

15

respectfully submit that, considering the risks of continued litigation and the time and expense which would be incurred to prosecute the Action through a trial, the $3.6 million Settlement represents a meaningful recovery that is in the best interests of the Settlement Class.

The Settlement is also reasonable when considered in relation to the range of potential recoveries that might be recovered if Plaintiffs prevailed at trial, which was far from certain for the reasons noted above. Plaintiffs' consulting damages expert has estimated maximum aggregate damages of approximately $97 million. This estimate does not account for the disaggregation of inactionable (or statistically non-significant) price movements, and it could be further reduced depending on the outcome of loss causation and damages arguments. Accordingly, the $3.6 million Settlement represents approximately 3.7% of the maximum recoverable damages for the Class. This is a positive result for Settlement Class Members given the risks of the litigation. Accordingly, for all the foregoing reasons, Plaintiffs respectfully requests that the Court take the first step in the approval process and grant preliminary approval.

### B.    The Settlement Treats All Settlement Class Members Equitably

The Settlement easily satisfies the Rule 23(e)(2)(D) criteria that the Settlement treat class members equitably relative to one another. A plan of allocation, "particularly if recommended by experienced and competent class

16

counsel," should be approved so long as it is "fair and adequate" and "ha[s] a reasonable, rational basis." *Christine Asia Co. v. Yun Ma*, 2019 WL 5257534, at *15 (S.D.N.Y. Oct. 16, 2019). Under the proposed Plan of Allocation, each Authorized Claimant will receive a pro rata share of the Net Settlement Fund, which shall be the Authorized Claimant's Recognized Loss Amount divided by the total of Recognized Loss Amounts of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund. ¶58-63. As described in the Notice, the Plan of Allocation has a rational basis and was formulated by Co-Lead Counsel, with the assistance of Plaintiffs' damages expert, ensuring its fairness and reliability. *See id.* The Plan of Allocation also clearly identifies the circumstances by which Settlement Class Members may participate in the distribution of the Net Settlement Fund. *See id.* As such, the Plan of Allocation is consistent with the alleged damages theory under the Exchange Act and is substantially similar to other plans approved and successfully implemented in securities class actions. *See, e.g.*, *In re Citigroup, Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 386-87 (S.D.N.Y. 2013); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 145-46 (S.D.N.Y. 2010). Thus, the proposed Settlement treats all Settlement Class Members equitably and the Plan of Allocation is fair and adequate and has a reasonable and rational basis, weighing in favor of approval. *See, e.g., In re Merrill Lynch Tyco Rsch. Sec. Litig.,* 249 F.R.D. 124, 135 (S.D.N.Y. 2008) ("A plan of

17

allocation that calls for the pro rata distribution of settlement proceeds on the basis of investment loss is presumptively reasonable.").

### C.     The Settlement Class Should Be Certified for Settlement Purposes

Since the Settlement was made prior to class certification, the Court must determine whether the requirements for class certification under Federal Rules of Civil Procedure 23(a) and 23(b) are met, even if certification is only for settlement purposes. *Medical & Chiropractic Clinic, Inc., v. KMH Cardiology Centres Inc.*, 2017 WL 2773932, at *3 (M.D. Fla. June 1, 2017). Plaintiffs request that the Court preliminarily certify a Settlement Class consisting of "all persons who purchased or otherwise acquired publicly-traded Global Payments common stock during the period from October 31, 2019 through and including October 18, 2022, inclusive (the "Class Period"), and who were damaged thereby." Stipulation ¶1(uu) (defining "Settlement Class" and detailing various exclusions therefrom). The Court should preliminarily certify the Settlement Class to permit notice to Settlement Class Members.

### 1.     The Settlement Class Satisfies Rule 23(a)

Rule 23 governs class certification and requires that: (1) the class is so numerous that joinder of all members is impracticable ("numerosity"); (2) there are questions of law or fact common to the class ("commonality"); (3) the claims or defenses of the representative party are typical of those of the class ("typicality");

18

and (4) the representative party will fairly and adequately protect the interests of the class ("adequacy"). Fed. R. Civ. P. 23(a).

First, in federal securities fraud class actions, numerosity will be generally presumed when a claim involves a nationally traded security. *In re Scientific-Atlanta, Inc. Sec. Litig.*, 571 F. Supp. 2d 1315, 1325 (N.D. Ga. 2007). The Settlement Class consists of purchasers of Global Payments common stock, which traded on the New York Stock Exchange during the Class Period. Thus, the Settlement Class satisfies numerosity.

Second, "questions of law or fact common to the class" exist. Fed. R. Civ. P. 23(a)(2). "Generally, where plaintiffs allege that the action is a result of a unified scheme to defraud investors, the element of commonality is met." *In re Netbank, Inc. Sec. Litig.*, 259 F.R.D. 656, 664 (N.D. Ga. 2009). Here, Plaintiffs allege such a "unified scheme." *Id.* All members of the Settlement Class share the same securities fraud claims, which present the questions of (1) whether Defendants made false or misleading statements; (2) whether Defendants acted with scienter; (3) whether Defendants' misrepresentations artificially inflated the price of Global Payments common stock; and (4) whether Settlement Class members were damaged. The Settlement Class satisfies commonality.

Third, Rule 23(a)(3) requires that the class representative's claims or defenses be "typical" of the claims or defenses of the putative class. "A class 'representative's

19

claim is typical if there is a nexus between the class representative's claims or defenses and the common questions of fact or law which unite the class.'" *Monroe Cnty.*, 332 F.R.D. at 370, 379 (N.D. Ga. 2019). Typicality is found where plaintiffs allege that defendants made false and misleading statements that artificially inflated the stock price. *See In re Internap Network Servs. Corp. Sec. Litig.*, 2012 WL 12878579, at *5 (N.D. Ga. Aug. 23, 2012). Typicality is satisfied.

Lastly, courts in the Eleventh Circuit examine a two-prong test for Rule 23(a)(4)'s adequacy requirement: "(1) whether any substantial conflicts of interest exist between the representatives and the class, and (2) whether the representatives will adequately prosecute the action." *Monroe Cnty.*, 332 F.R.D. at 379 (quoting *Dickens v. GC Servs. Ltd. P'ship*, 706 F. App'x 529, 535 (11th Cir. 2017)). Here, Plaintiffs' claims are typical of the Settlement Class, and there are no conflicts of interest between them and the Settlement Class. Further, they have and will continue to adequately prosecute the Action. Plaintiffs have retained experienced counsel and have actively overseen Co-Lead Counsel, including by reviewing court filings, participating in discussions with Co-Lead Counsel, and assessing and approving the proposed Settlement. Plaintiffs satisfy adequacy. *See Monroe Cnty.*, 332 F.R.D. at 379. Co-Lead Counsel is qualified and experienced in securities class actions, and has demonstrated its ability to prosecute the Action.

### 2.    The Settlement Class Satisfies Rule 23(b)(3)

The Settlement Class satisfies Rule 23(b)(3), which requires "that the questions of law or fact common to class members predominate over any questions affecting only individual members ['predominance'], and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy ['superiority']." Fed. R. Civ. P. 23(b)(3). "Predominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws." *Amchem Prod., v. Windsor*, 521 U.S. 591, 623, 625 (1997).

The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation," and is "readily met" in securities class actions. *Amchem*, 521 U.S. at 623, 625 (1997). Here, "[r]esolution of [P]laintiff[s'] allegations—including questions of liability, causation, and damages—are susceptible to generalized proof and, further, such generalized inquiries predominate over any issues specific to individual class members." *Gordon v. Vanda Pharms. Inc*., 2022 WL 4296092 at *8 (E.D.N.Y. Sept. 15, 2022), *see also Micholle v. Ophthotech Corp.*, 2022 WL 1158684, at *3 (S.D.N.Y. Mar. 14, 2022) ("Predominance is met here because the members of the Settlement Class were subject to the same alleged misrepresentations and omissions of Defendants and the claim is susceptible to common evidence and proof").

For a settlement class, superiority is more easily established. *Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems … for the proposal is that there be no trial."). "The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Amchem*, 521 U.S. at 617 (citation omitted). Many Settlement Class Members are individuals for whom prosecution of a costly individual action is not a realistic or efficient alternative. No Settlement Class Members have brought separate claims. Thus, the superiority requirement has been met. *City of Sunrise Gen. Emps. Ret. Plan v. FleetCor Techs., Inc.*, 2019 WL 3449671, at *7 (N.D. Ga. July 17, 2019). Rule 23(b)(3) is satisfied.

**D.  THE PROPOSED FORM AND METHOD OF NOTICE ARE APPROPRIATE AND SHOULD BE APPROVED**

Plaintiffs also requests that the Court approve the form and content of the proposed Notice, Summary Notice, and Postcard Notice attached as Exhibits 1, 3, and 4 to the [Proposed] Preliminary Approval Order, as well as the method for providing notice. As outlined in the agreed-upon proposed Preliminary Approval Order, Co-Lead Counsel will cause the Claims Administrator to notify Settlement Class Members of the Settlement by mailing the Notice to all Settlement Class

22

Members who can be identified with reasonable effort and the Postcard Notice to Settlement Class Members who bought through brokers or other nominees.

The Claims Administrator will also post the Notice and Claim Form on a dedicated Settlement website (www.globalpaymentssecuritieslitigation.com) and will cause the Summary Notice to be published in *Investor's Business Daily* and over *PR Newswire*, a national newswire service.

Rule 23(c)(2)(B) requires a certified class to receive "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Similarly, Rule 23(e)(1)(B) requires a court to "direct notice in a reasonable manner to all class members who would be bound by the proposal." The proposed notice plan set forth above readily meets these standards and is typical of notice plans in similar actions.

The Notice also satisfies the PSLRA by, *inter alia*, stating: (i) the amount of the Settlement determined in the aggregate and on an average per share basis; (ii) that the Parties do not agree on the average amount of damages per share that would be recoverable in the event that Plaintiffs prevailed, and stating the issues on which the Parties disagree; (iii) the name, telephone number, and address of Co-Lead Counsel who will be available to answer questions concerning any matter contained in the Notice; (iv) the reasons why the Parties are proposing the Settlement; and (v) that Co-Lead Counsel intends to make an application for an award of attorneys' fees

23

and expenses (including the amount of such fees and expenses determined on an average per share basis). *See* 15 U.S.C. § 78u-4(a)(7).

With respect to attorneys' fees and expenses, the case has been prosecuted on a contingency basis since its inception and Co-Lead Counsel has not received any payment of fees or expenses. Co-Lead Counsel will apply to the Court for an award of attorneys' fees in an amount not to exceed 33.3% of the Settlement Fund. Co-Lead Counsel will also apply for payment of Litigation Expenses incurred in connection with the Action in an amount not to exceed $100,000. Co-Lead Counsel may also apply for reimbursement of the reasonable costs and expenses incurred by Plaintiffs directly related to their representation of the Class in accordance with 15 U.S.C. § 78u-4(a)(4), in an amount not to exceed $60,000, combined.

### E.    THE COURT SHOULD ADOPT THE PROPOSED SCHEDULE

If the Court preliminarily approves the Settlement, Plaintiffs respectfully proposes the below schedule. The timing of events is determined by the date the Preliminary Approval Order is entered and the date the Settlement Hearing is scheduled. To allow sufficient time for notice to be disseminated to the Settlement Class Members, Plaintiffs respectfully request that the Court schedule the Settlement Hearing for a date approximately 100 calendar days after entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter.

| Event | Proposed Due Date |
|---|---|

24

| | |
|---|---|
| Deadline for notice to Class Members by: (a) mailing Postcard Notice, and (b) posting Notice and Claim Form on Settlement website (Preliminary Approval Order, ¶ 11) | 20 business days after entry of Preliminary Approval Order |
| Deadline for publication of Summary Notice in *Investor's Business Daily* and over *PR Newswire* (Preliminary Approval Order, ¶ 4(d | 10 business days after Notice Date |
| Deadline for papers in support of Settlement, Plan of Allocation, and Fee and Expense Application (Preliminary Approval Order, ¶ 24) | 35 calendar days before the Settlement Hearing |
| Deadline for receipt of exclusion requests or objections (Preliminary Approval Order, ¶¶ 11, 15) | 21 calendar days before the Settlement Hearing |
| Postmark deadline for submitting a Proof of Claim (Preliminary Approval Order, ¶ 8) | Postmarked no later than 120 calendar days after Notice Date |
| Copies of all request for exclusion to be provided to Defendants' Counsel (Preliminary Approval Order, ¶ 11) | 15 calendar days before Settlement Hearing |
| Deadline for responses to any objections or in further support of Settlement, Plan of Allocation, and Fee and Expense Application (Preliminary Approval Order, ¶ 24) | 7 calendar days before Settlement Hearing |
| Affidavit or declaration of mailing and publishing notice (Preliminary Approval Order, ¶ 4(e)) | 7 calendar days before Settlement Hearing |
| Settlement Hearing (Preliminary Approval Order, ¶ 2) | To be determined by the Court, approximately 150 days after entry of Preliminary Approval Order |

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court (1) grant preliminary approval of the Settlement, (2) approve the Plan of Allocation, (3) approve the proposed form and manner of notice, (4) certify the Settlement Class for purposes of the Settlement, and (5) schedule a Settlement Hearing. The Parties' agreed-upon form of proposed Preliminary Approval Order, with exhibits, is being filed herewith.

Dated: June 12, 2024

**POMERANTZ LLP**

*s/ Jonathan D. Park*

Jeremy A. Lieberman
(Admitted *Pro Hac Vice*)
Jonathan D. Park
(Admitted *Pro Hac Vice*)
600 Third Avenue, 20th Floor
New York, NY 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
jalieberman@pomlaw.com
jpark@pomlaw.com

*Counsel to Co-Lead Plaintiff William Jeffrey Igoe and Co-Lead Counsel for the Class*

**EVANGELISTA WORLEY, LLC**
James M. Evangelista
500 Sugar Mill Road, Suite 245A
Atlanta, GA 30350
Telephone: (404) 205-8400
jim@ewlawllc.com

*Counsel to Co-Lead Plaintiff William Jeffrey Igoe and Liaison Counsel for the Class*

**LOWEY DANNENBERG, P.C.**
Vincent Briganti
vbriganti@lowey.com
(Admitted *Pro Hac Vice*)
Andrea Farah
afarah@lowey.com
(Admitted *Pro Hac Vice*)
Alesandra Greco
agreco@lowey.com

26

(Admitted *Pro Hac Vice*)
44 South Broadway, Suite 1100
White Plains, New York 10601
Telephone: 914/997-0500

*Counsel to Co-Lead Plaintiffs Mike Shafer and David Keating and Co-Lead Counsel for the Class*

27

## <u>LOCAL RULE 7.1(D) CERTIFICATION</u>

By signature below, counsel certifies that the foregoing document was prepared in Times New Roman, 14-point font in compliance with Local Rule 5.1.

*<u>/s/ Jonathan D. Park</u>*

JONATHAN D. PARK

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 12, 2024, I electronically filed the foregoing document with the Clerk of Court by using the CM/ECF system, and a copy of the foregoing pleading has been electronically mailed to all attorneys of record.

*/s/ Jonathan D. Park*

JONATHAN D. PARK