**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

|  |  |
|---|---|
| MIKE SHAFER, DAVID KEATING, and WILLIAM JEFFREY IGOE, on Behalf of Themselves and All Others Similarly Situated,<br><br>                  Plaintiffs,<br><br>        v.<br><br>GLOBAL PAYMENTS INC., ACTIVE NETWORK LLC, JEFF SLOAN, CAMERON BREADY, PAUL TODD, JOSH WHIPPLE, and ANDREA FACINI,<br><br>               Defendants. | Case No. 1:23-cv-00577-LMM<br><br>CLASS ACTION |

**DECLARATION OF JONATHAN D. PARK IN SUPPORT OF
CO-LEAD PLAINTIFFS' MOTION FOR
PRELIMINARY APPROVAL OF SETTLEMENT AND
<u>APPROVAL OF NOTICE TO THE SETTLEMENT CLASS</u>**

I, Jonathan D. Park, pursuant to 28 U.S.C. § 1746, hereby declare:

1.      I am a member of the Bar of the State of New York. I am Of Counsel with the law firm of Pomerantz LLP, counsel to Co-Lead Plaintiff William Jeffrey Igoe, and one of the attorneys this Court appointed as Co-Lead Counsel. I have been actively involved in all aspects of the prosecution and resolution of the Action, am familiar with its proceedings, and have personal knowledge of the matters set forth

1

herein based upon my supervision and participation in all material aspects of the Action, and if called as a witness, could and would testify competently thereto.[1]

2. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, we submit this declaration in support of Plaintiffs' Motion for Preliminary Approval of Settlement and Approval of Notice to the Settlement Class (the "Motion").

## I. PRELIMINARY STATEMENT

3. The proposed Settlement now before the Court provides for the resolution of all claims in the Action, and related claims, in exchange for a cash payment of $3,600,000. As detailed herein, Co-Lead Plaintiffs and Co-Lead Counsel respectfully submit that the Settlement represents a very favorable result for the Settlement Class in light of the significant risks of continuing to litigate the Action.

4. Co-Lead Plaintiffs and Co-Lead Counsel have vigorously litigated this case since its inception on February 8, 2023, securing the proposed Settlement in sixteen months. The Settlement was achieved only after Co-Lead Counsel, *inter alia,* as detailed herein: (i) identified alleged misrepresentations by Defendants and filed an initial complaint (Doc. No. 1); (ii) conducted a thorough and wide-ranging investigation concerning the allegedly fraudulent misrepresentations made by Defendants, which included a review and analysis of publicly available information;

---

[1] All capitalized terms used in this Memorandum that are not otherwise defined shall have the meanings given to them in the Stipulation and Agreement of Settlement, dated June 10, 2024 (the "Stipulation"), which is submitted herewith.

(iii) consulted with experts on market efficiency, loss causation, and damages; (iv) prepared and filed a detailed amended complaint (Doc No. 39) (the "Complaint"); (v) analyzed Defendants' motion to dismiss the Complaint (Doc. No. 49) (the "Motion to Dismiss"), and Defendants' reply in support thereof (Doc. No. 53); (vi) filed papers in opposition to the Motion to Dismiss (Doc. No. 52), which succeeded in part per the Court's order granting in part and denying in part the Motion to Dismiss (Doc. No. 55); (vii) analyzed Defendants' motion seeking interlocutory review of the Court's order on the Motion to Dismiss pursuant to 28 U.S.C. § 1292(b) (Doc. No. 56) (the "Motion for Interlocutory Review"), and Defendants' reply in support thereof (Doc. No. 58); (viii) filed papers in opposition to the Motion for Interlocutory Review (Doc No. 57); (ix) prepared for discovery to begin, which under the Private Securities Litigation Reform Act of 1995 (the "PSLRA") had been stayed pending the resolution of the Motion to Dismiss; and (x) engaged in significant mediation efforts over a number of weeks, leading to the Settlement.

5.    Co-Lead Plaintiffs and Co-Lead Counsel believe that the Settlement is in the best interests of the Settlement Class. Due to their efforts, Co-Lead Plaintiffs and Co-Lead Counsel are well-informed about the strengths and weaknesses of the claims and defenses in the Action. As discussed in detail below, the Settlement was achieved in the face of vigorous opposition to Co-Lead Plaintiffs' claims by Defendants, who would have continued to raise numerous challenging defenses. For

example, Defendants strongly disputed Plaintiffs' allegations of scienter and the falsity and materiality the alleged misstatements. Defendants' also vigorously disputed that Co-Lead Plaintiffs adequately alleged or could allege loss causation, which was the subject of Defendants' Motion for Interlocutory Review (which was pending when the Parties reached the Settlement). In a similar vein, Defendants would likely argue that damages are not significant and that the alleged misstatements did not impact the price of Global Payments' common stock, thus precluding class certification. In particular, Defendants argued that "the price of Global Payments' stock moved in virtual lock-step with the S&P 500 Index" on October 18 and 19, 2022, precluding Co-Lead Plaintiffs from establishing that Defendants' alleged misstatements were the cause of any losses suffered by Co-Lead Plaintiffs or other members of the proposed class. *See* Doc. No. 53 at 16. Issues relating to damages and class certification would likely have come down to an inherently unpredictable and hotly disputed "battle of the experts," with Defendants' expert or experts opining, among other things, that Co-Lead Plaintiffs overstated damages, failed to account for other factors that may have caused the price of Global Payments' common stock to decline, and failed to establish that Defendants' alleged misstatements had any price impact. In the absence of a settlement, there is a very real risk that the Settlement Class could recover nothing or an amount significantly less than the negotiated Settlement.

4

6.      With respect to the proposed Plan of Allocation for the Settlement proceeds, as discussed below, the proposed plan was developed with the assistance of Plaintiffs' damages expert, and provides for the distribution of the Net Settlement Fund to Settlement Class Members who submit Claim Forms that are approved for payment on a *pro rata* basis based on their losses attributable to the alleged securities law violations.

7.      Plaintiffs believe the proposed Settlement represents a victory for the Settlement Class.  Therefore, Plaintiffs seek to notify Settlement Class Members of the proposed Settlement so to evaluate and determine whether to exclude themselves from the Settlement Class, object to the proposed Settlement, or submit a Claim Form.

## II.    PROCEDURAL HISTORY

### A.      The Initial Complaint and The Appointment of Co-Lead Plaintiffs

8.      On February 8, 2023, Mike Shafer (prior to his appointment as Co-Lead Plaintiff), represented by Lowey Dannenberg P.C. ("Lowey Dannenberg") (prior to its appointment as Co-Lead Counsel), filed a putative class action complaint styled as *Shafer v. Active Network, LLC, et al.*, No. 1:23-cv-0577, alleging violations of federal securities laws against Active Network LLC ("Active"), Global Payments Inc. ("Global Payments"), Jeff Sloan, Cameron Bready, Paul Todd, and Josh

Whipple in the United States District Court for the Northern District of Georgia. Doc. No. 1.

9.      Pursuant to Section 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §78u-4(a)(3)(B), as amended by the PSLRA, on April 10, 2023, the following members of the purported class moved for appointment as lead plaintiff and approval of their selection of lead counsel for the purported class: (i) William Jeffrey Igoe (Doc. No. 15); and (ii) "The Investor Group" consisting of David Keating and Mike Shafer (Doc. No. 16).

10.     On April 24, 2023, William Jeffrey Igoe, David Keating, and Mike Shafer filed a stipulation to serve as Co-Lead Plaintiffs and selecting the firms of Pomerantz LLP ("Pomerantz") and Lowey Dannenberg as Co-Lead Counsel for the proposed class.  Doc. No. 24.

11.     By order dated April 25, 2023, the Court directed Igoe and the Investor Group to identify the specific lawyers from Pomerantz, Lowey Dannenberg, and then-proposed liaison counsel firm Evangelista Worley, LLC who would litigate the Action. Doc. No. 25.

12.     On May 4, 2023, Igoe and the Investor Group provided the requested information, identifying the following specific attorneys seeking appointment as Co-Lead Counsel: from Pomerantz, Jeremy A. Lieberman (Managing Partner), me (Of Counsel), and Lauren K. Molinaro (Associate); and from Lowey Dannenberg,

Vincent Briganti (Chairman), Andrea Farah (Senior Associate), and Alesandra Greco (Associate). Doc. No. 28. Igoe and the Investor Group also identified James M. Evangelista of Evangelista Worley, LLC as proposed Liaison Counsel. Id.

13.     By Order dated May 11, 2023, the Court appointed William Jeffrey Igoe and "The Investor Group" (consisting of Mike Shafer and David Keating) as Co-Lead Plaintiffs and approved Co-Lead Plaintiffs' selection of Jeremy A. Lieberman, Jonathan Park, and Lauren Molinaro of Pomerantz LLP, and Vincent Briganti, Andrea Farah and Alesandra Greco from Lowey Dannenberg, P.C. as Co-Lead Counsel, and James Evangelista of Evangelista Worley, as Liaison Counsel. Doc. No. 29.

14.     Lauren Molinaro later withdrew from the Action. Doc. No. 43.

**B.     The Operative Complaint**

15.     On June 26, 2023, Co-Lead Plaintiffs filed the Complaint and served it on all Defendants with the exception of Andrea Facini. Doc. No. 39. The Complaint asserted claims under Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5 promulgated thereunder against Defendants. *Id.* The Complaint alleged that Defendants made materially false and misleading statements during the Class Period about: (i) Active and the Company's trade practices; (ii) Active and the Company's legal and regulatory compliance; and (iii) Active and the Company's revenue and financial performance. *Id.* The Complaint further alleged that the price of the

7

Company's common stock was artificially inflated as a result of Defendants' allegedly false and misleading statements, and declined when the truth was revealed. *Id.* In particular, the Complaint alleged that the price of Global Payments common stock declined on October 18 and 19, 2022, in response to the filing of a complaint against Active by the Consumer Financial Protection Bureau on October 18, 2022. *Id.*

16.     On July 7, 2023, Co-Lead Plaintiffs served the Complaint on Defendant Andrea Facini. Doc. No. 44.

### C.     Defendants' Motion to Dismiss, the Court's Order Thereon, and Defendants' Motion for Interlocutory Review

17.     On August 17, 2023, Defendants filed and served the Motion to Dismiss pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6), arguing that the Complaint failed to state a claim upon which relief could be granted, accompanied by a brief, attorney declaration, and exhibits thereto. Doc. No. 49.

18.     On October 16, 2023, Co-Lead Plaintiffs filed and served a memorandum of law in opposition to the Motion to Dismiss. Doc. No. 52.

19.     On November 15, 2023, Defendants filed and served a reply brief, attorney declaration, and exhibits thereto in further support of the Motion to Dismiss. Doc. No. 53.

20.     In their opening and reply briefs in support of the Motion to Dismiss, Defendants argued that Co-Lead Plaintiffs did not adequately plead that Defendants

made any materially false or misleading statements or that Defendants did so with scienter.

21. Defendants also argued that, as a matter of law, Co-Lead Plaintiffs' allegations of loss causation—a required element of their causes of action—were insufficient. Defendants argued that the May 1, 2023 announcement of Defendant Sloan's departure from Global Payments could not constitute a corrective disclosure because, inter alia, "Plaintiffs d[id] not, and cannot, allege that this announcement said anything about allegedly deceptive practices at Active or the CFPB's claims." Doc. No. 49-1 at 28. Defendants further argued that "plaintiffs must also plead a significant stock price drop after the disclosure and that the disclosure was a substantial or significant contributing cause of the drop." *Id.* at 27. With respect to the complaint filed by the CFPB against Active on October 18, 2022, Defendants argued that Plaintiffs "fail[ed] to plead what time during the day the suit became public and how the stock price moved thereafter," that "[t]he CFPB's statement and press release announcing the Active suit were added to Bloomberg Law's public news database at 1:39 PM on October 18, 2022," and that "Bloomberg Finance L.P. trading data shows that immediately before 1:39 PM on October 18, 2022, Global Payments common stock was trading at a price of $113.35/share[] . . . [and] [t]he stock price then rose to close at $113.67 on October 18, 2022." *Id.* Defendants argued that "[w]here a stock price rises after an alleged 'corrective disclosure,' loss

9

causation is not pled." *Id.* Defendants further argued that the price of Global Payments' stock moved in virtual lock-step with the S&P 500 Index" on October 18 and 19, 2022, precluding Co-Lead Plaintiffs from establishing that Defendants' alleged misstatements were the cause of any losses suffered by Co-Lead Plaintiffs or other members of the proposed class. *See* Doc. No. 53 at 16.

22.     By Order dated March 29, 2024, the Court granted in part and denied in part the Motion to Dismiss, including sustaining the Complaint's allegations regarding Defendants' allegedly false and misleading statements regarding the Company's legal and regulatory compliance. Doc. No. 55.

23.     On April 18, 2024, Defendants filed and served the Motion for Interlocutory Review pursuant to 28 U.S.C. § 1292(b) and a memorandum of law in support thereof. Doc. No. 56. The Motion for Interlocutory Review sought to bring an immediate appeal of the Court's order on the Motion to Dismiss to the United States Court of Appeals for the Eleventh Circuit *Id.* In the Court's order on the Motion to Dismiss, the Court applied Federal Rule of Civil Procedure 8 to the Complaint's loss causation allegations. Doc. No. 55 at 28. Defendants' Motion for Interlocutory Review requested that the Court amend its order on the Motion to Dismiss to certify for interlocutory appeal, pursuant to 28 U.S.C. § 1292(b), the question of whether Rule 8 or Rule 9(b) governs the pleading of loss causation for a claim asserted under Section 10(b) of the Exchange Act and Rule 10b-5 promulgated

thereunder. Doc. No. 56. Defendants argued that the higher pleading standard of Federal Rule of Civil Procedure 9(b) should apply and that, under that standard, the Complaint's loss causation allegations were insufficient. *Id.*

24. On May 2, 2024, Co-Lead Plaintiffs filed and served a memorandum of law in opposition to the Motion for Interlocutory Review, accompanied by an attorney declaration and exhibits thereto. Doc. No. 57.

25. On May 13, 2024, Defendants filed and served an answer and defenses to the Complaint. Doc. No. 58.

26. On May 14, 2024, Defendants filed and served a reply memorandum of law in support of the Motion for Interlocutory Review. Doc. No. 59.

### D.     The Parties Prepare for Discovery

27. Also on May 14, 2024, Co-Lead Counsel contacted Defendants' Counsel to schedule a conference to discuss a joint preliminary report and scheduling plan to be filed pursuant to Federal Rule of Civil Procedure 26(f). The Parties scheduled that conference for May 23, 2024.

## III.   SETTLEMENT NEGOTIATIONS

28. Following the issuance of the March 29, 2024 Order granting in part and denying in part the Motion to Dismiss, the Parties discussed the possibility of resolving the case through settlement. These discussions continued for a number of weeks. As these discussions appeared likely to result in an agreement to resolve the

Action, the Parties began negotiating the terms of a term sheet memorializing such agreement on May 20, 2024.

29. On May 21, 2024, the Parties reached an agreement to resolve the Action for a settlement amount of $3,600,000 in cash. The Parties completed negotiating the term sheet memorializing this agreement, which was signed that same day by Co-Lead Counsel on behalf of Co-Lead Plaintiffs and by Defendants' Counsel on behalf of Defendants, subject to certain terms and conditions, including the execution of a formal, final stipulation of settlement and related papers (the "Term Sheet"). The agreement to settle was further conditioned on Court approval of the Settlement.

30. On May 22, 2024, counsel for the Parties made a joint telephone call to the Court to advise the Court that they had reached a settlement-in-principle. On May 23, 2024, the Court issued an order administratively closing the case pending the Parties' filing of a dismissal, and directed the Parties to file within sixty days either (1) the necessary documents to dismiss this case or (2) a joint status report notifying the Court why they are unable to file such documents. Doc. No. 60. That order also denied as moot Defendants' Motion for Interlocutory Review. *Id.*

31. On June 10, 2024, the Parties executed the Stipulation, which is filed contemporaneously herewith.

## IV.   PLAINTIFFS' PROPOSAL TO NOTIFY MEMBERS OF THE PROPOSED SETTLEMENT CLASS OF THE PROPOSED SETTLEMENT

32.     Co-Lead Plaintiffs have retained A.B. Data, Ltd. ("A.B. Data" or the "Claims Administrator") as the proposed Claims Administrator to supervise and administer the notice procedure as well as the processing of claims.  Plaintiffs retained A.B. Data only after requesting proposals from four reputable and experienced claims administrators in the field of class action securities litigation administrations. Counsel for Co-Lead Plaintiffs reviewed the proposals received in response and selected A.B. Data to serve as claims administrator subject to court approval. If the Court so approves, Plaintiffs will instruct the Claims Administrator to disseminate copies of the Postcard Notice and Notice by mail, to publish the Summary Notice, and to post the Notice and Claim Form on the Settlement website.

33.     The Postcard Notice, attached as Exhibit A-4 to the Stipulation, will provide potential Class Members with information about the terms of the Settlement and contains, among other things: (i) a description of the Action and the Settlement; (ii) the terms of the proposed Plan of Allocation; (iii) an explanation of Settlement Class Members' right to participate in the Settlement; (iv) an explanation of Settlement Class Members' rights to object to the Settlement, the Plan of Allocation, and/or the fee and expense motion, or exclude themselves from the Settlement Class; and (v) the manner for submitting a Claim Form in order to be eligible for a payment

13

from the net proceeds of the Settlement.    The Postcard Notice also informs Settlement Class Members of Co-Lead Counsel's intention to apply for an award of attorneys' fees in an amount not to exceed one-third of the Settlement Amount, plus accrued interest and for payment of litigation expenses in an amount not to exceed $100,000, plus accrued interest. The Notice also informs Settlement Class Members that Co-Lead Counsel may apply for reimbursement of the reasonable costs and expenses incurred by Co-Lead Plaintiffs directly related to their representation of the Class in accordance with 15 U.S.C. § 78u-4(a)(4), in an amount not to exceed $60,000, combined.

34.    If the [Proposed] Preliminary Approval Order (attached to the Stipulation as Exhibit A) is entered in the form submitted herewith, the Claims Administrator will commence mailing the Postcard Notice, within twenty (20) business days after the Court signs the [Proposed] Preliminary Approval Order (the "Notice Date"), by first-class mail to all Settlement Class Members who can be identified with reasonable effort, and will cause the Notice and Claim Form to be posted on the Settlement website at www.globalpaymentssecuritieslitigation.com. In addition, not later than ten (10) business days after the Notice Date, the Claims Administrator shall cause the Summary Notice to be published once in *Investor's Business Daily* and once over *PR Newswire*, a national newswire service.

35.     The [Proposed] Preliminary Approval Order states that Global Payments shall provide, or cause to be provided to the Claims Administrator, within ten (10) business days after the Court enters the [Proposed] Preliminary Approval Order, at no cost to the Settlement Fund, a list (consisting of names, mailing addresses, and email addresses, if available) of the holders of Global Payments common stock during the Class Period in electronic format, such as Excel.

36.     Further, the [Proposed] Preliminary Approval Order provides that brokers and other nominees who purchased or otherwise acquired Global Payments common stock for beneficial owners who are Settlement Class Members shall, within seven (7) calendar days of receipt of the Notice, request from the Claims Administrator sufficient copies of the Postcard Notice to forward to all such beneficial owners and within seven (7) calendar days of receipt of those Postcard Notices forward them to all such beneficial owners; or (b) within seven (7) calendar days of receipt of the Notice, send a list of names, mailing addresses, and if available, email addresses, of all such beneficial owners to the Claims Administrator in which event the Claims Administrator shall promptly mail or email the Postcard Notice to such beneficial owners.

37.     Co-Lead Plaintiffs and Co-Lead Counsel believe that the proposed notice procedure, which is common in securities class actions, meets the requirements of Federal Rule of Civil Procedure 23 and due process, provides the

15

best notice practicable under the circumstances, and constitutes due and sufficient notice to all persons or entities entitled thereto.

## V.   RISKS FACED BY CO-LEAD PLAINTIFFS IN THE ACTION

38.    The proposed Settlement eliminates significant risks posed by continuing litigation, including the potential risk that the Settlement Class would recover nothing or an amount significantly less than the $3.6 million negotiated here. Further, while Co-Lead Plaintiffs believe that the claims asserted against Defendants are meritorious, they recognize that there are significant hurdles to overcome to establish falsity and materiality of the alleged misstatements and that Defendants acted with scienter.  In addition, even if Co-Lead Plaintiffs were able to overcome the risks to establishing falsity and scienter, they faced very serious risks in proving loss causation. Were the case to continue, Co-Lead Plaintiffs would face considerable risks and obstacles to achieving a greater recovery.  Co-Lead Plaintiffs and Co-Lead Counsel carefully considered these challenges during the Action and were mindful of such risks during settlement discussions with Defendants.

### A.   Risks Concerning Liability

#### 1.   Risks Concerning Falsity and Materiality

39.    If the case were to continue, Defendants would likely argue at summary judgment that the alleged misstatements or omissions were not materially false and misleading. Indeed, the Court dismissed a number of alleged misstatements in its

16

order resolving the Motion to Dismiss. As to the remaining alleged misstatements, Plaintiffs would face significant risks to proving they were materially false and misleading.

40.    First, Defendants would likely continue to argue that because they disclosed a "risk factor" that "to the extent we are in violation of these laws, rules or regulations … we may be subject to enforcement actions and as a result may incur losses and liabilities," investors could not have been misled by the statement that "[w]e are currently in compliance with existing legal and regulatory requirements." Doc. No. 49-1 at 13-16.

41.    Second, Defendants would likely argue that statements on Active's website were not directed to investors and thus are not actionable under the federal securities laws. *Id.* at 12-13.

42.    Third, Defendants would argue that the alleged misstatements and omissions were not material to investors, pointing again to how Global Payments' stock price moved in relation to the S&P 500 Index when the CFPB complaint became public. Defendants would also contend, as they did on the Motion to Dismiss, that "the allegedly improper practices at Active were [not] material to Global Payments' $24.7 billion in total revenues from Q4 2019 through Q3 2022, which roughly tracks the class period." Doc. No. 49-1 at 10.

17

43.    These and other arguments would pose a risk to Co-Lead Plaintiffs' ability to prove that Defendants made materially false and misleading statements to investors.

### 2. Risks Concerning Scienter

44.    If the case were to continue, Defendants would strenuously maintain that they did not act with scienter, which is often the most difficult element of a securities fraud claim for a plaintiff to plead or prove. In this case, Defendants would likely raise numerous scienter arguments that could pose very significant hurdles to proving that they acted with an intent to commit securities fraud or with severe recklessness.

45.    For instance, in support of the Motion to Dismiss, Defendants argued that "Plaintiffs affirmatively plead that practices around Active Advantage improved after Global Payments acquired Active in 2017, and that 'there was an effort to avoid misleading consumers' under Global Payments' ownership of Active," undercutting any inference that Defendants made material misstatements with scienter. Doc. 49-1 at 19. Defendants also argued that the Complaint did not establish a motive for Defendants to commit securities fraud, noting in particular "Plaintiffs' failure to allege any suspicious stock sales by the Individual Defendants." Id. at 23.

18

46.     Though the Court sustained Co-Lead Plaintiffs' scienter allegations at the pleading stage, were this litigation to continue, Co-Lead Plaintiffs would face the significant obstacle of proving that Defendants acted with scienter.

47.     For all these reasons, there was a very significant risk that the Court, at summary judgment, or a jury at trial, could conclude that Defendants did not act with scienter.

### B.     Risks Related to Loss Causation and Damages

48.     Even if Plaintiffs overcame the above risks and successfully established liability, Defendants would likely argue that there are no recoverable damages or that damages are minimal.

49.     Plaintiffs' consulting damages expert has estimated maximum aggregate damages of approximately $97 million, not accounting for the disaggregation of inactionable (or statistically non-significant) price movements.

50.     Defendants would of course argue that damages are much less. In its order on the Motion to Dismiss, the Court sustained only the alleged corrective disclosure on October 18, 2022.  With respect to this sole remaining corrective disclosure, Defendants would likely rely on the same evidence cited in support of their argument concerning loss causation, i.e., that the price of Global Payments common stock tracked the movement of the S&P 500 Index on October 18 and 19, 2022 and thus that all or substantially all of the decline in Global Payments share

price on those days cannot serve as the basis for compensable damages. Co-Lead Counsel thoroughly considered these issues and consulted with experts on market efficiency, loss causation, and damages to assess the risks these issues presented before agreeing to the Settlement.

51. Of course, even a reduced damages estimate assumes liability and, as explained above, it is far from certain that Co-Lead Plaintiffs would be able to prove liability. Indeed, to recover any damages at trial, Plaintiffs would have to prevail at many stages in the litigation—namely, a motion for summary judgment, a motion for class certification, and trial—and, even if Co-Lead Plaintiffs prevailed at those stages, appeals would likely follow. At each of these stages, there would be significant risks attendant to the continued prosecution of the Action, and there is no guarantee that further litigation would have resulted in a higher recovery, or any recovery at all.

**C. Risks Related to Class Certification**

52. Were this putative class action to continue, Co-Lead Plaintiffs would move for certification of a class pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure. In order to satisfy the "predominance" requirement of Rule 23(b)(3), Co-Lead Plaintiffs would invoke the fraud-on-the-market presumption of classwide reliance pursuant to *Basic, Inc. v. Levinson*, 485 U.S. 224 (1988).

53.    Notably, the *Basic* presumption of classwide reliance is rebuttable.  As the Supreme Court held in *Basic*, "[a]ny showing that severs the link between the alleged misrepresentation and either the price received (or paid) by the plaintiff or his decision to trade at a fair market price will be sufficient to rebut the presumption of reliance." *Id.* at 249.

54.    Defendants would likely seek to rebut the *Basic* presumption by attempting to "severs the link between the alleged misrepresentation and either the price received (or paid) by the plaintiff." *Id.* Under Supreme Court precedent, "defendants must be afforded an opportunity to rebut the presumption of reliance before class certification with evidence of a *lack* of price impact." *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 284 (2014)

55.    Consistent with their argument that the Complaint did not adequately allege loss causation because "the price of Global Payments' stock moved in virtual lock-step with the S&P 500 Index" on October 18 and 19, 2022, Doc. No. 53 at 16, Defendants would likely argue that, for the same reason, their alleged misstatements did not have any impact on the price of Global Payments stock.  Defendants would thus argue the *Basic* presumption was rebutted and class certification is inappropriate.

56.    Thus, while Co-Lead Plaintiffs and Co-Lead Counsel believe class certification would be appropriate in this Action, they recognize that there is a risk

21

that the Court would deny class certification. A denial of class certification would effectively dispose of the Action, as it would then proceed with only the individual claims of Co-Lead Plaintiffs.

## VI.    THE PLAN OF ALLOCATION

57.    Pursuant to the [Proposed] Preliminary Approval Order, and as set forth in the Notice (attached to the Stipulation as Exhibit A-1), all Settlement Class Members who wish to participate in the distribution of the Net Settlement Fund must submit a valid Claim Form, including all required information, that is postmarked no later than 120 calendar days after the Notice Date.  As provided in the Notice, after deduction of Court-awarded attorneys' fees and expenses, any reimbursement to Co-Lead Plaintiffs pursuant to the PSLRA, Notice and Administration Costs, and Taxes, the balance of the Settlement Fund will be distributed according to the Plan of Allocation, if approved by the Court.

58.    The proposed Plan of Allocation, which is set forth in full in the Notice (Stipulation, Exhibit A-1, ¶¶ 52-71), was designed to achieve an equitable and rational distribution of the Net Settlement Fund, but it is not a damages analysis that would be submitted at trial.  Co-Lead Counsel developed the Plan of Allocation in close consultation with a consulting damages expert and believe that the Plan of Allocation provides a fair and reasonable method for equitably distributing the Net Settlement Fund among Authorized Claimants.

59.     In developing the Plan of Allocation, Co-Lead Plaintiffs' consulting damages expert calculated the estimated amount of artificial inflation in the prices of Global Payments common stock that allegedly was proximately caused by Defendants' false and misleading statements and omissions.  In calculating the estimated artificial inflation allegedly caused by those misrepresentations and omissions, Co-Lead Plaintiffs' expert considered price changes in Global Payments common stock in reaction to the October 18, 2022 news concerning the CFPB Complaint, which allegedly corrected the respective alleged misrepresentations and omissions.

60.     Under the Plan of Allocation, a "Recognized Loss Amount" will be calculated for each purchase of shares of Global Payments common stock during the Class Period consistent with the measure of damages under the Exchange Act.  The Claims Administrator, under Co-Lead Counsel's direction, will determine each Authorized Claimant's *pro rata* share of the Net Settlement Fund based upon each Authorized Claimant's total Recognized Loss Amount compared to the aggregate Recognized Loss Amounts of all Authorized Claimants.  Calculation of Recognized Loss Amounts will depend upon several factors, including when the Authorized Claimant purchased shares of Global Payments common stock during the Class Period, whether the Authorized Claimant sold shares of Global Payments common stock and, if so, when.

61.    Once the Claims Administrator has processed all submitted claims, notified claimants of deficiencies or ineligibility, processed responses, and made claim determinations, the Claims Administrator will inform Co-Lead Counsel of that fact. At that point, Co-Lead Plaintiffs and Co-Lead Counsel will move the Court for an order authorizing distribution of the Net Settlement Fund to Authorized Claimants pursuant to the Plan of Allocation.

62.    After an initial distribution of the Net Settlement Fund, if any funds remain in the Net Settlement Fund by reason of uncashed distribution checks or otherwise, then, after the Claims Administrator has made reasonable and diligent efforts to have Settlement Class Members who are entitled to participate in the distribution of the Net Settlement Fund cash their distributions, any balance remaining in the Net Settlement Fund after at least six (6) months after the initial distribution of such funds will be used in the following fashion: (a) first, to pay any amounts mistakenly omitted from the initial disbursement; (b) second, to pay any additional settlement administration fees, costs, and expenses, including those of Co-Lead Counsel or the Claims Administrator as may be approved by the Court; and (c) finally, to make a second distribution to claimants who cashed their checks from the initial distribution and who would receive at least $10.00, after payment of the estimated costs, expenses, or fees to be incurred in administering the Net Settlement Fund and in making this second distribution, if such second distribution is

24

economically feasible. These redistributions shall be repeated, if economically feasible, until the balance remaining in the Net Settlement Fund is de minimis and such remaining balance will then be distributed pursuant to a method approved by the Court.

63.    In sum, the proposed Plan of Allocation, developed in consultation with Co-Lead Plaintiffs' consulting damages expert, is designed to fairly and rationally allocate the Net Settlement Fund among Authorized Claimants.  Accordingly, Co-Lead Plaintiffs and Co-Lead Counsel believe the proposed Plan of Allocation is fair, reasonable, and adequate, and in the best interest of the Settlement Class.

## VII.   CO-LEAD COUNSEL

64.    Pomerantz and Lowey Dannenberg and are nationally recognized securities litigation firms. Their attorneys are highly experienced in this area of the law and have proven themselves time and again to be successful investor advocates. Their knowledge and experience benefited Co-Lead Plaintiffs in this case, as evidenced by the recovery they achieved.

65.    Additional information about each firm's experience is contained within the attached firm resumes attached as exhibits hereto:

> **Exhibit 1** – a true and correct copy of Pomerantz's firm resume; and
>
> **Exhibit 2** – a true and correct copy of Lowey Dannenberg's firm resume.

25

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 12th day of June, 2024.

<u>s/ Jonathan D. Park</u>

**POMERANTZ LLP**
Jonathan D. Park
(Admitted *Pro Hac Vice*)
600 Third Avenue, 20th Floor
New York, NY 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
jpark@pomlaw.com

*Counsel to Co-Lead Plaintiff William Jeffrey Igoe and Co-Lead Counsel for the Class*

26

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 12, 2024, I electronically filed the foregoing document with the Clerk of Court by using the CM/ECF system, and a copy of the foregoing pleading has been electronically mailed to all attorneys of record.

*/s/ Jonathan D. Park*

JONATHAN D. PARK