## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA

|  |  |
|---|---|
| MIKE SHAFER, DAVID KEATING, and WILLIAM JEFFREY IGOE, Individually and On Behalf of All Others Similarly Situated,<br><br>    Plaintiffs,<br><br>  v.<br><br>GLOBAL PAYMENTS INC., ACTIVE NETWORK LLC, JEFF SLOAN, CAMERON BREADY, PAUL TODD, JOSH WHIPPLE, and ANDREA FACINI,<br><br>    Defendants. | Case No. 1:23-CV-00577-LMM<br><br>CLASS ACTION |

## BRIEF IN SUPPORT OF CO-LEAD COUNSEL'S MOTION FOR ATTORNEYS' FEES AND LITIGATION EXPENSES

# TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ...................................................................1

II.   ARGUMENT.........................................................................................4

      A.   The Eleventh Circuit Holds That a Reasonable Percentage of
           the Recovery is the Appropriate Method of Awarding Attorneys'
           Fees..........................................................................................4

      B.   The Requested Fee of 33.3% is Fair and Reasonable. .........................5

      C.   Co-Lead Plaintiffs' Endorsements of the Requested Fee Supports
           Its Approval. ..............................................................................6

      D.   The Relevant Factors Confirm That the Requested Fee is Fair and
           Reasonable..................................................................................7

           1.   The Time and Labor Required......................................................7

           2.   The Novelty and Difficulty of the Issues...................................9

           3.   The Skill, Experience, Reputation and Ability of the
                Attorneys .............................................................................12

           4.   The Preclusion of Other Employment ......................................13

           5.   The Requested Fee is Customary For a Case Such as
                This One..............................................................................14

           6.   Co-Lead Counsel Pursued This Case on a Pure Contingency
                Basis. .................................................................................14

           7.   The Amount Involved and Results Obtained..........................15

           8.   The Undesirability of the Case .............................................17

           9.   Awards in Similar Cases.......................................................18

           10.  The Reaction of the Settlement Class ....................................18

      E.   THE LITIGATION EXPENSES WERE REASONABLE AND
           NECESSARY TO ACHIEVE THE BENEFIT OBTAINED.............19

F.      THE COURT SHOULD REIMBURSE CO-LEAD PLAINTIFFS FOR THEIR REPRESENTATION OF THE SETTLEMENT CLASS PURSUANT TO THE PSLRA.............................................21

III.   CONCLUSION.........................................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Basic, Inc. v. Levinson*,
  485 U.S. 224 (1988)................................................................................11, 12

*Behrens v. Wometco Enters., Inc.*,
  118 F.R.D. 534 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir.
  1990) ........................................................................................................15, 19

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980)........................................................................................4

*Camden I Condo. Ass'n, Inc. v. Dunkle*,
  946 F.2d 768 (11th Cir. 1991) ...............................................................4, 5, 7, 12

*Carter's, Inc. Sec. Litig.*,
  2012 WL 12877943 (N.D. Ga. May 31, 2012).......................................................6

*Columbus Drywall & Insulation, Inc. v. Masco Corp.*,
  2012 WL 12540344 (N.D. Ga. Oct. 26. 2012) .......................................9, 12, 13

*David v. Am. Suzuki Motor Corp.*,
  2010 WL 1628362 (S.D. Fla. Apr. 15, 2010)......................................................12

*Dowdell v. City of Apopka*,
  698 F.2d 1181 (11th Cir. 1983) ......................................................................19

*Faught v. Am. Home Shield Corp.*,
  668 F.3d 1233 (11th Cir. 2012) ........................................................................5

*Gevaerts v. TD Bank, N.A.*,
  2015 WL 6751061 (S.D. Fla. Nov. 5, 2015) ......................................................20

*Halliburton Co. v. Erica P. John Fund, Inc.*,
  573 U.S. 258 (2014)......................................................................................12

*Hensly v. Eckerhart*,
  461 U.S. 424 (1983)......................................................................................15

*In re Clarus Corp. Sec. Litig.*,
  2005 WL 8172269 (N.D. Ga. Jan. 6, 2005)......................................................6, 18

*In re Domestic Air Transp. Antitrust Litig.*,
  148 F.R.D. 297 (N.D. Ga. 1993) ...........................................................................5

*In re Flowers Foods, Inc. Sec. Litig.*,
  2019 WL 6771749 (M.D. Ga. Dec. 11, 2019)......................................................22

*In re Health Ins. Innovations Sec. Litig.*,
  2021 WL 1341881  (M.D. Fla. Mar. 23, 2021), *R & R adopted*,
  2021 WL 1186838 (M.D. Fla. Mar. 30, 2021) ...........................................*passim*

*In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*,
  2024 WL 4415214 (S.D. Fla. Oct. 5, 2024) .........................................................5

*In re NetBank, Inc. Sec. Litig.*,
  2011 WL 13176646 ...............................................................................................17

*In re NetBank, Inc. Sec. Litig.*,
  2011 WL 13353222 (N.D. Ga. Nov. 9, 2011) ...........................................6, 9, 18

*In re Profit Recovery Grp. Int'l, Inc. Sec. Litig.*,
  2005 WL 8172262 (N.D. Ga. May 26, 2005)..................................................6, 18

*In re Synovus Fin. Corp.*,
  2014 WL 12756149 (N.D. Ga. Nov. 18, 2014)....................................................22

*in Shipes v. Trinity Indus.*,
  31 F.3d 347 (5th Cir. 1994) ................................................................................15

*Ingram v. Coca-Cola Co.*,
  200 F.R.D. 685 (N.D. Ga. 2001) ..........................................................................9

*Jones v. Diamond*,
  636 F.2d 1364 (5th Cir. 1981), *overruled on other grounds*, *Int'l
  Woodworkers of Am. v. Champion Int'l Corp.*, 790 F.2d 1174 (5th
  Cir.1986), *superseded by statute* .......................................................................15

*Morgan v. Pub. Storage*,
  301 F. Supp. 3d 1237 (S.D. Fla. 2016).........................................................14, 20

iv

*Norman v. Hous. Auth. of City of Montgomery*,
836 F.2d 1292 (11th Cir. 1988) ............................................................................14

*Pinto v. Princess Cruise Lines, Ltd.*,
513 F. Supp. 2d 1334 (S.D. Fla. 2007) ..........................................................14, 15

*Ressler v. Jacobson*,
149 F.R.D. 651 (M.D. Fla. 1992) .............................................................9, 16, 19

*Waters v. Int'l Precious Metals Corp.*,
190 F.3d 1291 (11th Cir. 1999) ......................................................................5, 8

**Statutes**

15 U.S.C. § 78u-4...........................................................................1, 17, 21, 22

42 U.S.C. § 2000e–5(k) .......................................................................................15

**Rules**

Fed. R. Civ. P. 23 .................................................................................................11

Co-Lead Counsel Pomerantz LLP ("Pomerantz") and Lowey Dannenberg P.C. ("Lowey Dannenberg") respectfully submit this brief in support of their motion, on behalf of all Plaintiffs' Counsel, for (i) an award of attorneys' fees in the amount of 33.3% of the Settlement Fund, or $1,200,000, plus interest earned at the same rate as earned by the Settlement Fund; (ii) reimbursement from the Settlement Fund of $53,474.16 for Litigation Expenses paid or incurred by Plaintiffs' Counsel; and (iii) and reimbursement of the reasonable costs and expenses incurred by Co-Lead Plaintiffs Mike Shafer, David Keating, and William Jeffrey Igoe ("Co-Lead Plaintiffs") directly related to their representation of the Settlement Class as authorized by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(a)(4).[1]

## I.    PRELIMINARY STATEMENT

The proposed Settlement, which provides for a cash payment of $3.6 million in exchange for the resolution of all claims in the Action, represents an excellent outcome for the Settlement Class. The significant recovery was achieved only after more than sixteen months of intense litigation against highly skilled defense counsel

---

[1] Unless otherwise indicated, all capitalized terms have the meanings set forth in the Stipulation and Agreement of Settlement, dated June 10, 2024. Doc. No. 65-2 ("Stipulation"). Unless otherwise indicated, "¶_" citations are to the Declaration of Jonathan D. Park, filed contemporaneously herewith ("Park Declaration" or "Park Decl."). Unless otherwise indicated, all citations and internal quotation marks are omitted.

1

and robust negotiations by experienced attorneys that specialize in securities litigation. In undertaking this litigation on a fully contingent basis, Co-Lead Counsel faced numerous challenges to proving both liability and damages that raised serious risks of no recovery, or a significantly lesser recovery than the Settlement, for the Settlement Class.

The prosecution and settlement of this litigation required extensive efforts on the part of the counsel. As detailed in the accompanying Park Declaration, Co-Lead Counsel vigorously pursued this litigation from its outset by, among other things: (i) conducting a comprehensive investigation into the claims asserted in the Action (¶¶ 84, 102); (ii) researching, drafting, and filing two complaints, including the initial complaint and the operative Amended Class Action Complaint ("Complaint") (¶¶ 11, 18); (iii) defeating, in part, Defendants' motion to dismiss the Complaint (¶¶ 20-25); (iv) opposing Defendants' motion for interlocutory review of the Court's order denying, in part, the motion to dismiss (¶¶ 26-27, 29); and (iv) negotiating the Settlement over several weeks (¶¶ 31-34).

The Settlement is a particularly favorable result considering the significant hurdles that Co-Lead Plaintiffs would have had to overcome to prevail in this complex securities fraud litigation. As further detailed below and in the Park Declaration, counsel faced numerous substantial challenges in establishing liability, loss causation, and damages in the Action. Counsel would have also faced challenges

2

in the certifying the class. Despite these risks, Plaintiffs' Counsel and Johnson Fistel, LLP ("Johnson Fistel") (which, along with Lowey Dannenberg, represented Mike Shafer to file the initial complaint, prior to the appointment of Co-Lead Plaintiffs and Co-Lead Counsel) collectively worked nearly one thousand hours over the course of more than sixteen months to achieve the Settlement, all on a contingent-fee basis with no assurance of ever being compensated for their time and effort expended on behalf of the class.

As compensation for Plaintiffs' Counsel's effort on behalf of the Settlement Class and the risks of nonpayment they faced in prosecuting the Action on a contingent basis, Co-Lead Counsel seeks attorneys' fees in the amount of 33.3% of the Settlement Fund. Given the circumstances of the case, the requested 33.3% fee is fair and reasonable and within the range of fees that courts in this Circuit have awarded in securities and other complex class actions with comparable recoveries. The requested fee also represents a multiplier of just 1.6 of the lodestar of Plaintiffs' Counsel's and Johnson Fistel, which is *below* the range of multipliers typically awarded in class actions with significant contingency risks such as this one. In addition, the expenses for which Plaintiffs' Counsel seek payment were reasonable and necessary for the successful prosecution of the Action.

The application for fees and expenses has the full support of Co-Lead Plaintiffs. *See* Declaration of William Jeffrey Igoe ("Igoe Decl.") (Ex. 2 to the Park

3

Decl.) ¶¶ 8-9; Declaration of Mike Shafer ("Shafer Decl.") (Ex. 3 to the Park Decl.) ¶¶8-9; Declaration of David Keating ("Keating Decl.") (Ex. 4 to the Park Decl.) ¶¶8-9. Co-Lead Plaintiffs actively supervised the Action and have endorsed the requested fee as fair and reasonable in light of the result achieved in the Action, the quality of work performed by Plaintiffs' Counsel, and the risks of litigation. *Id.* In addition, while the deadline set by the Court for Settlement Class Members to object to the requested attorneys' fees and expenses has not yet passed, to date, no objections to the request for fees and expenses has been received. ¶ 70.

For all the reasons discussed in this brief and in the Park Declaration, Co-Lead Counsel respectfully submits that the requested attorneys' fees and expenses are fair and reasonable.

## II. ARGUMENT

### A. The Eleventh Circuit Holds That a Reasonable Percentage of the Recovery is the Appropriate Method of Awarding Attorneys' Fees.

Courts have long recognized that attorneys who represent a class and achieve a benefit for class members are entitled to be compensated for their services, and that attorneys who obtain a recovery for a class in the form of a common fund are entitled to an award of fees and expenses from that fund. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 771 (11th Cir. 1991). "The purpose of awarding fees is to compensate

successful attorneys for [the] benefits they have achieved for the class as a result of the attorneys' efforts, for the risks the attorneys have taken in prosecuting a long and complex case, and for the hours and expenses the attorney has invested in the case." *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 353 (N.D. Ga. 1993).

In the Eleventh Circuit, "attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class." *Camden I*, 946 F.2d at 774; *accord Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1242 (11th Cir. 2012); *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1294 (11th Cir. 1999).

**B.   The Requested Fee of 33.3% is Fair and Reasonable.**

A review of percentage fee awards approved by Courts within this District and Circuit in complex common fund cases involving comparable recoveries confirms that the 33.3% fee sought by Co-Lead Counsel is fair and reasonable. Indeed, "district courts in the Eleventh Circuit routinely approve fee awards of one-third of the common settlement fund." *In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, 2024 WL 4415214, at *5 (S.D. Fla. Oct. 5, 2024) (collecting cases); *see also, e.g.*, *In re Health Ins. Innovations Sec. Litig.*, 2021 WL 1341881, at *12 (M.D. Fla. Mar. 23, 2021) (for $2.8 million settlement, finding that "the 33% requested fee award is reasonable and consistent with fee awards that have been granted in other securities litigation class actions within the Eleventh Circuit"), *R &*

*R adopted*, 2021 WL 1186838 (M.D. Fla. Mar. 30, 2021); *In re NetBank, Inc. Sec. Litig.*, 2011 WL 13353222, at *2 (N.D. Ga. Nov. 9, 2011) (34% of $4.25 million settlement fund was a fair and reasonable fee); *In re Profit Recovery Grp. Int'l, Inc. Sec. Litig.*, 2005 WL 8172262, at *3 (N.D. Ga. May 26, 2005) (33.3% of a $6.75 million settlement fund was fair and reasonable); *In re Clarus Corp. Sec. Litig.*, 2005 WL 8172269, at *3 (N.D. Ga. Jan. 6, 2005) (awarding 33.3% fee for $4.5 million settlement). Accordingly, the requested 33.3% fee is fair and reasonable.

C.   **Co-Lead Plaintiffs' Endorsements of the Requested Fee Supports Its Approval.**

Co-Lead Plaintiffs oversaw and monitored the work of Co-Lead Counsel and have approved the requested fee as fair and reasonable in light of the work performed, the recovery obtained for the Settlement Class, and the risks associated with continuing to litigate the Action. *See* Igoe Decl. ¶¶ 2-6, 8; Shafer Decl. ¶¶ 2-6, 8; Keating Decl. ¶¶ 2-6, 8. Co-Lead Plaintiffs' endorsements of the fee request supports its approval. *See Carter's, Inc. Sec. Litig.*, 2012 WL 12877943, at *2 (N.D. Ga. May 31, 2012) (approving fee request that was "reviewed and approved as fair and reasonable by Lead Plaintiff . . . [who] was directly involved in the prosecution and resolution of the claims and who has a substantial interest in ensuring that any fees paid to Lead Counsel are duly earned and not excessive").

**D.    The Relevant Factors Confirm That the Requested Fee is Fair and Reasonable**

In *Camden I*, the Eleventh Circuit recommended that district courts consider several factors in determining whether a requested percentage fee award is reasonable, including:

> (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and the length of the professional relationship with the client; and (12) awards in similar cases.

946 F.2d at 772 n.3 (*citing Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)). A court may also properly consider "the time required to reach a settlement, whether there are any substantial objections by class members or other parties to the settlement terms or the fees requested by counsel . . . and the economics involved in prosecuting [the] action." *Id.* at 775.

**1.    The Time and Labor Required**

The time and effort expended by Plaintiffs' Counsel to achieve the Settlement supports the requested fee. Co-Lead Counsel committed extensive resources to developing the challenging aspects of Co-Lead Plaintiffs' claims and overcoming the obstacles introduced by Defendants over more than sixteen months of litigation.

Co-Lead Counsel, among other things: (i) conducted a comprehensive factual investigation of the claims at issue in the Action (¶¶ 84, 102); (ii) prepared and filed two complaints (¶¶ 11, 18); (iii) defeated, in part, Defendants' motion to dismiss (¶¶ 20-25); and (iv) participated in robust settlement negotiations (¶¶ 31-34). In particular, Co-Lead Counsel conducted an investigation that yielded, among other things, allegations drawn from thirteen former employees of the Company or its subsidiary, Active Network LLC ("Active"). *See* Doc. No. 39.

In total, Plaintiffs' Counsel and Johnson Fistel expended 983.1 hours in this litigation with a resulting lodestar of $731,458.00. ¶ 88. The time and labor expended by counsel amply supports the requested fee.

While not required in the Eleventh Circuit, an analysis of the requested fee under the "lodestar/multiplier" approach further supports the reasonableness of a 33.3% award. *See Waters*, 190 F.3d at 1298 ("[W]hile we have decided in this circuit that a lodestar calculation is not proper in common fund cases, we may refer to that figure for comparison."). Here, based on the $3.6 million Settlement fund, the requested 33.3% fee award (or $1,200,000, before interest), represents a multiplier of approximately 1.6 of the total lodestar of Plaintiffs' Counsel and Johnson Fistel.[2] "Typically, courts award a multiplier range of 2.5 to 4 in class actions." *Health Ins.*

_____

[2] The multiplier is calculated by dividing the $1,200,000 fee request by the $731,458.00 in lodestar that Plaintiffs' Counsel and Johnson Fistel incurred, which yields approximately 1.64.

*Innovations*, 2021 WL 1341881, at *8. That Plaintiffs' Counsel's lodestar is significantly below that range confirms the reasonableness of the requested fee. *See Columbus Drywall & Insulation, Inc. v. Masco Corp.*, 2012 WL 12540344, at *5 and n.4 (N.D. Ga. Oct. 26. 2012) (multiplier of 4 times lodestar was "well within" the accepted range); *Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 694-96 (N.D. Ga. 2001) (awarding fee representing a multiplier between 2.5 and 4).

### 2.    The Novelty and Difficulty of the Issues

As courts have recognized, "multi-faceted and complex" issues are "endemic" to cases based on alleged violations of federal securities laws, *Ressler v. Jacobson*, 149 F.R.D. 651, 654 (M.D. Fla. 1992), and "securities class action litigation is notably difficult and notoriously uncertain." *In re NetBank, Inc. Sec. Litig.*, 2011 WL 13353222, at *3. This Action was no exception.

As further detailed in the Park Declaration, Co-Lead Plaintiffs and Co-Lead Counsel faced a number of substantial challenges to establishing liability and proving damages in this Action from the outset. Defendants contested their liability on falsity, materiality, and scienter grounds as well as issues regarding loss causation and damages. In addition, Co-Lead Plaintiffs and Co-Lead Counsel would face obstacles to certifying the class were this litigation to continue.

Defendants would likely argue at summary judgment that the alleged misstatements or omissions were not materially false and misleading. Indeed, the

9

Court dismissed a number of alleged misstatements in its order resolving the Motion to Dismiss. As to the remaining alleged misstatements, Plaintiffs would face significant risks to proving they were actionable. ¶¶ 43-47.

Even if Plaintiffs established that Defendants' alleged misstatements were materially false and misleading, Defendants would strenuously maintain they did not act with scienter, which is often the most difficult element of a securities fraud claim for a plaintiff to plead or prove. In this case, Defendants would likely raise numerous scienter arguments that could pose significant hurdles. ¶¶48-51.

Assuming Plaintiffs overcame the above risks and successfully established liability, Defendants would still likely argue that there are no recoverable damages or that damages are minimal. Plaintiffs' consulting damages expert has estimated maximum aggregate damages of approximately $97 million, not accounting for the disaggregation of inactionable (or statistically non-significant) price movements. Defendants would argue that damages are much less. In its order on the Motion to Dismiss, the Court sustained only the alleged corrective disclosure on October 18, 2022. Defendants would likely argue that, *inter alia*, the price of Global Payments common stock tracked the movement of the S&P Index on October 18 and 19, 2022, and thus all or nearly all of the decline in Global Payments share price on those days cannot serve as the basis for compensable damages. ¶¶52-55.

Indeed, loss causation—a required element of Co-Lead Plaintiffs' claims—was the subject of Defendants' motion for interlocutory review of the Court's decision granting in part and denying in part Defendants' motion to dismiss, wherein Defendants that the Eleventh Circuit was likely to hold that loss causation must be pleaded with particularity and that the Complaint did not meet that standard. Doc. No. 56. Though Co-Lead Plaintiffs believed that interlocutory review was inappropriate and that their loss causation allegations passed muster, an adverse finding as to loss causation could eliminate damages entirely. Co-Lead Counsel and Co-Lead Plaintiffs thoroughly considered this before agreeing to the Settlement.

In addition to the above hurdles, Plaintiffs would also face challenges certifying the class. Were the Action to continue, Plaintiffs would move for class certification pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3). To satisfy 23(b)'s "predominance" requirement, Plaintiffs would invoke the fraud-on-the-market presumption of classwide reliance pursuant to *Basic, Inc. v. Levinson*, 485 U.S. 224 (1988). The *Basic* presumption is rebuttable. "Any showing that severs the link between the alleged misrepresentation and either the price received (or paid) by the plaintiff, or his decision to trade at a fair market price, will be sufficient to rebut the presumption of reliance." *Id.* at 249. Under Supreme Court precedent, "defendants must be afforded an opportunity before class certification to defeat the presumption through evidence that an alleged misrepresentation did not actually

11

affect the market price of the stock." *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 284 (2014). Consistent with their argument that the Complaint did not adequately allege loss causation because the "price of Global Payments' stock moved in virtual lock-step with the S&P 500 Index" on October 18 and 19, 2022 (Doc. No. 53 at 16), Defendants would likely argue that, for the same reason, their alleged misrepresentations did not have any impact on the price of Global Payments stock and thus the *Basic* presumption was rebutted, rendering class certification inappropriate. This would effectively dispose of the Action, as it would then proceed with only the individual claims of the three named Co-Lead Plaintiffs. ¶¶56-60.

Thus, Co-Lead Counsel faced significant obstacles in prosecuting this Action. Co-Lead Counsel nevertheless achieved an excellent result for the Settlement Class, which strongly supports the requested fee award.

### 3. The Skill, Experience, Reputation and Ability of the Attorneys

Under these factors, the Court should consider "the skill and acumen required to successfully investigate, file, litigate, and settle a complicated class action lawsuit such as this one," *David v. Am. Suzuki Motor Corp.*, 2010 WL 1628362, at \*8 n.15 (S.D. Fla. Apr. 15, 2010), and "the experience, reputation, and ability of the attorneys" involved. *Camden I*, 946 F.2d at 772 n.3; *see also Columbus Drywall*, 2012 WL 12540344, at \*4 ("The appropriate fee should also reflect the degree of experience, competence, and effort required by the litigation.").

As noted above, this case required an in-depth investigation, a thorough understanding of complicated issues, and the skill to respond to a host of legal and factual issues raised by Defendants during the litigation. Co-Lead Counsel practices extensively in the highly challenging field of complex class action litigation and are two of the nation's leading securities class action litigation firms. *See* Park Decl. ¶ 90 and Exs. 11 and 12 (resumes of Pomerantz and Lowey Dannenberg, respectively). Co-Lead Counsel's skills and experience were unquestionably important factors in obtaining the Settlement.

This Court should also consider the "quality of the opposition" the plaintiffs' attorneys faced in awarding Co-Lead Counsel a fee. *See Columbus Drywall*, 2012 WL 12540344, at *4. Here, Defendants were represented by King & Spalding LLP, a nationally prominent defense firm that vigorously contested the Action. Co-Lead Counsel's ability to obtain a favorable Settlement for the Settlement Class despite this formidable legal opposition confirms the quality of the representation that Co-Lead Counsel provided here. Accordingly, this factor supports the fee request.

### 4.   The Preclusion of Other Employment

The considerable amount of time spent prosecuting this case—nearly one thousand hours—was time that Plaintiffs' Counsel devoted to this Action on behalf of thousands of investors and to the exclusion of other matters. Moreover, Plaintiffs' Counsel expended this time and effort without any assurance that they would be

13

successful or that they would ever be compensated for their work. Accordingly, this factor also supports the requested fee.

### 5.    The Requested Fee is Customary For a Case Such as This One.

"The court [also] considers the market rate when determining fee awards to class counsel." *Morgan v. Pub. Storage*, 301 F. Supp. 3d 1237, 1255 (S.D. Fla. 2016). "The percentage method of awarding fees in class actions is consistent with, and is intended to mirror, practice in the private marketplace where attorneys typically negotiate percentage fee arrangements with their clients." *Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334, 1340 (S.D. Fla. 2007). "In private litigation, attorneys regularly contract for contingent fees between 30% and 40% directly with their clients." *Id.* at 1341. Thus, as explained above, Co-Lead Counsel's request for 33.3% of the Settlement Fund is consistent with what courts routinely award in class actions of this nature. Accordingly, this factor weighs in favor of the requested fee.

### 6.    Co-Lead Counsel Pursued This Case on a Pure Contingency Basis.

The customary fee in a class action lawsuit of this nature is a contingency fee because virtually no class member possesses a significantly large stake in the litigation to justify paying attorneys on an hourly basis. *See Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1299-1300 (11th Cir. 1988). Courts have

14

consistently recognized that "[l]awyers who are to be compensated only in the event of victory expect and are entitled to be paid more when successful than those who are assured of compensation regardless of result." *Jones v. Diamond*, 636 F.2d 1364, 1382 (5th Cir. 1981), *overruled on other grounds*, *Int'l Woodworkers of Am. v. Champion Int'l Corp.*, 790 F.2d 1174 (5th Cir.1986), *superseded by statute*, 42 U.S.C. § 2000e–5(k), *as recognized in Shipes v. Trinity Indus.*, 31 F.3d 347 (5th Cir. 1994); *see also Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 548 (S.D. Fla. 1988) ("A contingency fee arrangement often justifies an increase in the award of attorneys' fees."), *aff'd*, 899 F.2d 21 (11th Cir. 1990); *Princess Cruise Lines*, 513 F. Supp. 2d at 1339 ("A determination of a fair fee for Class Counsel must include consideration of the contingent nature of the fee … and the fact that the risks of failure and nonpayment in a class action are extremely high.").

The risk of no recovery in complex cases like this one is not illusory. Co-Lead Counsel understand that despite the most vigorous and competent of efforts, success in complex contingent litigation is never guaranteed. Because the fee in this matter was entirely contingent, the only certainty was that there would be no fee without a successful result. The substantial risks of the Action justify the requested fee.

### 7. The Amount Involved and Results Obtained

Courts have consistently recognized that the result achieved is a major factor to be considered when determining a fee award. *Hensly v. Eckerhart*, 461 U.S. 424,

15

436 (1983) (noting that the "most critical [fee award] factor is the degree of success obtained"); *Ressler*, 149 F.R.D. at 655 ("It is well-settled that one of the primary determinants of the quality of the work performed is the result obtained.").

The proposed $3.6 million all cash Settlement is an excellent result for the Settlement Class when weighed against the risk of a lesser (or no) recovery if the case proceeded through class certification, summary judgment, and trial. Plaintiffs' damages expert estimates that if Plaintiffs had *fully* recovered at both summary judgment and after a jury trial, if the Court certified the same class period as the Settlement Class Period and if the Court and jury accepted Plaintiffs' damages theory—*i.e.*, Plaintiffs' *best-case scenario*—the total maximum damages would be approximately $97 million. Thus, the $3.6 million represents approximately 3.7% of the total *maximum* damages *potentially* available. A recovery of 3.7% is similar to the median recovery in securities class actions, and is an excellent result when compared to the risks of continued litigation. *See* Laarni T. Bulan & Laura E. Simmons, Securities Class Action Settlements—2022 Review and Analysis (Cornerstone Research 2023), at 6, available at https://www.cornerstone.com/wp-content/uploads/2023/03/Securities-Class-Action-Settlements-2022-Review-and-Analysis.pdf (finding a median settlement recovery of 3.6% overall in securities class actions in 2022); *see also Health Ins. Innovations*, 2021 WL 1341881, at *8 ("[T]he fact that a proposed settlement amounts to only a fraction of the potential

16

recovery does not mean the settlement is unfair or inadequate."). In sum, the significant recovery obtained in this Action supports approval of the requested fee.

### 8.    The Undesirability of the Case

Securities class actions have been recognized as "undesirable" due to the elevated risk of litigating under the PSLRA, formidable opposition, high out-of-pocket costs, and the possibility of no recovery. *See id.* at *12 ("The prospect of engaging in and financing protracted complex litigation without a concomitant favorable recovery is not highly desirable."). This case was no exception. Co-Lead Counsel undertook the Action on a fully contingent basis, assuming the significant risk that the litigation would yield no recovery and leave counsel uncompensated. Co-Lead Counsel have not been compensated for any time or reimbursed for any out-of-pocket expenses since this case began over eighteen months ago. ¶¶ 92-98. The only certainty was the absence of a guaranteed fee, or reimbursement of out-of-pocket expenses, without a successful result.

Furthermore, as discussed in greater detail above and in the Park Declaration, Co-Lead Counsel faced numerous hurdles and risks from the outset of this Action, including the complex nature of the claims at issue, the high costs of experts and investigators needed to litigate the Action, and the risk of non-payment. *See In re NetBank, Inc. Sec. Litig.*, 2011 WL 13176646, at *3 (noting the "serious risks and uncertainties in continuing [securities] litigation, even of obtaining no recovery at

17

all"). All these facts and obstacles further underscore the undesirability of this Action from a risk perspective and weigh in favor of the requested fee.

### 9. Awards in Similar Cases

As discussed above, Co-Lead Counsel's requested fee of 33.3% of the Settlement Fund is consistent with fees awarded in other class actions in this Circuit. *See, e.g.*, *Health Ins. Innovations*, 2021 WL 1341881, at \*12; *In re Profit Recovery Grp. Int'l, Inc. Sec. Litig.*, 2005 WL 8172262, at \*3; *In re NetBank, Inc. Sec. Litig.*, 2011 WL 13353222, at \*2; *In re Clarus Corp. Sec. Litig*., 2005 WL 8172269, at \*3.

### 10. The Reaction of the Settlement Class

At the instruction of Co-Lead Counsel, the Court-approved claims administrator, A.B. Data, Ltd. ("A.B. Data"), began disseminating notice of the Settlement to potential Settlement Class Members on September 13, 2024, earlier than required by the Preliminary Approval Order. *See* Declaration of Kathleen Brauns Regarding Mailing of the Postcard Notice, Publication of the Summary Notice, Objects and Requests for Exclusion Received, and Claims Received to Date ("Brauns Decl.") (submitted as Ex. 1 to the Park Decl.) ¶ 5. The Summary Notice was published in *Investor's Business Daily* and released via *PR Newswire* on September 23, 2024. *Id.* ¶ 14. Through today, notice of the Settlement has been disseminated to 256,194 potential Settlement Class Members and nominees. *Id.* ¶ 13.

18

The Postcard Notice and Notice each informed Settlement Class Members of Co-Lead Counsel's intent to apply for an award of attorneys' fees in an amount not to exceed 33.3% of the Settlement Fund and for reimbursement of Litigation Expenses in an amount not to exceed $100,000 (Brauns Decl., Ex. A), and the Notice further explained that Co-Lead Counsel may apply for reimbursement to Co-Lead Plaintiffs in an amount not to exceed $60,000 (Brauns Decl., Ex. B ¶¶ 5, 72). While the deadline for filing objections to the fee application is not until November 20, 2024, to date, no objections to the fees or reimbursement of Litigation Expenses or to Co-Lead Plaintiffs have been received. Brauns Decl. ¶¶ 19-20.[3]

### E.  THE LITIGATION EXPENSES WERE REASONABLE AND NECESSARY TO ACHIEVE THE BENEFIT OBTAINED.

Co-Lead Counsel's fee application includes a request for reimbursement of Litigation Expenses that were "reasonable and necessary to obtain the [S]ettlement reached." *Ressler*, 149 F.R.D. at 657; *see also* ¶¶ 99-108. These expenses are properly recoverable. *Dowdell v. City of Apopka*, 698 F.2d 1181, 1192 (11th Cir. 1983) ("all reasonable expenses incurred in case preparation, during the course of litigation, or as an aspect of settlement of the case" may be recovered); *Behrens*, 118 F.R.D. at 549 ("[P]laintiff's counsel is entitled to be reimbursed from the class fund

---

[3] Co-Lead Counsel will address any objections in their reply papers to filed on or before December 4, 2024.

for the reasonable expenses incurred in this action."). Plaintiffs' Counsel and Johnson Fistel incurred $53,474.16 in Litigation Expenses. ¶¶ 99-108.

The expenses for which Plaintiffs' Counsel seek reimbursement were necessarily incurred in this Action and are of the types routinely charged to classes in contingent litigation and clients billed by the hour. Nearly ninety percent of Plaintiffs' Counsel's Litigation Expenses consist of investigator fees and expert fees. ¶¶ 102-04; *see also* Park Decl., Ex. 6 (expenses by category).

The remainder include online research fees; court filing fees; and newswire costs. Park Decl., Ex. 6. Reimbursement of similar expenses is routinely permitted. *See Morgan*, 301 F. Supp. 3d at 1258; *see also Gevaerts v. TD Bank, N.A.*, 2015 WL 6751061, at *14 (S.D. Fla. Nov. 5, 2015) (approving reimbursement of expenses related to, among other things, "fees for experts, photocopies, travel, online research, translation services, mediator fees, and document review and coding expenses"). Moreover, from the outset, Plaintiffs' Counsel was aware that they may not recover any of these expenses or, at the very least, would not recover anything until the Action was successfully resolved. Thus, Plaintiffs' Counsel was motivated to, and did, take significant steps to minimize their expenses wherever practicable without jeopardizing the vigorous and efficient prosecution of the action. ¶ 100. Though the deadline for Settlement Class Members to object to this request has not yet passed, no such objections have been received to date. Moreover, Co-Lead Counsel is

20

requesting significantly less than the $100,000 maximum of Litigation Expenses set forth in the Notice and Postcard Notice.

### F.    THE COURT SHOULD REIMBURSE CO-LEAD PLAINTIFFS FOR THEIR REPRESENTATION OF THE SETTLEMENT CLASS PURSUANT TO THE PSLRA.

Co-Lead Counsel also requests that the Court approve reimbursement of Co-Lead Plaintiffs for their representation of the Settlement Class. The PSLRA specifically provides that an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" may be made to any "representative party serving on behalf of a class." 15 U.S.C. § 78u-4(a)(4).

Here, Co-Lead Counsel requests an award of $12,500 for each of the three Co-Lead Plaintiffs, or $37,500 in total, for the time they dedicated to supervising and participating in the Action. Co-Lead Plaintiffs took an active role in the litigation, including, among other things, reviewing significant pleadings and briefs filed in the Action, communicating regularly with Co-Lead Counsel regarding developments in the Action, searching for and providing documents evidencing their transactions in Global Payments common stock, participating in the mediation process, and evaluating and approving the Settlement. *See* Igoe Decl. ¶¶ 5-6, 10-11; Shafer Decl. ¶¶ 5-6, 10-11; Keating Decl. -¶¶ 5-6, 10-11.

Courts in this Circuit have routinely approved reasonable awards to compensate lead plaintiffs for the time and effort they spend on behalf of the class.

21

*See, e.g., In re Flowers Foods, Inc. Sec. Litig.*, 2019 WL 6771749, at \*2 (M.D. Ga. Dec. 11, 2019) (awarding plaintiffs $10,000 each "as reimbursement for [their] reasonable costs and expenses directly related to [their] representation of the Settlement Class"); *In re Synovus Fin. Corp.*, 2014 WL 12756149, at \*1 (N.D. Ga. Nov. 18, 2014) (awarding a total of $15,200 to two lead plaintiffs).

The requested award to Co-Lead Plaintiffs is reasonable and justified under the PSLRA based on their involvement in the Action from inception to settlement, and should be granted.

## III.    CONCLUSION

For the reasons discussed above and in the Park Declaration, Co-Lead Counsel respectfully request that the Court: (i) award attorneys' fees to all Plaintiffs' Counsel in the amount of 33.3% of the Settlement Fund, or $1,200,000, plus interest earned at the same rate as earned by the Settlement Fund; (ii) award $53,474.16  in payment of the reasonable Litigation Expenses that Plaintiffs' Counsel and Johnson Fistel incurred in prosecuting the Action; and (iii) award $12,500 to each of the three Co-Lead Plaintiffs, for a total of $37,500, as payment for the costs they incurred directly relating to their representation of the Settlement Class.

Dated: November 6, 2024                     **POMERANTZ LLP**

                                            *s/ Jonathan D. Park*

                                            Jeremy A. Lieberman
                                            (Admitted *Pro Hac Vice*)

22

Jonathan D. Park
(Admitted *Pro Hac Vice*)
600 Third Avenue, 20th Floor
New York, NY 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
jalieberman@pomlaw.com
jpark@pomlaw.com

*Counsel to Co-Lead Plaintiff William Jeffrey Igoe and Co-Lead Counsel for the Class*

**EVANGELISTA WORLEY, LLC**
James M. Evangelista
500 Sugar Mill Road, Suite 245A
Atlanta, GA 30350
Telephone: (404) 205-8400
jim@ewlawllc.com

*Counsel to Co-Lead Plaintiff William Jeffrey Igoe and Liaison Counsel for the Class*

**LOWEY DANNENBERG, P.C.**
Vincent Briganti
vbriganti@lowey.com
(Admitted *Pro Hac Vice*)
Andrea Farah
afarah@lowey.com
(Admitted *Pro Hac Vice*)
Alesandra Greco
agreco@lowey.com
(Admitted *Pro Hac Vice*)
44 South Broadway, Suite 1100
White Plains, New York 10601
Telephone: 914/997-0500

23

*Counsel to Co-Lead Plaintiffs Mike Shafer and David Keating and Co-Lead Counsel for the Class*

24

## LOCAL RULE 7.1(D) CERTIFICATION

By signature below, counsel certifies that the foregoing document was prepared in Times New Roman, 14-point font in compliance with Local Rule 5.1.

*/s/ Jonathan D. Park*

JONATHAN D. PARK

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on November 6, 2024, I electronically filed the foregoing document with the Clerk of Court by using the CM/ECF system, and a copy of the foregoing pleading has been electronically mailed to all attorneys of record.

*/s/ Jonathan D. Park*

JONATHAN D. PARK