## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA

MIKE SHAFER, DAVID KEATING, and WILLIAM JEFFREY IGOE, Individually and On Behalf of All Others Similarly Situated,

               Plaintiffs,

   v.

GLOBAL PAYMENTS INC., ACTIVE NETWORK LLC, JEFF SLOAN, CAMERON BREADY, PAUL TODD, JOSH WHIPPLE, and ANDREA FACINI,

               Defendants.

Case No. 1:23-CV-00577-LMM

CLASS ACTION

**DECLARATION OF JONATHAN D. PARK IN SUPPORT OF MOTIONS FOR (1) FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION, AND FINAL CERTIFICATION OF SETTLEMENT CLASS; AND (2) ATTORNEYS' FEES AND LITIGATION EXPENSES**

I, Jonathan D. Park, pursuant to 28 U.S.C. § 1746, hereby declare:

1.     I am a member of the Bar of the State of New York. I am Of Counsel with the law firm of Pomerantz LLP, counsel to Co-Lead Plaintiff William Jeffrey Igoe, and one of the attorneys this Court appointed as Co-Lead Counsel in this Action (Doc. No. 29). I have been actively involved in all aspects of the prosecution and resolution of the Action, am familiar with its proceedings, and have personal knowledge of the matters set forth herein based upon my supervision and participation in all material aspects of the Action, and if called as a witness, could and would testify competently thereto.[1]

2.     I submit this declaration in support of Co-Lead Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation, and Final Certification of Settlement Class (the "Final Approval Motion"), and Co-Lead Counsel's Motion for Attorneys' Fees and Litigation Expenses (the "Fee and Expense Application").

3.     In support of these motions, Co-Lead Plaintiffs and Co-Lead Counsel are also submitting the exhibits attached hereto, the Brief in Support of Co-Lead Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation, and Final Certification of Settlement Class (the "Final Approval Brief"),

---

[1] All capitalized terms not otherwise defined shall have the meanings given to them in the Stipulation and Agreement of Settlement, dated June 10, 2024 (the "Stipulation"; Doc. No. 65-2).

and the Brief in Support of Co-Lead Counsel's Motion for Attorneys' Fees and Litigation Expenses ("Fee Brief").

## I. PRELIMINARY STATEMENT

4. The proposed Settlement now before the Court provides for the resolution of all claims in the Action in exchange for a cash payment of $3,600,000 for the benefit of the Settlement Class. As detailed herein, Co-Lead Plaintiffs and Co-Lead Counsel believe that proposed Settlement represents an excellent result and is in the best interests of the Settlement Class.

5. Co-Lead Plaintiffs would have faced significant risks in establishing Defendants' liability and proving damages in the Action, and the proposed Settlement represents a substantial percentage of the maximum damages that Co-Lead Plaintiffs reasonably believe could be established at trial. Thus, as explained further below, the Settlement provides a considerable benefit to the Settlement Class by conferring a substantial, certain, and immediate recovery while avoiding the significant risks and expense of continued litigation, including the risk that the Settlement Class could recover nothing or less than the Settlement amount after years of additional litigation and delay.

6. Co-Lead Plaintiffs and Co-Lead Counsel have vigorously litigated this case since its inception on February 8, 2023, securing the proposed Settlement in sixteen months. The Settlement was achieved only after Co-Lead Counsel, *inter alia,*

3

as detailed herein: (i) identified alleged misrepresentations by Defendants and filed an initial complaint (Doc. No. 1); (ii) conducted a thorough and wide-ranging investigation concerning the allegedly fraudulent misrepresentations made by Defendants, which included a review and analysis of publicly available information; (iii) consulted with experts on market efficiency, loss causation, and damages; (iv) prepared and filed a detailed amended complaint (Doc No. 39) (the "Complaint"); (v) analyzed Defendants' motion to dismiss the Complaint (Doc. No. 49) (the "Motion to Dismiss"), and Defendants' reply in support thereof (Doc. No. 53); (vi) filed papers in opposition to the Motion to Dismiss (Doc. No. 52), which succeeded in part per the Court's order granting in part and denying in part the Motion to Dismiss (Doc. No. 55); (vii) analyzed Defendants' motion seeking interlocutory review of the Court's order on the Motion to Dismiss pursuant to 28 U.S.C. § 1292(b) (Doc. No. 56) (the "Motion for Interlocutory Review"), and Defendants' reply in support thereof (Doc. No. 58); (viii) filed papers in opposition to the Motion for Interlocutory Review (Doc No. 57); (ix) prepared for discovery to begin, which under the Private Securities Litigation Reform Act of 1995 (the "PSLRA") had been stayed pending the resolution of the Motion to Dismiss; and (x) engaged in significant mediation efforts over a number of weeks, leading to the Settlement.

7.      Based on the foregoing efforts, which are more fully set forth below, Co-Lead Plaintiffs and Co-Lead Counsel were well informed of the strengths and weaknesses of the claims and defenses in the Action at the time they reached the proposed Settlement. Co-Lead Plaintiffs and Co-Lead Counsel believe the Settlement represents a favorable outcome for the Settlement Class, is in the best interests of all Settlement Class Members, is "fair, reasonable and adequate" in all respects, and that the Court should grant final approval to the proposed Settlement pursuant to Federal Rule of Civil Procedure 23(e), including finally certifying the Settlement Class for purposes of the Settlement.

8.      In addition, Plaintiffs seek approval of the proposed Plan of Allocation of the Settlement Fund. As discussed in further detail below, Co-Lead Counsel developed the Plan of Allocation with the assistance of their consulting damages expert. The Plan of Allocation provides for distribution of the Net Settlement Fund to Settlement Class Members who submit Claim Forms that are approved for payment on a *pro rata* basis based on losses attributable to the alleged fraud.

9.      For its efforts in achieving the Settlement, Co-Lead Counsel requests a fee of 33.3% of the Settlement Fund (or $1,200,000, plus interest earned at the same rate as the Settlement Fund). As discussed in the Fee Brief, the requested 33.3% fee requested is well within the range of awards granted by the courts in this Circuit and elsewhere in similarly sized class action settlements. Additionally, the requested fee

represents a multiplier of approximately 1.6 of Plaintiffs' Counsel's lodestar, which is on the lower end of multipliers granted in complex class actions, and this lodestar cross-check also supports the reasonableness of the fee. Co-Lead Counsel respectfully submits that the fee request is fair and reasonable in light of the result achieved in the Action, the efforts of Co-Lead Counsel, and the risks and complexity of the Action.

10.    For the reasons set forth herein and in the accompanying briefs, including the quality of the result obtained and the numerous significant litigation risks discussed below, Co-Lead Plaintiff and Co-Lead Counsel respectfully submit that the Settlement and the Plan of Allocation are fair, reasonable and adequate, and should be approved. In addition, Co-Lead Counsel respectfully submits that its request for attorneys' fees and Litigation Expenses—which has been reviewed and approved by Co-Lead Plaintiffs—is also fair and reasonable, and should be approved.

## II.    PROCEDURAL HISTORY

### A.    The Initial Complaint and The Appointment of Co-Lead Plaintiffs

11.    On February 8, 2023, Mike Shafer (prior to his appointment as Co-Lead Plaintiff), represented by Lowey Dannenberg P.C. ("Lowey Dannenberg") (prior to its appointment as Co-Lead Counsel) and Johnson Fistel, LLP ("Johnson Fistel"), filed a putative class action complaint styled as *Shafer v. Active Network, LLC, et*

*al.*, No. 1:23-cv-0577, alleging violations of the federal securities laws against Active Network LLC ("Active"), Global Payments Inc. ("Global Payments"), Jeff Sloan, Cameron Bready, Paul Todd, and Josh Whipple in the United States District Court for the Northern District of Georgia. Doc. No. 1.

12. Pursuant to Section 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §78u-4(a)(3)(B), as amended by the PSLRA, on April 10, 2023, the following members of the purported class moved for appointment as lead plaintiff and approval of their selection of lead counsel for the purported class: (i) William Jeffrey Igoe (Doc. No. 15); and (ii) "The Investor Group" consisting of David Keating and Mike Shafer (Doc. No. 16).

13. On April 24, 2023, William Jeffrey Igoe, David Keating, and Mike Shafer filed a stipulation to serve as Co-Lead Plaintiffs and selecting the firms of Pomerantz LLP ("Pomerantz") and Lowey Dannenberg as Co-Lead Counsel for the proposed class. Doc. No. 24.

14. By order dated April 25, 2023, the Court directed Igoe and the Investor Group to identify the specific lawyers from Pomerantz, Lowey Dannenberg, and then-proposed liaison counsel firm Evangelista Worley, LLC ("Evangelista Worley") who would litigate the Action. Doc. No. 25.

15. On May 4, 2023, Igoe and the Investor Group provided the requested information, identifying the following specific attorneys seeking appointment as

Co-Lead Counsel: from Pomerantz, Jeremy A. Lieberman (Managing Partner), me (Of Counsel), and Lauren K. Molinaro (Associate); and from Lowey Dannenberg, Vincent Briganti (Chairman), Andrea Farah (Senior Associate), and Alesandra Greco (Associate). Doc. No. 28. Igoe and the Investor Group also identified James M. Evangelista of Evangelista Worley as proposed Liaison Counsel. Id.

16.    By Order dated May 11, 2023, the Court appointed William Jeffrey Igoe and "The Investor Group" (consisting of Mike Shafer and David Keating) as Co-Lead Plaintiffs and approved Co-Lead Plaintiffs' selection of Jeremy A. Lieberman, Jonathan Park, and Lauren Molinaro of Pomerantz, and Vincent Briganti, Andrea Farah and Alesandra Greco from Lowey Dannenberg. as Co-Lead Counsel, and James Evangelista of Evangelista Worley, as Liaison Counsel. Doc. No. 29.

17.    Co-Lead Counsel Lauren Molinaro later withdrew from the Action. Doc. No. 43.

**B.    The Operative Complaint**

18.    On June 26, 2023, Co-Lead Plaintiffs filed the Complaint and served it on all Defendants with the exception of Andrea Facini, who was newly named as a defendant in that Complaint. Doc. No. 39. The Complaint asserted claims under Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5 promulgated thereunder against Defendants. *Id.* The Complaint alleged that Defendants made

8

materially false and misleading statements during the Class Period about: (i) Active and the Company's trade practices; (ii) Active and the Company's legal and regulatory compliance; and (iii) Active and the Company's revenue and financial performance. *Id.* The Complaint further alleged that the price of the Company's common stock was artificially inflated as a result of Defendants' allegedly false and misleading statements, and declined when the truth was revealed. *Id.* In particular, the Complaint alleged that the price of Global Payments common stock declined on October 18 and 19, 2022, in response to the filing of a complaint against Active by the federal Consumer Financial Protection Bureau ("CFPB") on October 18, 2022. *Id.*

19.    On July 7, 2023, Co-Lead Plaintiffs served the Complaint on Defendant Andrea Facini. Doc. No. 44.

### C.    Defendants' Motion to Dismiss, the Court's Order Thereon, and Defendants' Motion for Interlocutory Review

20.    On August 17, 2023, Defendants filed and served the Motion to Dismiss pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6), arguing that the Complaint failed to state a claim upon which relief could be granted, accompanied by a brief, attorney declaration, and exhibits thereto. Doc. No. 49.

21.    On October 16, 2023, Co-Lead Plaintiffs filed and served a memorandum of law in opposition to the Motion to Dismiss. Doc. No. 52.

9

22.    On November 15, 2023, Defendants filed and served a reply brief, attorney declaration, and exhibits thereto in further support of the Motion to Dismiss. Doc. No. 53.

23.    In their opening and reply briefs in support of the Motion to Dismiss, Defendants argued that Co-Lead Plaintiffs did not adequately plead that Defendants made any materially false or misleading statements or that Defendants did so with scienter.

24.    Defendants also argued that, as a matter of law, Co-Lead Plaintiffs' allegations of loss causation—a required element of their causes of action—were insufficient. Defendants argued that the May 1, 2023 announcement of Defendant Sloan's departure from Global Payments could not constitute a corrective disclosure because, *inter alia*, "Plaintiffs d[id] not, and cannot, allege that this announcement said anything about allegedly deceptive practices at Active or the CFPB's claims." Doc. No. 49-1 at 28. Defendants further argued that "plaintiffs must also plead a significant stock price drop after the disclosure and that the disclosure was a substantial or significant contributing cause of the drop." *Id.* at 27. With respect to the complaint filed by the CFPB against Active on October 18, 2022, Defendants argued that Plaintiffs "fail[ed] to plead what time during the day the suit became public and how the stock price moved thereafter," that "[t]he CFPB's statement and press release announcing the Active suit were added to Bloomberg Law's public

news database at 1:39 PM on October 18, 2022," and that "Bloomberg Finance L.P. trading data shows that immediately before 1:39 PM on October 18, 2022, Global Payments common stock was trading at a price of $113.35/share[] . . . [and] [t]he stock price then rose to close at $113.67 on October 18, 2022." *Id.* Defendants argued that "[w]here a stock price rises after an alleged 'corrective disclosure,' loss causation is not pled." *Id.* Defendants further argued that the price of Global Payments' stock moved in virtual lockstep with the S&P 500 Index" on October 18 and 19, 2022, precluding Co-Lead Plaintiffs from establishing that Defendants' alleged misstatements were the cause of any losses suffered by Co-Lead Plaintiffs or other members of the proposed class. *See* Doc. No. 53 at 16.

25.   By Order dated March 29, 2024, the Court granted in part and denied in part the Motion to Dismiss, including sustaining the Complaint's allegations regarding Defendants' allegedly false and misleading statements regarding the Company's legal and regulatory compliance. Doc. No. 55.

26.   On April 18, 2024, Defendants filed and served the Motion for Interlocutory Review pursuant to 28 U.S.C. § 1292(b) and a memorandum of law in support thereof. Doc. No. 56. The Motion for Interlocutory Review sought to bring an immediate appeal of the Court's order on the Motion to Dismiss to the United States Court of Appeals for the Eleventh Circuit *Id.* In the Court's order on the Motion to Dismiss, the Court applied Federal Rule of Civil Procedure 8 to the

Complaint's loss causation allegations. Doc. No. 55 at 28. Defendants' Motion for Interlocutory Review requested that the Court amend its order on the Motion to Dismiss to certify for interlocutory appeal, pursuant to 28 U.S.C. § 1292(b), the question of whether Rule 8 or Rule 9(b) governs the pleading of loss causation for a claim asserted under Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder. Doc. No. 56. Defendants argued that the higher pleading standard of Federal Rule of Civil Procedure 9(b) should apply and that, under that standard, the Complaint's loss causation allegations were insufficient. *Id.*

27.   On May 2, 2024, Co-Lead Plaintiffs filed and served a memorandum of law in opposition to the Motion for Interlocutory Review, accompanied by an attorney declaration and exhibits thereto. Doc. No. 57.

28.   On May 13, 2024, Defendants filed and served an answer and defenses to the Complaint. Doc. No. 58.

29.   On May 14, 2024, Defendants filed and served a reply memorandum of law in support of the Motion for Interlocutory Review. Doc. No. 59.

**D.   The Parties Prepare for Discovery**

30.   Also on May 14, 2024, Co-Lead Counsel contacted Defendants' Counsel to schedule a conference to discuss a joint preliminary report and scheduling plan to be filed pursuant to Federal Rule of Civil Procedure 26(f). The Parties scheduled that conference for May 23, 2024.

### E.    Settlement Negotiations

31.    Following the issuance of the March 29, 2024 Order granting in part and denying in part the Motion to Dismiss, the Parties discussed the possibility of resolving the case through settlement. These discussions continued for a number of weeks. As these discussions appeared likely to result in an agreement to resolve the Action, the Parties began negotiating the terms of a term sheet memorializing such agreement on May 20, 2024.

32.    On May 21, 2024, the Parties reached an agreement to resolve the Action for a settlement amount of $3,600,000 in cash. The Parties completed negotiating the term sheet memorializing this agreement, which was signed that same day by Co-Lead Counsel on behalf of Co-Lead Plaintiffs and by Defendants' Counsel on behalf of Defendants, subject to certain terms and conditions, including the execution of a formal, final stipulation of settlement and related papers (the "Term Sheet"). The agreement to settle was further conditioned on Court approval of the Settlement.

33.    On May 22, 2024, counsel for the Parties made a joint telephone call to the Court to advise the Court that they had reached a settlement-in-principle. On May 23, 2024, the Court issued an order administratively closing the case pending the Parties' filing of a dismissal, and directed the Parties to file within sixty days either (1) the necessary documents to dismiss this case or (2) a joint status report

13

notifying the Court why they are unable to file such documents. Doc. No. 60. That order also denied as moot Defendants' Motion for Interlocutory Review. *Id.*

34.    On June 10, 2024, the Parties executed the Stipulation.

**F.    The Preliminary Approval Motions and Order**

35.    On June 12, 2024, Co-Lead Plaintiffs filed an unopposed motion for preliminary approval of the Settlement. Doc. No. 61. The Stipulation was filed in support of that motion. Doc. No. 61-2.

36.    On July 30, 2024, following a hearing that day, the Court denied Plaintiffs' motion for preliminary approval without prejudice and with leave to re-file. Doc. No. 64. During that hearing, the Court inquired regarding the scope of claims proposed to be released pursuant to the Settlement. The Court also inquired as to how much of the Settlement Fund was anticipated to be distributed to Settlement Class Members. In addition, the Court expressed a concern that requests to be excluded from the Settlement Class could be received late due to mail delays.

37.    The Parties then conferred regarding the Court's inquiries and Co-Lead Plaintiffs filed a renewed motion for preliminary approval of the proposed Settlement on August 2, 2024. Doc. No. 65 (the "Renewed Preliminary Approval Motion"). In light of the Court's concerns, the Parties revised paragraph 1 of the Notice to Settlement Class Members (Ex. A-1 to the Stipulation) in order to more precisely describe Plaintiffs' allegations. *See* Doc. No. 65-1 (describing changes)

14

and 65-8 (redline of revised Notice against first-filed version). The Parties also confirmed that the scope of the "Released Plaintiffs' Claims" to be released by Co-Lead Plaintiffs, defined in paragraph 1(pp) of the Stipulation, is appropriately limited to claims that were asserted in this Action or could have been asserted *and* arise out of or are related to "the facts, allegations, transactions, matters, events, disclosures, non-disclosures, occurrences, representations, statements, acts or omissions or failures to act" set forth in this Action, *and* relate to the purchase, acquisition, or sale of Global Payments common stock during the Class Period. *See* Doc. No. 65-1 at 2; *see also* Doc. No. 65-7 (providing examples of similarly-defined claims released in securities class action settlements that have been approved in this District). The Parties confirmed there was no other pending investor litigation related to this Action. *See* Doc. No. 65-1 at 2. The Stipulation was filed again with this renewed motion. Doc. No. 65-2.

38.     As to the anticipated amount to be distributed to Settlement Class Members, Co-Lead Counsel calculated that approximately $1.94 million (plus interest earned by the Settlement Fund, and less tax obligations arising from such interest) would be distributed to Settlement Class members following payment of any attorneys' fees, litigation expenses, payments to Plaintiffs pursuant to the PSLRA, and the costs of notifying the Settlement Class and administering the

15

Settlement, if the *maximum* amounts set forth in the Notice were requested and approved.[2] *See* Doc. No. 65-1 at 2-3.

39.    With respect to the Court's concern that requests to be excluded from the Settlement Class could be received late due to mail delays, Co-Lead Plaintiffs' brief in support of their Renewed Preliminary Approval Motion expressed the Parties' belief that the Court has discretion to address late exclusion requests because paragraph 11 of the [Proposed] Preliminary Approval Order stated that a request for exclusion must be "received no later than twenty-one calendar days prior to the Settlement Hearing," "*or is otherwise accepted by the Court*" (emphasis added). Doc. No. 65-1 at 3. Co-Lead Counsel also confirmed that they would promptly inform Defendants and the Court if they received any untimely exclusion requests. *Id.*

40.    On August 26, 2024, the Court granted the Renewed Motion for Preliminary Approval and entered the Order Preliminarily Approving the Settlement and Providing Notice (Doc. No. 97, the "Preliminary Approval Order"), which among other things: (i) preliminarily approved the Settlement; (ii) authorized A.B.

---

[2] Though the Notice advised Settlement Class Members that Co-Lead Counsel would seek reimbursement of up to $100,000 in Litigation Expenses and up to $60,000 for Co-Lead Plaintiffs in connection with their representation of the Class, Co-Lead Counsel is seeking reimbursement of only $53,474.16 in Litigation Expenses and only $37,500 for Co-Lead Plaintiffs, as set forth in the Fee Application.

Data Ltd. ("A.B. Data") to act as the Claims Administrator; (iii) approved the form of the Notice, the Claim Form, the Summary Notice, and the Postcard Notice and authorized notice to be given to Settlement Class Members through the mailing of the Postcard Notice, posting of the Notice and Claim Form on a Settlement website, and the publication of the Summary Notice in *Investor's Business Daily* and its transmission over the *PR Newswire*; (iv) established procedures and deadlines by which Settlement Class Members could participate in the Settlement, request exclusion from the Settlement Class, or object to the Settlement, the proposed Plan of Allocation, or the fee and expense application; and (v) set a schedule for filing the opening paper and reply papers in support of the proposed Settlement, Plan of Allocation, and the Fee and Expense Application. The Preliminary Approval Order also set a Settlement Hearing for December 11, 2024 to determine, among other things, whether the Settlement should be granted final approval.

41.   The Preliminary Approval Order also conditionally certified the Settlement Class for settlement purposes only. The Settlement Class is defined as:

> all persons and entities who purchased or otherwise acquired publicly traded Global Payments common stock during the period of time from October 31, 2019 through and including October 18, 2022, inclusive (the "Class Period"), and who were damaged thereby. Excluded from the Settlement Class are: (i) Defendants; (ii) any current or former officers or directors of Global Payments or Active who served in such capacities during the Class Period; (iii) members of the immediate family of each of the Individual Defendants or any current or former officer or director of Global Payments or Active who served in such capacities during the Class Period; (iv) any entity that any Defendant

owns or controls, or owned or controlled, during the Class Period; (v) any affiliates, parents, or subsidiaries of Global Payments or Active; and (vi) the legal representatives, heirs, successors, and assigns of any such excluded persons.

*See* Preliminary Approval Order at 2.

## III.   THE SIGNIFICANT RISKS FACED BY CO-LEAD PLAINTIFFS AND CO-LEAD COUNSEL

42.   The Settlement eliminates significant risks posed by continuing litigation, including the potential risk that the Settlement Class would recover nothing or an amount significantly less than the $3.6 million Settlement Amount. Further, while Co-Lead Plaintiffs and Co-Lead Counsel believe that the claims asserted against Defendants are meritorious, they recognize that there are significant hurdles to overcome to establish the falsity and materiality of the alleged misstatements and that Defendants acted with scienter. In addition, even if Co-Lead Plaintiffs were able to overcome the risks to establishing falsity and scienter, they faced very serious risks in proving loss causation. Were the case to continue, Co-Lead Plaintiffs would face considerable risks and obstacles to achieving a greater recovery. Co-Lead Plaintiffs and Co-Lead Counsel carefully considered these challenges during the Action and were mindful of such risks during settlement discussions with Defendants.

18

## A.    Risks Concerning Liability

### 1.    *Risks Concerning Falsity and Materiality*

43.    If the case were to continue, Defendants would likely argue at summary judgment that the alleged misstatements or omissions were not materially false and misleading. Indeed, the Court dismissed a number of alleged misstatements in its order resolving the Motion to Dismiss. As to the remaining alleged misstatements, Plaintiffs would face significant risks to proving they were materially false and misleading.

44.    First, Defendants would likely continue to argue that because they disclosed a "risk factor" that "to the extent we are in violation of these laws, rules or regulations … we may be subject to enforcement actions and as a result may incur losses and liabilities," investors could not have been misled by the statement that "[w]e are currently in compliance with existing legal and regulatory requirements." Doc. No. 49-1 at 13-16.

45.    Second, Defendants would likely argue that statements on Active's website—which the Complaint alleged were materially false or misleading—were not directed to investors and thus are not actionable under the federal securities laws. *Id.* at 12-13.

46.    Third, Defendants would argue that the alleged misstatements and omissions were not material to investors, pointing again to how Global Payments'

stock price moved in relation to the S&P 500 Index when the CFPB complaint became public. Defendants would also contend, as they did on the Motion to Dismiss, that "the allegedly improper practices at Active were [not] material to Global Payments' $24.7 billion in total revenues from Q4 2019 through Q3 2022, which roughly tracks the class period." Doc. No. 49-1 at 10.

47.    These and other arguments would pose a risk to Co-Lead Plaintiffs' ability to prove that Defendants made materially false and misleading statements to investors.

## 2.    *Risks Concerning Scienter*

48.    If the case were to continue, Defendants would strenuously maintain that they did not act with scienter, which is often the most difficult element of a securities fraud claim for a plaintiff to plead or prove. In this case, Defendants would likely raise numerous scienter arguments that could pose very significant hurdles to proving that they acted with an intent to commit securities fraud or with severe recklessness.

49.    For instance, in support of the Motion to Dismiss, Defendants argued that "Plaintiffs affirmatively plead that practices around Active Advantage improved after Global Payments acquired Active in 2017, and that 'there was an effort to avoid misleading consumers' under Global Payments' ownership of Active," undercutting any inference that Defendants made material misstatements with scienter. Doc. 49-1

20

at 19. Defendants also argued that the Complaint did not establish a motive for Defendants to commit securities fraud, noting in particular "Plaintiffs' failure to allege any suspicious stock sales by the Individual Defendants." *Id.* at 23.

50.     Though the Court sustained Co-Lead Plaintiffs' scienter allegations at the pleading stage, were this litigation to continue, Co-Lead Plaintiffs would face the significant obstacle of proving that Defendants acted with scienter.

51.     For all these reasons, there was a very significant risk that the Court, at summary judgment, or a jury at trial, could conclude that Defendants did not act with scienter.

### B.     Risks Related to Loss Causation and Damages

52.     Even if Plaintiffs overcame the above risks and successfully established liability, Defendants would likely argue that there are no recoverable damages or that damages are minimal.

53.     Plaintiffs' consulting damages expert has estimated maximum aggregate damages of approximately $97 million, not accounting for the disaggregation of inactionable (or statistically non-significant) price movements.

54.     Defendants would of course argue that damages are much less. In its order on the Motion to Dismiss, the Court sustained only the alleged corrective disclosure on October 18, 2022. With respect to this sole remaining corrective disclosure, Defendants would likely rely on the same evidence cited in support of

their argument concerning loss causation, i.e., that the price of Global Payments common stock tracked the movement of the S&P 500 Index on October 18 and 19, 2022 and thus that all or substantially all of the decline in Global Payments share price on those days cannot serve as the basis for compensable damages. Co-Lead Counsel thoroughly considered these issues and consulted with experts on market efficiency, loss causation, and damages to assess the risks these issues presented before agreeing to the Settlement.

55.     Of course, even a reduced damages estimate assumes liability and, as explained above, it is far from certain that Co-Lead Plaintiffs would be able to prove liability. Indeed, to recover any damages at trial, Plaintiffs would have to prevail at many stages in the litigation—namely, a motion for summary judgment, a motion for class certification, and trial—and, even if Co-Lead Plaintiffs prevailed at those stages, appeals would likely follow. At each of these stages, there would be significant risks attendant to the continued prosecution of the Action, and there is no guarantee that further litigation would have resulted in a higher recovery, or any recovery at all.

### C.     Risks Related to Class Certification

56.     Were this putative class action to continue, Co-Lead Plaintiffs would move for certification of a class pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure. In order to satisfy the "predominance" requirement of Rule

23(b)(3), Co-Lead Plaintiffs would invoke the fraud-on-the-market presumption of classwide reliance pursuant to *Basic, Inc. v. Levinson*, 485 U.S. 224 (1988).

57.    Notably, the *Basic* presumption of classwide reliance is rebuttable. As the Supreme Court held in *Basic*, "[a]ny showing that severs the link between the alleged misrepresentation and either the price received (or paid) by the plaintiff or his decision to trade at a fair market price will be sufficient to rebut the presumption of reliance." *Id.* at 249.

58.    Defendants would likely seek to rebut the *Basic* presumption by attempting to "sever[] the link between the alleged misrepresentation and either the price received (or paid) by the plaintiff." *Id.* Under Supreme Court precedent, "defendants must be afforded an opportunity to rebut the presumption of reliance before class certification with evidence of a *lack* of price impact." *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 284 (2014)

59.    Consistent with their argument that the Complaint did not adequately allege loss causation because "the price of Global Payments' stock moved in virtual lock-step with the S&P 500 Index" on October 18 and 19, 2022, Doc. No. 53 at 16, Defendants would likely argue that, for the same reason, their alleged misstatements did not have any impact on the price of Global Payments stock. Defendants would thus argue the *Basic* presumption was rebutted and class certification is inappropriate.

60.    Thus, while Co-Lead Plaintiffs and Co-Lead Counsel believe class certification would be appropriate in this Action, they recognize that there is a risk that the Court would deny class certification. A denial of class certification would effectively dispose of the Action, as it would then proceed with only the individual claims of Co-Lead Plaintiffs.

## IV.    CO-LEAD PLAINTIFFS' COMPLIANCE WITH THE COURT'S PRELIMINARY APPROVAL ORDER

61.    The Court's Preliminary Approval Order directed that, no later than twenty business days after entry of that order, the Claims Administrator (A.B. Data) shall cause the Postcard Notice to be disseminated to potential Settlement Class Members and the Notice of (I) Pendency of Class Action and Proposed Settlement; (II) Settlement Fairness Hearing; and (III) Motion for Attorneys' Fees and Litigation Expenses (the "Notice") and Proof of Claim and Release Form (the "Claim Form," and together with the Notice, the "Notice Packet") to be posted on a website developed for the Settlement. Preliminary Approval Order ¶¶ 4(b), (c).

62.    The Preliminary Approval Order set a Settlement Hearing date of December 11, 2024, and provided that any Settlement Class Member who wished to exclude themselves from the Settlement Class must request exclusion by no later than twenty-one calendar days before the Settlement Hearing (Preliminary Approval Order ¶ 11), i.e., by November 20, 2024. The Preliminary Approval Order also established that same date (November 20, 2024) as the deadline for Settlement Class

Members to object to the proposed Settlement, the proposed Plan of Allocation, and/or the motion for attorneys' fees and Litigation Expenses. Preliminary Approval Order ¶ 15.

63. Pursuant to the Preliminary Approval Order, Co-Lead Counsel instructed A.B. Data to begin disseminating copies of the Postcard Notice by mail and to post the Notice and Claim Form on the Settlement website, (www.globalpaymentssecuritieslitigation.com), which was created for the purpose of the Settlement, and publish the Summary Notice. The Postcard Notice and the Notice each, among other things: describes the Action, the Settlement, and the proposed Plan of Allocation; and explains that Settlement Class Members have the right to participate in the Settlement, to object to the Settlement, the Plan of Allocation and/or the Fee and Expense Application, or to exclude themselves from the Settlement Class. The Postcard Notice and the Notice each also informed Settlement Class Members of Co-Lead Counsel's intent to apply for an award of attorneys' fees in an amount not to exceed 33.3% of the Settlement Fund and for reimbursement of Litigation Expenses in an amount not to exceed $100,000, and the Notice further explained that Co-Lead Counsel may apply for reimbursement to Co-Lead Plaintiffs in an amount not to exceed $60,000. To disseminate the Postcard Notice, A.B. Data obtained information from Global Payments and from banks, brokers, and other nominees regarding the names and addresses of potential

25

Settlement Class Members. *See* Declaration of Kathleen Brauns Regarding Mailing of the Postcard Notice, Publication of the Summary Notice, Objects and Requests for Exclusion Received, and Claims Received to Date (the "Brauns Decl.") (attached as **Exhibit 1** hereto) ¶¶ 6-12.[3]

64.     A.B. Data began mailing of the Postcard Notice to potential Settlement Class Members and nominee owners on September 13, 2024. *Id.* ¶¶ 5-7. This was done thirteen business days after entry of the Preliminary Approval Order, which was earlier than required by the Preliminary Approval Order. *Id.* ¶ 5. A.B. Data mailed 20,547 Postcard Notices to potential Settlement Class Members and their nominees by First-Class Mail on September 13, 2024. *Id.* ¶ 7.

65.     On September 23, 2024, in accordance with the Preliminary Approval Order, A.B. Data caused the Summary Notice to be published in *Investor's Business Daily* and to be transmitted over *PR Newswire*. *Id.* ¶ 14; *see also id.*, Exhibits D and E thereto.

66.     Co-Lead Counsel also instructed A.B. Data to establish a dedicated website   (www.globalpaymentssecuritieslitigation.com)   to   provide   potential Settlement Class Members with information concerning the Settlement and access

---

[3] The Brauns Decl. has five exhibits of its own, specifically: the Postcard Notice (Exhibit A); the Notice (or "Long-Form Notice") (Exhibit B); the Claim Form (Exhibit C); proof of publication of the Summary Notice in *Investor's Business Daily* (Exhibit D); and proof of publication of the Summary Notice over *PR Newswire* (Exhibit E).

to downloadable copies of the Notice and Claim Form. *Id.* ¶ 15. At Co-Lead Counsel's instruction, A.B. Data also posted the following documents on the Settlement website for review and downloading by Settlement Class Members: the Stipulation, the Preliminary Approval Order, the Complaint (Doc. No. 39), the Court's Order on Defendants' Motion to Dismiss the Amended Class Action Complaint (Doc. No. 55), and Co-Lead Plaintiff's Renewed Motion for Preliminary Approval of Settlement and Approval of Notice to the Settlement Class, including the brief and declaration of Jonathan D. Park, with exhibits, submitted in support thereof (Doc. Nos. 65, 65-1, 65-5, 65-5, 65-6, 65-7, and 65-8). *Id.*

67.    A.B. Data also established a case-specific, toll-free telephone helpline with an interactive voice response system and live operators to field inquiries from potential Settlement Class Members and requests for the Notice and Claim Form. *Id.* ¶ 18.

68.    The Notice directed those who purchased or otherwise acquired Global Payments common stock during the Class Period for the beneficial interest of other Persons to, within seven (7) days of receipt, either: (a) send the Postcard Notice to such beneficial owners of such Global Payments common stock, or (b) send a list of the names and addresses of such beneficial owners to A.B. Data, who then would promptly mail the Postcard Notice to such beneficial owners. *Id.* ¶ 11.

69.     As of this date, A.B. Data has received an additional 78,537 names and addresses of potential Settlement Class Members from individuals or brokerage firms, banks, institutions, and other nominees.  A.B. Data also received requests from brokers and other nominee holders for 157,110 Postcard Notices to be forwarded by the nominees to their customers. *Id.* ¶ 12. A.B. Data had disseminated notice of the Settlement to a total of 256,194 potential Settlement Class Members and nominees. *Id.* ¶ 13.

70.     As set forth above, the deadline for Settlement Class Members to file objections to the Settlement, Plan of Allocation, and/or Fee and Expense Application, or to request exclusion from the Settlement Class, is November 20, 2024. To date, only four requests for exclusion have been received. *Id.* ¶ 19. In addition, no objections to the Settlement, Plan of Allocation, or Co-Lead Counsel's Fee and Expense and Expense Application have been received. Pursuant to the Preliminary Approval Order, on or before December 4, 2024 Co-Lead Counsel will file reply papers in support of the Final Approval Motion and the Fee and Expense Application, which will address all requests for exclusion and any objections that may be received.

71.     Pursuant to the Preliminary Approval Order, Settlement Class Members wishing to submit a claim to receive a payment from the Settlement Fund must submit a claim form postmarked no later than January 11, 2025. Preliminary

Approval Order ¶ 8 (establishing claims deadline of one hundred twenty (120) calendar days after the Notice Date). The Settlement website also permits Settlement Class Members to file claims online. Brauns Decl. ¶ 16. Per A.B. Data, it is common for the large majority of claims to be received shortly before the claims deadline. *Id*. ¶ 21. This is consistent with my professional experience. To date, A.B. Data has received 1,169 claims from potential Settlement Class Members. *Id*. A.B. Data will submit a supplemental declaration prior to the Settlement Hearing with an updated count of claims received.

## V.    THE PLAN OF ALLOCATION

72.    Pursuant to the Preliminary Approval Order, and as set forth in the Notice, all Settlement Class Members who was to participate in the distribution of the Net Settlement Fund (*i.e.*, the Settlement Fund less any (a) Taxes, (b) Notice and Administration Costs, (c) Litigation Expenses awarded by the Court, (d) attorneys' fees awarded by the Court, and (e) any other costs or fees approved by the Court) must submit a valid Claim Form with all the required information postmarked no later than January 11, 2025. Preliminary Approval Order ¶ 8. As set forth in the Notice, the Net Settlement Fund will be distributed among Settlement Class Members who submit eligible claims according to the plan of allocation approved by the Court. Notice ¶¶ 3, 43.

73.    Co-Lead Counsel consulted with Co-Lead Plaintiffs' damages expert in developing the proposed plan of allocation for the Net Settlement Fund (the "Plan of Allocation"). Co-Lead Counsel believes that the Plan of Allocation provides a fair and reasonable method to equitably allocate the Net Settlement Fund among Settlement Class Members who suffered losses as a result of the conduct alleged in the Complaint.

74.    The Plan of Allocation is set forth in paragraphs 52-71 of the Notice. The calculations under the Plan of Allocation are only a method to weigh the claims of Settlement Class Members against one another for the purposes of making an equitable allocation of the Net Settlement Fund. Notice ¶ 52.

75.    In developing the Plan of Allocation, Co-Lead Plaintiffs' damages expert calculated the estimated amount of artificial inflation in Global Payments common stock during the Settlement Class Period allegedly caused by Defendants' alleged false and misleading statements and material omissions. In calculating the estimated artificial inflation, Co-Lead Plaintiffs' damages expert considered price changes in Global Payments common stock in reaction to certain public announcements allegedly revealing the truth concerning Defendants' alleged misrepresentations and material omissions, adjusting for price changes on those days that were attributable to market or industry forces. Notice ¶¶ 54-55.

76.     In general, the Recognized Loss Amounts calculated under the Plan of

Allocation are calculated as follows:

(a)     For each share of Global Payments common stock purchased during the Settlement Class Period that was subsequently sold prior to the October 18, 2022, the Recognized Loss Amount per share is $0. *Id.* ¶ 58(i).

(b)     For each share of Global Payments common stock purchased during the Settlement Class Period that was subsequently sold on October 18, 2022, the Recognized Loss Amount per shares is the lesser of: (a) the amount per-share price inflation on the date of purchase minus the amount of per-share price inflation on the date of sale or (b) the purchase price minus the sale price. *Id.* ¶ 58(ii).

(c)     For each share price of Global Payments common stock purchased during the Settlement Class Period that was subsequently sold during the period October 19, 2022 through January 13, 2023, inclusive (i.e., the 90-Day Lookback Period), the Recognized Loss Amount per share is the lesser of: (a) the amount of per-share price inflation on the date of purchase, (b) the purchase price minus the share price, or (c) the purchase price *minus* the "90-Day Lookback Value" on the date of sale. *Id.* ¶ 58(iii).

(d)     For each share price of Global Payments common stock purchased during the Settlement Class Period and still held as of the close of trading on January 13, 2023, the Recognized Loss Amount per share is the lesser of: (a) the amount of per-share price inflation on the date of purchase or (b) the purchase price *minus* the average closing price for Global Payments common stock during the 90-Day Lookback Period, which is $102.86. *Id.* ¶ 58 (iv).

77.     The Net Settlement Fund will be allocated to Authorized Claimants on

a *pro rata* basis based on the relative size of their Recognized Claims. *Id.* ¶ 67.

31

78.    In sum, the Plan of Allocation was designed to fairly and rationally allocate the proceeds of the Net Settlement Fund among Settlement Class Members based on damages they suffered on purchases of Global Payments common stock that were attributable to the misconduct alleged in the Complaint. Accordingly, Co-Lead Counsel respectfully submits that the Plan of Allocation is fair and reasonable and should be approved by the Court.

79.    As noted above, notice of the Settlement has been disseminated to 256,194 potential Settlement Class Members and nominees. *See* Brauns Decl. ¶ 13. To date, no objections to the proposed Plan of Allocation have been received.

## VI.    THE FEE AND EXPENSE APPLICATION

80.    In addition to seeking final approval of the Settlement and Plan of Allocation, Co-Lead Counsel is applying to the Court, on behalf of all Plaintiffs' Counsel, for an award of attorneys' fees of 33.3% of the Settlement Fund (or $1,200,000, plus interest earned at the same rate as the Settlement Fund) (the "Fee Application"). Co-Lead Counsel also requests payment for litigation expenses that Plaintiffs' Counsel[4] incurred in connection with the prosecution of the Action from

---

[4] Plaintiffs' Counsel are Co-Lead Counsel (Pomerantz and Lowey Dannenberg) and Liaison Counsel (Evangelista Worley). As noted above, Co-Lead Counsel has included the lodestar of Johnson Fistel in calculating the total lodestar and resulting multiplier that the requested fee represents, and has included the single expense incurred by Johnson Fistel in this Action (the filing fee for the initial complaint) in its request for payment of Litigation Expenses.

the Settlement Fund in the amount of $53,474.16 (the "Expense Application"). In connection with the Expense Application, Co-Lead Counsel further requests $12,500 for each of the three Co-Lead Plaintiffs, for a total of $37,500, to reimburse their reasonable costs and expenses (including lost wages) directly relating to their representation of the Settlement Class, as authorized by the PSLRA, 15 U.S.C. § 78u-4(a)(4). The legal authorities supporting the requested fee and expenses are discussed in the Fee Brief. The primary factual bases for the requested fee and expenses are summarized below.

### A.    The Fee Application

81.    For its efforts on behalf of the Settlement Class, Co-Lead Counsel is applying for a fee award to be paid from the Settlement Fund on a percentage basis. As set forth in the accompanying Fee Brief, the percentage method is the appropriate method of fee recovery because it aligns the lawyers' interest in being paid a fair fee with the interest of Co-Lead Plaintiffs and the Settlement Class in achieving the maximum recovery in the shortest amount of time required under the circumstances and taking into account the litigation risks faced in a class action. Use of the percentage method has been recognized as appropriate by the Supreme Court and the Eleventh Circuit for cases of this nature.

82.    Based on the quality of the result achieved, the extent and quality of the work performed, the significant risks of the litigation, and the fully contingent nature

of the representation, Co-Lead Counsel respectfully submits that the requested fee award is reasonable and should be approved. As discussed in the Fee Brief, a 33.3% fee award is fair and reasonable for attorneys' fees in common fund cases such as this and is within the range of percentages awarded in securities class actions in this Circuit with comparable settlements.

### 1. Co-Lead Plaintiffs Have Authorized and Support the Fee Application

83.    Co-Lead Plaintiffs supervised and monitored the prosecution and settlement of the Action. *See* Declaration of William Jeffrey Igoe ("Igoe Decl.") (attached as **Exhibit 2** hereto) ¶ 5; Declaration of Mike Shafer ("Shafer Decl."), (attached as **Exhibit 3** hereto) ¶ 5; Declaration of David Keating ("Keating Decl."), (attached as **Exhibit 4** hereto) ¶ 5. Co-Lead Plaintiffs have evaluated the Fee Application and fully support the fee requested. Igoe Decl. ¶¶ 8-9; Shafer Decl. (¶¶ 8-9; Keating Decl. ¶¶ 8-9. After the agreement to settle the Action was reached, Co-Lead Plaintiffs reviewed the proposed fee and believe it is fair and reasonable in light of the result obtained for the Settlement Class, the substantial risks in the litigation, and the work performed by Co-Lead Counsel. Igoe Decl. ¶¶ 8-9; Shafer Decl. ¶¶ 8-9; Keating Decl. ¶¶ 8-9. Co-Lead Plaintiffs' endorsement of Co-Lead Counsel's fee request further demonstrates its reasonableness and should be given weight in the Court's consideration of the fee award.

### 2.    The Time and Labor Devoted to the Action by Plaintiffs' Counsel

84.    Co-Lead Counsel have devoted substantial time to the prosecution of the Action. The work Plaintiffs' Counsel performed in this Action included: (i) conducting an extensive investigation into the alleged fraud, which included a detailed review of publicly available documents such as SEC filings, analyst reports, conference call transcripts, press releases, company presentations, and media reports, and interviews with former employees of Global Payments and Active; (ii) drafting an initial complaint and a detailed amended complaint (the "Complaint") based on this investigation; (iii) successfully defeating Defendants' motion to dismiss, in part; (iv) opposing Defendants' motion for reconsideration of the Court's ruling on the motion to dismiss; (v) consulting extensively throughout the litigation with an expert in financial economics; and (vi) engaging in extensive arm's-length settlement negotiations to achieve the Settlement.

85.    Throughout the litigation, Plaintiffs' Counsel maintained an appropriate level of staffing that avoided unnecessary duplication of effort and ensured the efficient prosecution of this Action. Experienced attorneys at Pomerantz and Lowey Dannenberg were responsible for the drafting of pleadings and motion papers, and for the settlement negotiations, and monitored and maintained control of the work performed by other lawyers at their respective firms throughout the Action.

More junior attorneys and paralegals worked on matters appropriate to their skill and experience level.

86.    Attached as **Exhibit 5** hereto is a summary, by law firm, of the lodestar and Litigation Expenses of Plaintiffs' Counsel and Johnson Fistel. Attached as **Exhibit 6** hereto is a summary, by category of expense, of the Litigation Expenses incurred by all Plaintiffs' Counsel and by Johnson Fistel. Johnson Fistel, along with Lowey Dannenberg, represented Shafer and Keating prior to their appointment as Co-Lead Plaintiffs and filed the initial complaint in this Action, and its lodestar and single expense (the Court's filing fee for the initial complaint) is included herein.

87.    Attached hereto as **Exhibits 7, 8, 9**, **and 10,** respectively, are my declaration on behalf of Pomerantz, the declaration of Andrea Farah on behalf of Lowey Dannenberg, the declaration of Jim Evangelista on behalf of Evangelista Worley, and the declaration of Michael I. Fistel, Jr. on behalf of Johnson Fistel, in support of Co-Lead Counsel's motion for an award of attorneys' fees and Litigation Expenses (the "Fee and Expense Declarations"). Each of the Fee and Expense Declarations includes a schedule summarizing the lodestar of the firm and the Litigation Expenses it incurred, delineated by category. The Fee and Expense Declarations indicate the amount of time spent on the Action by the attorneys and professional support staff of each firm and the lodestar calculations based on their current hourly rates (or, if they are no long with the firm, their most recent hourly

36

rate at the firm). These were prepared based on contemporaneous daily time records regularly maintained and prepared by the respective firms, which are available at the request of the Court. Exhibit 5 summarizes the lodestar and Litigation Expense information set forth in Exhibits 7, 8, 9, and 10, listing the hours expended, lodestar amounts, and Litigation Expenses for firm, and providing totals for each such metric. Exhibit 6 summarizes the Litigation Expenses for all four firms by expense category.

88.     As set forth in Exhibit 5, Plaintiffs' Counsel and Johnson Fistel expended a total of 983.1 hours in the investigation, prosecution, and resolution of this Action. The resulting lodestar is $731,458.00.

89.     The requested fee of 33.3% of the Settlement Fund is $1,200,000, plus interest, and therefore represents a multiplier of approximately 1.6 of the lodestar of Plaintiffs' Counsel and Johnson Fistel. As discussed in further detail in the Fee Brief, the requested multiplier is *below* the range of fee multipliers typically awarded in comparable securities class actions and in other class actions involving significant contingency fee risk, in this Circuit and elsewhere.

### 3.     The Experience and Standing of Co-Lead Counsel

90.     As demonstrated by the resumes of Pomerantz and Lowey Dannenberg, which are attached as **Exhibits 11 and 12** hereto, Co-Lead Counsel is among the most experienced and skilled law firms in the field of securities class action

litigation, with long and successful track records representing investors in such cases. I believe this ability added valuable leverage in the settlement negotiations.

### 4.    The Standing and Caliber of Defendants' Counsel

91.    The quality of the work performed by Co-Lead Counsel in attaining the Settlement should be evaluated in light of the quality of its opposition. Defendants were represented by extremely able counsel at King & Spalding LLP. In the face of this skillful and well-financed opposition, Co-Lead Counsel was nonetheless able to develop a case that was sufficiently strong to overcome the motion to dismiss and then persuade Defendants and their counsel to settle the case on terms that will significantly benefit the Settlement Class.

### 5.    The Risks of Litigation and the Need to Ensure the Availability of Competent Counsel in High-Risk Contingent Cases

92.    The prosecution of these claims were undertaken entirely on a contingent-fee basis, and the considerable risks assumed by Co-Lead Counsel in bringing this Action to a successful conclusion are described above. Those risks are relevant to the Court's evaluation of an award of attorneys' fees. Here, the risks assumed by Co-Lead Counsel, and the time and expenses incurred by Co-Lead without any payment, were extensive.

93.    From the outset, Co-Lead Counsel understood that it was embarking on a complex, expensive, lengthy, and hard-fought litigation with no guarantee of

compensation for the substantial investment of time and outlay of money that vigorous prosecution of the case would require. In undertaking that responsibility, Co-Lead Counsel was obligated to ensure that sufficient resources (in terms of attorney and support staff time) were dedicated to the litigation, and that Co-Lead Counsel would advance the considerable out-of-pocket costs necessary to pursue a case of this sort, including funds to compensate vendors and consultants. Because complex shareholder litigation generally proceeds for years before reaching a conclusion, the financial burden on contingent-fee counsel is far greater than on a firm that is paid on an ongoing basis. Indeed, to date, Plaintiffs' Counsel and Johnson Fistel have received no compensation  and no reimbursement of out-of-pocket expenses in connection with this Action, yet they have incurred approximately $53,474.16 in expenses in prosecuting this Action for the benefit of Global Payments investors.

94.     Plaintiffs' Counsel also bore the risk that no recovery would be secured. As discussed above, this case presented a number of significant risks and uncertainties, including challenges in proving the falsity of Defendants' statements, establishing scienter, establishing loss causation and damages, and certifying the class. If Co-Lead Counsel failed to achieve a recovery in the face of these risks, they would recover nothing.

95.    As noted above, had the Settlement not been reached when it was and had this litigation continued, Plaintiffs' Counsel would have been required to undergo extensive fact discovery, which would have included expensive and time-consuming document discovery and taking the depositions of a substantial number of high-level employees of Global Payments and Active. Following the conclusion of fact discovery, Co-Lead Counsel would have had to engage in extensive expert discovery efforts, including assisting with the preparation of opening and rebuttal reports from Co-Lead Plaintiffs' experts on topics such as damages and loss causation. After the close of discovery, it would highly likely that Defendants would move for summary judgment, which would have to be briefed and argued, a pre-trial order would have to be prepared, proposed jury instructions would have to be submitted, and motions *in limine* and *Daubert* motions would have to be filed and argued. Substantial time and expense would also need to be expended in preparing the case for trial. The trial itself would be expensive and uncertain. Moreover, even if the jury returned a favorable verdict after trial, it is likely that any verdict would be the subject of post-trial motions, post-trial challenges to individual class members' damages, and appeals. Furthermore, as noted earlier, this Settlement occurred prior to class certification. If the litigation had continued, Plaintiffs' Counsel would have to move to certify the class which brings with it several obstacles discussed in the Final Approval Brief and the Fee Brief.

40

96.    Plaintiffs' Counsel's persistent efforts in the face of substantial risks and uncertainties have resulted in a significant and certain recovery for the Settlement Class. In light of this recovery and Co-Lead Counsel's investment of time and resources over the course of the litigation, Co-Lead Counsel believes that the requested attorneys' fees is fair and reasonable and should be approved.

### 6.    The Reaction of the Settlement Class to the Fee Application

97.    As noted above, as of this date, notice of the Settlement has been disseminated to 256,194 potential Settlement Class Members and nominees. Brauns Decl. ¶ 13. Both the Postcard Notice and the Notice directed them to the Settlement website. Brauns Decl. Ex. A (Postcard Notice) and B (Notice) ¶¶ 41, 87. Both the Postcard Notice and the Notice advised Settlement Class Members that Co-Lead Counsel would apply for attorneys' fees in an amount not to exceed 33.3% of the Settlement Fund. Postcard Notice; Notice ¶¶ 5, 72. To date, no objections to the anticipated request for attorneys' fees have been received.

98.    In sum, Co-Lead Counsel accepted this case on a contingency basis, committed significant resources to it, and prosecuted it without any compensation or guarantee of success. Based on the favorable result obtained, the quality of the work performed, the risks of the Action, and the contingent nature of the representation, Co-Lead Counsel respectfully submits that the requested fee is fair and reasonable.

41

**B.    Reimbursement of Plaintiffs' Counsel's Litigation Expenses and Co-Lead Plaintiffs' Costs and Expenses**

99.    Co-Lead Counsel also seeks payment from the Settlement Fund of $53,474.16 for Litigation Expenses that Plaintiffs' Counsel and Johnson Fistel reasonably incurred in connection with the prosecution of the Action (the "Expense Application").

100.    From the beginning of the Action, Co-Lead Counsel have been cognizant of the fact that they would not recover any of their expenses unless and until the Action were successfully resolved, and possibly never. Plaintiffs' Counsel also understood that, even assuming that the case was ultimately successful, reimbursement of expenses would not necessarily compensate them for the lost use of funds advanced by them to prosecute the Action. Consequently, counsel were motivated to, and did, take significant steps to minimize expenses whenever practicable without jeopardizing the vigorous and efficient prosecution of the case.

101.    As summarized in Exhibit 6 hereto, Plaintiffs' Counsel and Johnson Fistel have paid or incurred a total of $53,474.16 in unreimbursed Litigation Expenses in connection with the prosecution of the Action. Exhibit 6 identifies each category of Litigation Expenses in incurred by Plaintiffs' Counsel and Johnson Fistel, such as investigator fees, online research fees, and so forth, and the amount incurred by category. These expenses are reflected on the books and records maintained by Plaintiffs' Counsel and Johnson Fistel, which are prepared from

expense vouchers, check records, and other source material and are an accurate record of the expenses incurred. These expenses are submitted separately by Plaintiffs' Counsel and Johnson Fistel, and are not duplicated by the firm's hourly rates.

102.  Of the total amount of Litigation Expenses, approximately 54%, or $28,701.50, is comprised of investigator fees. In order to thoroughly investigate the potential claims against Defendants and prepare the Complaint, Co-Lead Counsel retained a professional investigative firm to identify and contact former employees of the Company or Active. As a result of that robust investigation, the operative Complaint set forth allegations based on information from *thirteen* former employees of the Company or Active (identified as FE-1 through FE-13). *See* Doc. No. 39.

103.  In addition, $18,972, or approximately 35% of the total amount of Litigation Expenses, is comprised of expert fees. Co-Lead Counsel consulted extensively with an expert in financial economics throughout the Action, including in connection with preparing the Complaint, negotiating with Defendants regarding a potential resolution of the Action, and developing the proposed Plan of Allocation of the Settlement Fund.

104.  These two categories of Litigation Expenses—investigator fees and expert fees—account for approximately 89% of the total expenses.

105. The other expenses for which Co-Lead Counsel seeks payment are the types of expenses that are necessarily incurred in litigation and routinely charged to clients billed by the hour, including online research charges, necessary clerical overtime charges, and process server fees.

106. In addition, Co-Lead Counsel requests reimbursement to Co-Lead Plaintiffs of Co-Lead Plaintiffs' reasonable costs and expenses (including lost wages) directly relating to their representation of the Settlement Class, as authorized by the PSLRA. Each of the three Co-Lead Plaintiffs seek reimbursement of $12,500, for a total of $37,500, for the time expended in connection with the Action. That time included a substantial amount of time communicating with Co-Lead Counsel, reviewing pleadings and motion papers, and participating in the settlement negotiations, during which time they could not engage in their professional or investing activities. *See* Igoe Decl. ¶¶ 10-11; Shafer Decl. ¶¶ 10-11; Keating Decl. ¶¶ 10-11.

107. The Notice informed potential Settlement Class Members that Co-Lead Counsel would be seeking payment for Litigation Expenses in an amount not to exceed $100,000, and that Co-Lead Counsel may apply for reimbursement of the reasonable costs and expenses incurred by Co-Lead Plaintiffs directly related to their representation of the Class in accordance with 15 U.S.C. § 78u-4(a)(4), in an amount not to exceed $60,000. Notice ¶¶ 5, 72. The total amount requested for Litigation

Expenses, $53,474.16, and the total amount requested to reimburse Co-Lead Plaintiffs, $37,500, combined are each well below what Settlement Class Members were advised could be sought. To date, no objection has been raised as to the anticipated requests for Litigation Expenses and reimbursement to Co-Lead Plaintiffs set forth in the Notice.

108.    The costs and expenses incurred by Plaintiffs' Counsel, Johnson Fistel, and Co-Lead Plaintiffs were reasonable and necessary to represent the Settlement Class and achieve the Settlement. Accordingly, Co-Lead Counsel respectfully submits that the application for payment of Litigation Expenses, and reimbursement of Co-Lead Plaintiffs directly related to their representation of the Class in accordance with 15 U.S.C. § 78u-4(a)(4), from the Settlement Fund should be approved.

## VII.    CONCLUSION

109.    For all the reasons set forth above, Co-Lead Plaintiffs and Co-Lead Counsel respectfully submit that the Settlement and Plan of Allocation should be approved as fair, reasonable, and adequate and that the Settlement Class should be finally certified for purposes of the Settlement, with Co-Lead Plaintiffs appointed as Class Representatives and Co-Lead Counsel as Class Counsel. Co-Lead Counsel further submits that the requested fee should be approved as fair and reasonable, and the request for reimbursement of Litigation Expenses should also be approved.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this sixth day of November, 2024.

*s/ Jonathan D. Park*

**POMERANTZ LLP**
Jonathan D. Park
(Admitted *Pro Hac Vice*)
600 Third Avenue, 20th Floor
New York, NY 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
jpark@pomlaw.com

*Counsel to Co-Lead Plaintiff William Jeffrey Igoe and Co-Lead Counsel for the Class*

46

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on November 6, 2024, I electronically filed the foregoing document with the Clerk of Court by using the CM/ECF system, and a copy of the foregoing pleading has been electronically mailed to all attorneys of record.

*/s/ Jonathan D. Park*

JONATHAN D. PARK
